## PROPERTY MANAGEMENT AGREEMENT
**\*\*THIS IS A LEGALLY BINDING CONTRACT\*\***
**\*\*IF NOT UNDERSTOOD, SEEK COMPETENT ADVICE\*\***

1. **PARTIES**
This agreement made between Boyne USA inc. through its agent Allison Nesseth (Agent) and _Robert + Nora Erhart_ (Owner) shall be effective the _8th_ day of _February_, _2005_.

2. **PROPERTY**
The property to be managed under this Agreement (herein called "Unit") is described as # _10606_ having _2_ bedrooms and _3_ baths in the _Summit_ condominium facility.

3. **MAXIMUM OCCUPANCY**
Maximum allowed occupancy of the Unit is _____ persons.

4. **INSURANCE**
Neither Boyne USA, INC. or its Agent provide contents or hazard insurance for the Unit. Owner is responsible to obtain insurance coverage sufficient to insure against any and all liabilities related to the Unit or its contents.

5. **MANAGEMENT FEES**
Owner agrees to pay Agent's management fee equal to fifty percent (50%) of the gross rental revenues attributable to the rental Unit.

6. **EXCLUSIVITY**
Owner agrees to employ the Agent as his/her EXCLUSIVE rental Agent for the purpose of renting, operating, and managing the Unit. The Agent agrees to accept this employment and secure tenants for the Unit.

7. **RENTING OR LEASING BY THE OWNER**
This is an exclusive management agreement. Owner may not rent or lease the Unit, directly or indirectly, to anyone except through the service offered by Agent. In the event of a breach of this provision, Owner shall be liable for damages to the Agent. Damages shall be based upon the maximum potential rental income that could have been realized had the Unit been available for rental at that time.

8. **TERM OF AGREEMENT**
The term of this Agreement shall be from (above date) _____ and shall be in full force Until terminated by either party by giving the other party no less than thirty (30) days written notification of such termination. In the event of termination by the Owner, Owner agrees to honor all reservations, made or received by Agent prior to the receipt of the notice of termination, for the rental of Unit for a period of sixty (60) days beyond the effective date of termination. Upon Owner termination, Agent agrees to provide a list of reservations made by the agent for the sixty (60) day period.

9. **TELEPHONE**
During the term of this Agreement Agent will provide telephone service. The Owner's telephone will be on the Big Sky Resort exchange/extension system. The Unit's extension/telephone number will be _____. The telephone usage will be restricted so that no one will be able to call long distance unless it is a collect call, a credit card call, or a call charged to a third party, except when calls are monitored by a call accounting system. Local calls will be free of charge to Unit owners.

10. **COLLECTION OF RENTALS**
Agent is authorized to deposit rental receipts from the Unit with receipts collected in Agent's general corporate account. Agent agrees to keep full accounting records on all transactions affecting the Unit.

11. **SUCCESSORTS AND ASSIGNS**
This Agreement shall be binding upon successors and assigns of Agent and the heirs, administrators, executors, personal representatives, successors and assigns of the Owner.

12. **POSSIBLE CONFLICT OF INTEREST**
The Owner acknowledges the fact that Agent contracts with Boyne USA, Inc., which owns and operates rental properties in the Big Sky area on a basis similar to this Agreement.

13. **SELECTION OF TENANTS**
Rental of the Unit will be based upon the requirements of tenants requesting rental space from the Agent. Owner acknowledges and recognizes that Agent manages a number of Units in Big Sky. Units shall be rented as equally as possible (room nights) in comparison with units of similar type, likeness, or location (i.e. Beaverhead 3 bedroom would be compared to other Beaverhead 3 bedroom.) A renter has the option of choosing a particular Unit regardless of its position in the rental night count possibly affecting the total-room night count. Owner or Owner guest reservations will count and be included in that count unless made within 48 hours of arrival.

14. **REPRESENTATIONS**
Agent makes no representations of any nature or extent of rental income, which an Owner can expect to receive.

15. **COMPLIMENTARY STAYS**
The Owner authorizes up to three (3) nights complimentary use of the Unit per year for the purpose of promoting that complex to travel industry professionals such as convention/meeting planners, travel writers and editors, travel agents, corporate and ski industry VIPs, or as trade for advertising. Complimentary stay may only be approved by an upper level manager of Boyne USA. A Unit may not be blocked for a complimentary stay if it has an existing reservation for the same time that the complimentary stay is approved. The cost of cleaning during complimentary stays will be borne by the Agent.

_RE/NE_
owner initials    agent initials

**EXHIBIT**

**B**

1

16. RENTAL RATES

Agent shall have sole discretion to charge a fair, reasonable, and competitive rental rate for the Unit. Agent is entitled to and can, without any prior notice or approval from the Owner, fix rates and may, at any time, deviate or revise rental rates as Agent determines necessary. Rental Agent may also negotiate special packages, group, or convention rates for the Unit.

