# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| LAWRENCE ANDERSON, as trustee for the LAWRENCE T. ANDERSON AND SUZANNE M. ANDERSON JOINT REVOCABLE LIVING TRUST, ROBERT AND NORA ERHART, and TJARDA CLAGETT, | **CV-21-95-GF-BMM** |
| Plaintiffs, | **ORDER ON DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| BOYNE USA, INC., BOYNE PROPERTIES, INC., AND SUMMIT HOTEL, LLC, | |
| Defendants. | |

## INTRODUCTION

Defendants Boyne, USA, Inc., Boyne Properties, Inc., and Summit Hotel

LLC (collectively "Boyne") have filed a Motion to Dismiss for failure to state a

claim upon which relief can be granted. (Doc. 3.) Plaintiffs oppose this motion.

(Doc. 9.)

## FACTUAL AND LEGAL BACKGROUND

Boyne owns and operates Big Sky Resort, as well as three condominium-hotels at the base of Big Sky known as the Summit, Shoshone, and Village Center (collectively "the Condos"). (Doc. 9 at 11.) The majority of the Condos are owned by private individuals, among them the Plaintiffs. (*Id.*) Plaintiff Larry Anderson ("Anderson") owns a unit in the Shoshone. (*Id.*) Plaintiffs Bob and Nora Erhart ("Erharts") own units in the Summit. (*Id.*) Plaintiff Tjarda Claggett ("Claggett") owns a unit in the Village Center. (*Id.*) Boyne owns all commercial units and some residential units. (*Id.*)

Boyne marketed the Condos as investments to prospective purchasers and made representations regarding the economic benefits of ownership. (*Id.*) Title to the Condos is subject to certain Declarations. (Doc. 4 at 8.) Boyne created the Declarations for the Condos and Boyne does not allow amendment to the Declarations without its consent. (Doc. 9 at 12.) The Declarations allow Condos to be used either by the unit owners or as "transient hotel type accommodation." (*Id.*) The Declarations require all unit owners to use Boyne, or an agent designated by Boyne, as their exclusive rental agents. (*Id.*) Unit owners may decline to renew the rental management contract with Boyne after three years, but only if 75% of unit

owners vote to end the contract with Boyne. (*Id.*) Boyne itself owns all of the commercial units in the Village Center, which constitutes 22% of the voting units, and several residential units as well. (*Id.* at 13.)

Boyne prepared the rental-management agreements ("RMAs") that unit owners sign with Boyne if they are not using their unit for personal use. (*Id.* at 14.) The RMAs require unit owners to employ Boyne as their exclusive agent for the purposes of renting, managing, and operating the unit. (*Id.*) The RMAs require unit owners to pay Boyne 50% of gross rental revenue "after the payment of costs." (*Id.*) Boyne charges unit owners for several services, per the RMAs, including resort fees, credit card process fees, wholesalers and travel agent commissions. (Doc. 4 at 11.) Boyne also controls the central reservation center through which guests of the Condos make their reservations. (Doc. 9 at 15.) Boyne can use this system to control pricing for each of the units and the order in which units are booked. (*Id.*)

Plaintiffs brought this suit against Boyne arguing that their contracts with Boyne violate state and federal law. (Doc. 4 at 6.) Plaintiffs plead their claims as a putative class. (*Id.*) Plaintiffs allege eight causes of action: (I) breach of fiduciary duty; (II) constructive fraud; (III) breach of contract; (IV) breach of the implied covenant of good faith and fair dealing; (V) unjust enrichment; (VI) antitrust claims; (VII) accounting; and (VIII) declaratory relief claims. (Doc. 4 at 6–7.)

3

## LEGAL STANDARDS

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

## DISCUSSION

Boyne moves to dismiss all eight causes of action for failure to state a claim. (Doc. 4 at 6.) Boyne alleges that each cause of action is either (I) time barred or (II) fails on the merits. (*Id.*) Boyne additionally argues that (III) Plaintiffs fail to state a plausible claim for class action relief.