17. SELECTION OF EMPLOYEES AND LABOR

Agent is authorized to hire, supervise, and discharge all labor and employees of Agent required for the operation and the maintenance of the Unit. Agent may perform any of its services through such employees, as it deems necessary.

18. OWNER USAGE

Owner shall have the right to use the Unit during periods as scheduled by the Owner for Owner's or Owner's guest use based upon the Agents scheduling procedures of fair and equal rentals. Agent shall take owner usage into account in meeting the provisions of Paragraph 13 regarding equal rentals. Agent shall notify Owner if any change in scheduling procedures occur and Owner shall then respond to Agent within the times Agent requires. Agent shall have the right to book Unit in accordance with Agents scheduling procedure on any dates other than the dates scheduled for Owner or Owner's guests use. In addition, Owner may use Unit on dates other than those scheduled provided the unit is vacant. Owner requests made within 48 hours or less of arrival will not be counted against the owner or affect fair and equal rental distribution. If Owner requests use of the Unit and a renter is already assigned for the requested time period, upon approval by the Owner and only if a like unit is available, that renter may be moved in order to accommodate the Owner's request. If there are not like Units available for the renter to be moved to, the Owner's request will be denied. Owner agrees not to enter the Unit and not to permit any other person to enter the Unit without prior notification to Agent or representative thereof.

19. CONDITION OF THE UNIT (WITH THE EXCEPTION OF THE SHOSHONE/SUMMIT)

In order for the Unit to be rented, the Unit must be suitable for occupancy and meet all requirements (see attached Exhibit "A", STANDARD FURNISHING REQUIREMENTS list) set by the Agent. Agent reserves the right to supplement or modify Unit standards at any time without prior notice to Owner. Owner is responsible for all costs associated with bringing the Unit into compliance with such modifications. Agent, in its sole discretion shall determine whether the Unit meets all standards and requirements suitable for occupancy.

20. MAINTENANCE (WITH EXCEPTION OF SHOSHONE/SUMMIT)

If the Agent determines that the Unit does not comply with the standard requirements or supplemental or modified requirements, the rental Agent shall provide, at the Owner's expense, such repairs, replacements, or other services necessary to make the Unit meet the standards imposed. Owner authorizes Agent to expend up to $200.00 monthly/$2400.00 per year in order to make or purchase items to meet such requirements or to complete repairs. Services will include but will not be limited to replacement of appliances or other common household items, dry cleaning or replacement of draperies and bedspreads, shampooing or replacement of carpet, repainting of units and any other services deemed necessary by the Agent. Agent is authorized, if the unit is occupied or in an emergency, to exceed the $200.00/$2400.00 per year limit without prior notification to the Owner in order to preserve and protect the Unit and its occupants. All maintenance work, whether routine or emergency, shall be done at the expense of the owner. The Agent can refuse to rent the Unit if, in the Agents sole discretion, the Unit does not comply with the standard requirements or is in any other way unacceptable for rental occupancy.

21. DAMAGE CONTROL (WITH THE EXCEPTION OF SHOSHONE/SUMMIT)

Agent will take all reasonable steps to ensure that renters leave the unit in the same condition as received. Minor damages such as small burn marks on the carpet, scratches and marks on walls and furniture etc., are normal wear and tear and will not be charged to a guest unless determination is made that guest was willfully negligent. Agent will use reasonable efforts to collect from occupants causing damage or theft, but Agent can give no guarantee thereof and shall not be obligated to pay any sums whatsoever for such losses. Owner agrees that Agent is in no way liable for the acts, neglect, or other activities of the renter, their guests or invitees, of the Unit, or for any damage to said Unit as a result thereof. Items damaged or removed from unit will be replaced at the Owners expense.

22. MAID SERVICE

At no extra charge to owner, maid service will be provided to tenants who occupy the Unit as part of the Agent's management services. Maid service will be provided to Owners and Owner's guests at the Owner's expense. An appropriate charge will be assessed for this service, at the standard per stay maid rate then in effect.

20. ANNUAL DEEP CLEANING (WITH THE EXCEPTION OF THE SHOSHONE/SUMMIT)

Agent will schedule unit for "deep clean" either during the spring or fall off-season. The deep clean will consist of everything listed on the list attached hereto as Exhibit "B" and incorporated herein. Owner agrees to pay the complete professional carpet/upholstery clean expense of the deep clean. Costs will vary depending on the size of the Unit, and the type of carpet, fabrics and furniture styles in the Unit.

23. RULES AND REGULATIONS

Agent is authorized to impose reasonable rules and regulations governing the use of the Unit. The purpose of such rules is to enable the Agent to effectively manage the Unit. Owner agrees to abide by the same and to instruct all owner's guests using the Unit through the Owner that such rules are in full force and effects all persons. A copy of the current rules an regulations are attached as Exhibit "C" and incorporated herein. Agent reserves the right to supplement or modify all such rules and regulations and will provide Owner with a copy of all such supplemental or modified rules or regulations.