## I.   Whether Plaintiffs' claims are time-barred.

Boyne argues that the applicable statute of limitations bars all of Plaintiffs' claims except for Clagett's Breach of Contract, Accounting, and Declaratory Judgment claims. (Doc. 4 at 14.) Boyne bases its argument upon the belief that Plaintiffs claims began to accrue either when Plaintiffs signed their RMAs or when Plaintiffs received their first monthly statements from Boyne regarding rental incomes. (*Id.*) Plaintiffs argue that their claims continue to accrue over time because they are suffering an ongoing injury. (Doc. 9 at 20.)

Absent a repudiation of a contract that requires continuing performance, plaintiffs may sue for partial breaches only as they occur, and the statute of limitations does not begin to run against a subsequent failure to perform until it occurs. *Trustees For Alaska Laborers-Constr. Indus. Health & Sec. Fund v. Ferrell*, 812 F.2d 512, 517 (9th Cir. 1987). Boyne argues that the continuing claims doctrine fails to apply claims Plaintiffs allege a "single breach of contract." (Doc. 12 at 4). The continuing claims doctrine does not apply to a claim based on "a single distinct event which has ill effects that continue to accumulate over time." 54 C.J.S. Limitations of Actions § 198 (2022). Boyne misapprehends both the continuing claims doctrine and the nature of Plaintiffs' injury, as Plaintiffs have articulated it in their Complaint.

Boyne contends that Plaintiffs "allege a single breach of contract" in Paragraph 120 of their Complaint. This paragraph states as follows: "Boyne breached its agreements with Plaintiffs and class members by charging more than the rate provided for in the declarations of the Condo-Hotels." (Doc. 1 at ¶ 120.) Boyne fails to explain how this allegation constitutes a single breach when the "charging" at issue constitutes an ongoing part of Boyne's contractual duties as Plaintiffs' rental manager. Plaintiffs assert that a breach of contract occurred each time that Boyne allegedly overcharged them each month. (*Id.*)

5

Boyne undermines its own argument when it states that Plaintiffs' claims accrued at the latest "when they received their first monthly statements regarding their rental incomes." The fact that Boyne submits "monthly" statements to Plaintiffs demonstrates that Boyne's contractual obligations, and the alleged breach thereof, are continuous. A contract that requires payment "on a monthly basis" may be subject to "a series of partial breaches." *Ferrell*, 812 F.2d at 517. Boyne cannot evade liability by arguing that Plaintiffs should have known when Boyne allegedly overcharged them the first time that Boyne would continue to do so for the foreseeable future.  Each monthly statement Boyne issued with allegedly inflated costs constitutes a partial breach of contract. *Id.* Plaintiffs' claims have continued to accumulate so long as Boyne has acted as their rental manager, and, therefore, the claims are not time barred.

## II.    Whether Plaintiffs fail to state a claim on the merits.

Boyne next argues that Plaintiffs fail to state any plausible claim on the merits. A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court will address each of Plaintiffs' claims, and Boyne's arguments, in turn.

### a. Adequacy of Count I: Breach of Fiduciary Duty

Boyne argues that Plaintiffs have failed to plausibly plead that Boyne owes them a fiduciary duty. "The existence of a fiduciary duty depends on satisfactory proof of a special relationship." *Davis v. Church of Jesus Christ Latter Day Saints*, 852 P.2d 640, 646 (1993). Whether a fiduciary duty exists presents a question of law. The Court may be required to make a fact-intensive inquiry, however, to determine whether a special relationship exists to support a fiduciary duty. *Gliko v. Perman*, 130 P.3d 155, 161 (Mont. 2006).