_____     _____
owner initials    agent initials

2

24. INDEMNITY

Owner agrees to indemnify and save Agent harmless from all costs, expenses, or damages of any nature whatsoever in connection with the management of the unit and from the liability for injury to any person or property on, about, or in connection with the premises from any cause, unless costs, expenses, or damages are caused by Agents negligence.

25. MONTHLY STATEMENTS

Agent will provide a monthly statement of rental income and charges and remit to the Owner the net rental income within 25 days of the end of the previous month. Agent will deduct from gross revenue any expenses paid or incurred by the Agent on the Owner behalf.

26. COMMON AREA MANAGEMENT

In the event that the property manager for the condominiums Owners Association fails to provide essential management such as, snow plowing, sanding, firewood delivery, grounds maintenance etc. the Agent may elect to: Move renters to another complex until management services are provided, discount the rental rate to compensate guests, discontinue rental services and terminate this Agreement or provide services and charge Owner for them.

27. REFUNDS

Agent reserves the right to refund all or part of deposits or paid rents for any reason the Agent deems necessary. Any refunded amount shall be excluded from the rental revenue. Any deposits kept by Agent will be shared with the owner based on the management fee set forth in this agreement.

28. DELAYS

Agent makes no representations that it is capable of providing repairs in all circumstances and advises the Owner that such delays may cause a loss of rental income. In the event that Agent or Owner shall be delayed or hindered or prevented from the performance of any act required hereunder by reason of any strike, lock-out, civil commotion, war-like operation, invasion, rebellion, or riot, hostility, military, or usurped power, sabotage, governmental restrictions, or regulations, or the inability to obtain any services, materials, or financing, or for any cause beyond the control of the Agent, the performance of such act shall be excused for the period of the delay and the period of the performance of any such act shall be extended for the period necessary to complete performance after the end of the period of such delay.

29. NON SMOKING AND NO PETS

The Unit is designated as a non-smoking, no pets by any renter. Owners staying in the Unit are allowed to use Unit in accordance with Agent guidelines and may smoke or bring pets into the Unit as long as this doesn't create a nuisance to others. When Owner allows smoking or pets in their Unit, during owner/guest visit. Agent is authorized to charge $150.00 for professional cleaning to be performed after each such visit.

30. AMENDMENTS AND WAIVER

This Agreement constitutes the entire understanding between the parties on the subject matter and supercedes any prior negotiations, discussions, and agreements. This Agreement may not be amended in any way except in writing executed and agreed upon by both the Owner unless such waiver be deemed waived by Agent or Owner unless such waiver shall be reduced to writing and signed by Agent and Owner.

31. SEVERABILITY

The provisions of this Agreement are deemed to be independent and severable, and in the event should any provisions be declared invalid, partially invalid, illegal, or unenforcable for any reason such will not affect the validity or enforceabilitly of any other provision of this Agreement.

32. GOVERNING LAW

This Agreement has been executed and is governed by, constructed and enforced in accordance with the laws of the state of Montana.

33. NOTICE

Any notice to be given under this Agreement shall be in writing and may either be served upon a party (a) personally, including, without limitation, delivery by a commercial courier that provides a receipt; or (b) by regular, registered or certified mail, postage prepaid, return receipt requested. Such notice shall be directed to the party to be served at the address of the party set forth on the signature page of this Agreement. A party wishing to change the parties designated address shall do so by notice in writing to the other party. Notice served by mail or commercial overnight courier shall be deemed complete when deposited postage prepaid in the United States mail or deposited with the overnight Courier Company. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice.

34. SALE OF UNIT

Owner agrees to notify Agent, in writing, any time the Unit is listed for sale and will provide Agent with the name of the listing agent.

35. ATTORNEY"S FEES

In the event it becomes necessary for either party to retain counsel to enforce any right or privilege under this Agreement, or in the event that either party shall be obligated to take any action to terminate this Agreement, then it is agreed that the successful party shall be entitled to reasonable attorney's fees and costs, including fees and costs on appeal.

_____    _____
owner initials        agent initials

3

36. **PARAGRAPH HEADINGS**
The paragraph headings contained herein are for convenience only and are not intended to define or limit the scope of any provisions of this Agreement

<u>Waiver</u>.  This Agreement, including the attached exhibits, is the entire Agreement between the parties. No alterations, modifications, or additions to this Agreement shall be binding unless reduced to writing and signed by the parties to be charged herewith. <u>Successors and Assigns</u>. This agreement shall bind and inure to the benefit of any successors and assigns of the Agent and any heirs, executors, administrators, personal representatives, successors or permitted assigns of the Owner.

37. **COMMISSIONS**
Commissions for travel agents/wholesalers (ranging from 10 to 20% of nightly rate) will be deducted from the visit rental fees.

38. **ADDITIONAL TERMS**
See attached Exhibit D for any additional terms, which may affect this agreement.

_____/_____
owner initials      agent initials

4