Plaintiffs assert that Boyne created a special relationship with Plaintiffs by acting, first, as Plaintiffs' rental manager, and second, by effectively making itself the investment manager of the Condos as an "unregistered security." (Doc. 1 at ¶¶ 99–109.) Boyne alleges that its role as "rental manager" creates an "arms-length contractual relationship, not a fiduciary relationship." (Doc. 4 at 22 (citing *Dewey v. Stringer*, 325 P.3d 1236, 1239 (Mont. 2014)).) *Dewey* fails to support Boyne's contention. *Dewey* involved a case in which a home buyer backed out of the purchase. *Dewey v. Stringer*, 325 P.3d 1236, 1239 (Mont. 2014). The Montana Supreme Court determined that the homeowner could not sue the buyer in tort because "there was 'no special relationship between Dewey and Stringer to establish a duty independent of the buy-sell agreement.'" *Id.* at 1240. The self-

contained home sale discussed in *Dewey* bears little resemblance to Boyne's ongoing role as Plaintiffs' rental manager.

The Montana Supreme Court in *Dewey* reasoned that "liability imposed under a statute exists independent of contractual duties concerning the same subject matter." *Id.* at 1239. Boyne assumed the role of Plaintiffs' agent when it agreed to act as their rental manager. The fact that this relationship originated in contract carries little weight. An agency relationship created by "the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act" constitutes a fiduciary relationship. *Butler Mfg. Co. v. J & L Implement Co.*, 540 P.2d 962, 965 (Mont. 1975). Boyne agreed to act "as [Plaintiffs'] Agent for the purpose of renting, managing, and operating the Unit[s]." (Doc. 1-2 at 1.) The fiduciary duties Boyne owes to Plaintiffs' as their agent "encompass full disclosure . . . ; good faith . . . ; and acting in the client's best interests." *Adams v. Cheney*, 661 P.2d 434, 441 (Mont. 1983) (internal citations omitted). Any breach of these duties constitutes a separate injury from breach of contract.

The Court need not determine whether Boyne acted as an "investment manager" for the Condos, because Boyne's role as rental manager proves sufficient to establish a fiduciary relationship. Plaintiffs plausibly have pled a fiduciary relationship sufficient for Claim I to survive Boyne's motion to dismiss.

### b. Adequacy of Count II: Constructive Fraud

Boyne argues that Plaintiffs have failed to state their constructive fraud claim "with specificity." (Doc. 4 at 23.) A party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged" when alleging fraud or mistake. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal citations omitted); *see* Fed. R. Civ. P. 9(b). Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

Boyne asserts that Plaintiffs fail to answer the "who, when, and what" of their constructive fraud claim. (Doc. 4 at 23). Plaintiffs answer these questions, however, by asserting in their Complaint that Boyne misrepresented the profits to which Plaintiffs were entitled as condominium owners. (Doc. 1 at ¶¶ 110–117.) Boyne dismisses these allegations as "go[ing] to breach of contract, not fraud" and "[a]bsent a non-contractual duty to disclose, Plaintiffs' constructive fraud claims fail." (Doc. 4 at 23; Doc. 12 at 10.) The Court already identified in its analysis in Count I, however, that Boyne owes a fiduciary duty, independent of its contract with Plaintiffs, that "encompass[es] full disclosure." *Adams v. Cheney*, 661 P.2d

434, 441 (1983). Plaintiffs thus have provided Boyne with sufficient notice of the particular misconduct which Plaintiffs allege constitutes fraud. *See Bly-Gee*, 236 F.3d at 1019.

### c.  Adequacy of Count III: Breach of Contract

Boyne asserts that Plaintiffs impermissibly premise their breach of contract claims on the terms of the Declarations. (Doc. 4 at 24–25.) Boyne argues that, rather than a contract, the Declarations "simply detail the property rights and limitations associated with ownership of the units" rather than constituting a contract. (*Id.*) Boyne concedes that the RMAs constitutes contracts, but asserts that "Plaintiffs voluntarily entered into [the RMAs] with knowledge of the Declarations." (*Id.* at 25.) Boyne also asserts that Plaintiffs may escape the Declarations' exclusive rental agreement with Boyne by deciding "not to renew [rental management] contract[s] with Boyne" after three years. (*Id.* (quoting Village Center Declarations).)

Plaintiffs allege breaches of the RMAs' provisions, in addition to breach of the Declarations. *See* (Doc. 1 at ¶ 119.) Plaintiffs allege that Boyne has manipulated the resort and breakfast fees at issue in the RMAs to artificially lower the "rental rate" and increase their own profits at Plaintiffs' expense. (Doc. 1 at ¶ 73.) These claims stand apart from the Declarations. Both parties admit that the RMAs constitute a contract. Plaintiffs' allegations prove sufficient to maintain

10

their breach of contract claim. *Wolfe v. Flathead Elec. Coop., Inc.*, 431 P.3d 327, 329 (Mont. 2018).

**d. Adequacy of Count IV: The implied covenant of good faith and fair dealing.**

Every "contract, regardless of type, contains an implied covenant of good faith and fair dealing." *Story v. City of Bozeman*, 791 P.2d 767, 775 (Mont. 1990). "In essence, the covenant is a mutual promise implied in every contract that the parties will deal with each other in good faith, and not attempt to deprive the other party of the benefits of the contract through dishonesty or abuse of discretion in performance." *Beaverhead Bar Supply v. Harrington*, 805 P.2d 560, 564 (Mont. 1991). To support a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must provide evidence both that the defendant acted in bad faith and that the defendants' actions deprived the plaintiff of a benefit or a justified expectation under the contract. *Phelps v. Frampton*, 170 P.3d 474, 485 (Mont. 2007).

Boyne argues that Plaintiffs fail to justify their expectations because "Plaintiffs cannot be justified in believing they were 'entitled' to not be charged the fees that were spelled out in the RMAs and for which Plaintiffs can request an accounting." (Doc. 12 at 11.) Boyne's argument fails in two respects. First, Plaintiffs allege that Boyne impermissibly charged them for fees, such as breakfast fees, that were not "spelled out in the RMAs." (Doc. 1 at ¶¶ 67–72.) The RMAs

contemplate fees beyond those explicitly addressed in the RMAs themselves. Whether these particular fees are reasonable seems to present a question of fact. *See* (Doc. 1-3 at 4 ("Owner agrees to pay to Agent a management fee equal to 50% of rental revenue after the payment of costs *such as* hotel or resort taxes, resort fees, credit card processing fees, wholesalers and travel agent commissions.") (emphasis added).) The reasonableness of these fees proves particularly important where, as here, Plaintiffs allege that Boyne uses fees "to artificially lower the 'rental rate' in order to increase Boyne's profits at the expense of unit owners." (Doc. 1 at ¶ 13.)

Boyne also continues to misstate the relationship between Plaintiffs and Boyne. Boyne acts as Plaintiffs' agent when it comes to its duties as its rental manager. (Doc. 1-2 at 1.) The relationship exceeds the "arms-length contractual relationship" contemplated by Boyne. (Doc. 12 at 11.) Whether the Plaintiffs' expectations are justified depends on the various circumstances that surround the parties' relationship. *Phelps v. Frampton*, 170 P.3d 474, 485 (Mont. 2007). Whether Plaintiffs are justified in their expectation that Boyne, acting as their agent, would maximize their profits from their rentals presents an issue of fact. Plaintiffs have provided, at the very least, sufficient evidence of a potential breach of good faith and fair dealing to survive Boyne's motion to dismiss. *Id.* at 485.

12

### e.  Sufficiency of Count V: Unjust Enrichment

Boyne argues that "Plaintiffs' allegation that a valid contract exists . . .

precludes a plausible claim for unjust enrichment." (Doc. 4 at 26.) Boyne argues,

in the alternative, that "if the Court finds there is no contract" that the Court should

dismiss Plaintiffs' unjust enrichment claim because Plaintiffs "allege no facts

showing that the contract is valid or unenforceable." (Doc. 12 at 12).

A party may set out two or more statements of a claim alternatively or

hypothetically, either in a single count or in separate ones. Fed. R. Civ. P. 8(d)(2).

"Plaintiffs allege a valid contract," just as Boyne says, but Boyne itself argues that

the Declarations fail to constitute a valid contract. (Doc. 4 at 25.) Boyne would

have the Court dismiss Plaintiffs' unjust enrichment claim either way. The Court

declines to do so when Plaintiffs' unjust enrichment claim presents a permissible

alternative to Plaintiffs' breach of contract claim.

Unjust enrichment law developed to remedy injustice when other areas of

the law could not, and, therefore, must remain a flexible and workable doctrine. *N.*

*Cheyenne Tribe v. Roman Cath. Church ex rel. Dioceses of Great Falls/Billings*,

296 P.3d 450, 457 (Mont. 2013). If Plaintiffs' breach of contract claim fails, as

Boyne asserts that it must, then Plaintiffs' unjust enrichment claim provides a way

in which to "remedy [alleged] injustice." *Id.*

13

### f.  Sufficiency of Count VI: Unfair Trade Practices/Antitrust

Plaintiffs allege that Boyne "illegally and unfairly 'tied' its rental management services to ownership of units in the Condo-Hotels through the Declarations." (Doc. 1 at ¶ 132.) "A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.'" *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 461 (1992) (citing *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 5–6 (1958)). Tying arrangements violate both the Sherman Antitrust Act and represent an unlawful restraint of trade under Montana law. *See* 15 U.S.C. §§ 1,2, 14; Mont. Code Ann. § 30-14-205.

"A plaintiff must prove three elements to prevail on an illegal tying claim: (1) that there exist two distinct products or services in different markets whose sales are tied together; (2) that the seller possesses appreciable economic power in the tying product market sufficient to coerce acceptance of the tied product; and (3) that the tying arrangement affects a 'not insubstantial volume of commerce' in the tied product market." *Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145 (9th Cir. 2003). Plaintiffs allege that Boyne leverages ownership of the "tying product," in this case the Condos, to force Plaintiffs to use Boyne's rental management services—the "tied product." (Doc. 1 at ¶ 134.)

14

The "essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984). In all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product. *Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 46 (2006). Boyne asserts that Plaintiffs' tying claim fails because Boyne lacks market power in the tying product and Plaintiffs have failed to allege that the anti-competitive aspect of the alleged tying arrangement injured them. (Doc. 4 at 27.)

Boyne alleges that it lacks the market power to force Plaintiffs to use Boyne as a rental manager. (Doc. 12 at 13.) The Declarations require Plaintiffs to use Boyne as a rental manager as a condition of purchasing their Condos, but that requirement applies only if Plaintiffs choose to rent out their Condos. (Doc. 1-3.) Plaintiffs freely may use their Condos for personal use. (*Id.*) Boyne essentially would have the Court believe that they lack market power because Plaintiffs are not required to enter the market. The fact remains, however, that if Plaintiffs *wish* to enter the rental market, the Declarations bind their hands in terms of rental managers. *See* (Doc. 1-1.)

15

A tying arrangement exists whenever the seller exploits its control over the tying product to force the buyer into the purchase of a tied product "that the buyer either did not want at all, *or might have preferred to purchase elsewhere on different terms*." *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (2006). The Declarations may not force Condo owners to enter into an RMA if the owner "did not want [to rent] at all," but they force Condo owners who might have sought to "purchase [rental management services] elsewhere on different terms" to enter into an agreement with Boyne instead. *Id.* The Declarations grant Boyne market power in "reduc[ing] competition in the market for the tied product," in this case rental management services. *Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*, 532 F.3d 963, 971 (9th Cir. 2008).

Boyne's argument that Plaintiffs have failed to allege an injury as a result of the alleged tying arrangement also fails. Plaintiffs have pleaded that the 50% gross rental income payable to Boyne under the RMA exceeds the fair market rate for rental managers. (Doc. 1 at ¶ 138.) Plaintiffs contend that other rental management companies in the Big Sky area provide similar services for a comparable 25% to 30% of gross rental revenues. (Doc. 1 at ¶ 10.) Plaintiffs' allegations permit the Court to draw the reasonable inference that Plaintiffs could have retained rental management services for half of Boyne's cost, had they not been limited by the Declarations. These allegations prove sufficient for Plaintiffs' antitrust claims to

survive Boyne's motion to dismiss. *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199 (9th Cir. 2012).

### g.  Sufficiency of Count VII: Accounting

Boyne argues that Plaintiffs' Accounting claim fails because the RMAs permit Plaintiffs to request an accounting through Boyne, but Plaintiffs fail to allege in their Complaint that they have requested an accounting from Boyne before seeking one through the Court. (Doc. 4 at 29); *See* (Doc. 1-3 at 3 ("Unit Owner, at any reasonable time upon reasonable notice and during regular business hours, may examine the accounting records relating to the Unit.").) A cause of action for accounting in Montana requires the plaintiffs to plead facts demonstrating the plaintiffs are unable to procure an accounting for themselves. *Redman v. Bank of America, N.A.*, 2016 WL 406334, at *1 (D. Mont. Feb. 2, 2016).

Plaintiffs asserted at the hearing on this matter that some of the Plaintiffs already may have requested an accounting, pursuant to the RMAs. *See* (Doc. 13.) Plaintiffs acknowledge, however, that they do not plead any prior attempts at receiving an accounting in their Complaint. (Doc. 4 at 36.) The Court may consider only factual allegations contained within the Complaint when considering a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs have not pled

sufficient factual allegations, at present, to support their claim for an accounting.
*Id.* The Court dismisses Count VII without prejudice.

### h.  Sufficiency of Count VIII: Declaratory Judgment.

Boyne asserts that breach of contract presents the proper avenue for
Plaintiffs' claims because ""[t]he central purpose of the [Declaratory Judgment Act
(DJA)] is to provide parties with a declaration of their rights prior to incurring
actual injury." (Doc. 12 at 14 (quoting *Olagues v. Russoniello*, 770 F.2d 791, 803
(9th Cir. 1985)).) Plaintiff asserts, however, that they have incurred both ongoing
injuries under the terms of the RMAs and the Declarations and that Condo owners
face future injury, due to recent, alleged threats by Boyne's attorney against Condo
owners who have failed to use Boyne as their rental manager. (Doc. 9 at 37–38.)
Plaintiffs' declaratory judgment action proves appropriate to avoid the risk of
future injury.

### III.   Whether the plausibility of Plaintiffs' claim for class action relief proves an appropriate issue for a 12(b)(6) motion.

Boyne argues that Plaintiffs fail to state a plausible case for class treatment
under Fed. R. Civ. P. 23, because their claim lacks "question of law or fact
common to the class." (Doc. 4 at 30.) Plaintiffs argue in response that Courts
should generally avoid consideration of Rule 23 compliance made under a motion
to dismiss for failure to state a claim. *See Gillibeau v. City of Richmond*, 417 F.2d
426 (9th Cir. 1969). The Court agrees with Plaintiffs.

Whether Plaintiffs' class definition meets the requirements of Rule 23 presents an argument best reserved as a defense to Plaintiffs' motion for class certification. *Kombol v. Allstate Ins. Co.*, No. CV 20-70-BLG-SPW, 2020 WL 5816498, at *4 (D. Mont. Sept. 30, 2020). The Court declines to address the issue at this time.

## ORDER

Accordingly, **IT IS ORDERED**:

1. Defendants' Motion to Dismiss (Doc. 3) is **GRANTED, in part,** and **DENIED, in part.**

2. Count VII of the Complaint (Doc. 1) is **DISMISSED without prejudice.**

Dated this 7th day of July, 2022.




Brian Morris, Chief District Judge
United States District Court

19