Ben Alke
John G. Crist
CRIST, KROGH, ALKE & NORD, PLLC
209 S. Willson Ave.
Bozeman, MT 59715
Tel: (406) 255-0400
balke@cristlaw.com
jcrist@cristlaw.com

Devlan Geddes
Henry J. Tesar
GOETZ, GEDDES & GARDNER, P.C.
35 N. Grand
Bozeman, MT 59715
Tel: (406) 587-0618
devlan@goetzlawfirm.com
htesar@goetzlawfirm.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| LAWRENCE ANDERSON, as trustee for the LAWRENCE T. ANDERSON AND SUZANNE M. ANDERSON JOINT REVOCABLE LIVING TRUST, ROBERT AND NORA ERHART, and TJARDA CLAGETT, | Case No. 2:21-cv-00095-BMM |
| Plaintiffs, | |
| v. | |
| BOYNE USA, INC., BOYNE PROPERTIES, INC., and SUMMIT HOTEL, LLC, | **BRIEF IN SUPPORT OF MOTION TO MAINTAIN STATUS QUO DURING LITIGATION** |
| Defendants. | |

## INTRODUCTION

Plaintiffs ask the Court to address an escalating pattern of threats and extrajudicial strong-arm tactics by Boyne USA, Inc. ("Boyne") against Plaintiffs and potential class members, culminating in the recent ejection of Plaintiffs from the rental management program ("Program") effective February 24, 2023. Exhibits 1 & 2.

Pending the outcome of this case, Plaintiffs remain subject to their respective condominium declarations which prohibit them from renting their units outside the Program. Boyne thus presents Plaintiffs with a Hobson's choice: keep their units during litigation and suffer even more severe financial harm, or rent their units outside of the Program and risk being countersued by Boyne for breach of the declarations.

Boyne transparently seeks to: (1) manufacture mootness and representative adequacy arguments by cutting the class representatives out of the program;[1] and (2) punish and make an example of them to

_____

[1] It is beyond the scope of this motion, but to the extent this is Boyne's goal, its maneuvers are ineffectual as well as improper. It is well-established that when "conditions change so that the relief sought by the plaintiff has been obtained or is no longer feasible, the action will not be dismissed as moot if it is shown that the change in conditions was caused by defendant or the defendant is capable of altering the changed conditions back to their original state." 3 Newberg on Class Actions § 2.17 (3d ed.).

dissuade other potential class members (and perhaps similarly situated owners at Boyne's other resorts) from exercising their rights.

Boyne's conduct demonstrates why class certification is necessary. It is precisely this lack of choice and potential for economic coercion that lies at the heart of this case. One of the primary purposes of class action litigation is to ensure legal accountability and redress in situations, like this one, where an ongoing economic relationship and the threat of retaliation could discourage individual plaintiffs from "taking a stand." *U.S. Fidelity & Guar. Co. v. Lord*, 585 F.2d 860, 870 (8th Cir. 1978) (certification was "uniquely appropriate" after the retaliatory discharge of a class representative); *accord Horn v. Wholesale Grocers*, 555 F.2d 270, 275 (10th Cir. 1977). But that is a decision for another day.

In the meantime, the Court should put a stop to this behavior so the case can proceed in an orderly fashion. Temporary injunctions are an accepted judicial tool to prevent intimidation and harassment campaigns and when a party's conduct is otherwise "calculated to frustrate litigation." *Bergen Drug Co. v. Parke, Davis & Co.*, 307 F.2d 725, 728 (3rd 1962). Plaintiffs therefore respectfully ask the Court to issue an injunction *pendente lite* requiring Boyne to maintain the status quo. Plaintiffs and potential class members should be allowed to continue renting their units

3

so they are not entirely deprived of all economic benefits of ownership while this case is pending. The Court should restrain further communications disparaging Plaintiffs' claims or threatening economic injury or retaliation pursuant to Fed.R.Civ.P. 23(d).

## BACKGROUND

This class action arises from an exclusive rental management program created and operated by Boyne.

Plaintiffs own residential units in three condominium hotels developed by Boyne at Big Sky known as the Summit, Shoshone, and Village Center. The declarations of each condo-hotel provide that unit owners may not lease their units except through Boyne and pursuant to its management agreement on terms set by Boyne. *See e.g.* Docs. 1-1 through 1-3 (declarations and management agreements). Plaintiffs contend that this covenant is illegal and unenforceable. Moreover, they contend that the requirement that unit owners must hire Boyne as leasing agent to rent their units constitutes an illegal tying arrangement and violates other provisions of federal and state law.

Boyne has engaged in a pattern and practice of threatening and abusive communications and retaliatory conduct towards any unit owners who challenge the rental management program. For example, in a

4

December 2020 email, Boyne CEO/President Stephen Kircher attempted to throw cold water on the brewing conflict by foisting blame on the owners' associations and their management. *See* Exhibit 3. He accused the complaining owners of "finger pointing" and "levying inaccurate claims about Big Sky Resort overcharging for services which consequently took this association into some very dark places." *Id.* He stated that they were "[d]emonizing" Big Sky, putting strain on the relationship between the owners of the resort, and causing everyone "financial detriment" and "sapp[ing] vital resources, in the form of legal fees and extra expenses…." *Id.* Kircher concluded by warning that the association leaders "are taking you down this very dark path once again" and threatened legal action if the unit owners do not "follow our lead" and honor the "foundational documents." *Id.*

After Plaintiffs filed suit, Big Sky President/COO Taylor Middleton wrote to the unit owners again, disparaging the complaint as "an attempt to disrupt Big Sky Resort's rights, and our qualitative approach to rental management and guest experience." Exhibit 4. He continued:

> Finally, we have highly valued deep relationships with many of you and while there are certain privacies that must be maintained during litigation, we commit to keeping you informed as we fight this frivolous claim and protect our rights, those articulated in the historic condominium documents. We will not allow this claim by three owners to become a distraction from

our long-term focus on improvement nor to undermine the fantastic momentum happening at Big Sky Resort.

Just weeks before, counsel for Boyne sent threatening letters to unit owners and even banned certain unit owners from skiing at Big Sky and accessing Boyne/Big Sky property other than to access their units. *See, e.g.*, Exhibits 5 & 6. Boyne later backed down on these bans after the filing of this case, but soon found other economic pressure points.

On January 24, 2023—the day after this Court conducted a telephonic status conference about a variety of discovery issues, including Boyne's destruction of relevant evidence—Boyne sent a letter advising it was terminating the class representatives' rental agreements and expelling them from the rental management program effective February 24, 2023. Exhibit 1. Earlier this week, Boyne sent another letter with additional details, listing all of the amenities and services Boyne was suspending, and renewing the ski ban as to Plaintiffs' counsel. Exhibit 2.

As observed above, the declarations prohibit Plaintiffs from renting their units outside of the Boyne program and Boyne has threatened to sue unit owners who dissent. *See* Exhibit 3, p. 2. ("These violations of the foundational documents cannot continue as the status quo and Boyne Resorts is prepared to take whatever action necessary (legal or otherwise) to enforce them to protect the Shoshone and Big Sky Resort brands."); *see*

6

*also* Exhibit 5 (lawyer letters threatening unit owners who were not leasing their units through Boyne). Indeed, it is more than just a threat. Boyne has filed lawsuits against unit owners for perceived breaches of the association declarations. The same law firm that represents Boyne in this action is currently pursuing litigation against a former unit owner for an alleged breach of the declarations and is seeking damages and attorney fees. Exhibit 7.[2]

Thus, by unilaterally terminating the rental management agreement that it forced them to sign, Boyne would prevent Plaintiffs from renting their units to earn any income under penalty of legal action and potential liability.

## ARGUMENT

"Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99–100 (1981); *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 171 (1989). Moreover, cases with antitrust elements "serv[e] not only the immediate interests of the litigants, but the continuing interest of the public in a smoothly functioning and unobstructed system of commerce." *Bergen*, 307 F.2d at 727–28.

---

[2] Boyne alleges a Shoshone unit owner breached Article X, Section I, of the declarations regarding rights of first refusal. The leasing restriction for the Shoshone is also contained in Article X.

Such cases "present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases." *Gulf Oil*, 452 U.S. at 99–100; *Hoffman-LaRoche*, 493 U.S. at 171; *see also* Debra Lyn Bassett, *Pre-Certification Communication Ethics in Class Actions*, 36 Ga. L. Rev. 353, 403 (2002) (the case law is "replete with horror stories" about improper communications with potential class members, use of threats and "other forms of coercion" to undermine the process).

To safeguard the integrity of such important proceedings, district courts have "both the duty and the broad authority" to exercise control over the case and to "enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil*, 452 U.S. at 100; *Hoffman-La Roche*, 493 U.S. at 171. In particular, and relevant to this motion, "[t]hreatening potential class members with legal, economic, or political sanctions should they join the class or initiate litigation" is improper, "raise[s] serious ethical questions" for counsel and may be properly enjoined by the court during the pendency of the action. 3 Newberg on Class Actions § 15.11 (3d ed.) (pre-litigation threats and retaliation prohibited); *id.* § 15.14 (likewise, post-filing and pre-certification); *see*, *e.g.*, *Impervious Paint Indus. v. Ashland Oil, Inc.*, 508 F. Supp. 720, 723 (W.D. Ky. 1981) (defense counsel violated ethical rules by

permitting client to contact and attempt to intimidate potential class

members to deter their participation; injunction issued).

Such injunctions promote public confidence in the justice system and

incentivize socially desirable litigation by ensuring that potential plaintiffs

and class members know that "courts will protect them from retaliation."

*Smith Wholesale v. R.J. Reynolds Tobacco*, No. 2:03-CV-30, 2003 U.S.

Dist. LEXIS 25468, at *10 (E.D. Tenn. Feb. 7, 2003).

The authority to grant such relief derives from two sources:

First, in all cases, "[f]ederal courts possess certain 'inherent powers,'

not conferred by rule or statute, 'to manage their own affairs so as to

achieve the orderly and expeditious disposition of cases.'" *Am. Unites for

Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021); *Chambers v.

NASCO, Inc.*, 501 U.S. 32, 43 (1991) (courts are vested, "by their very

creation" with implied power to manage their affairs and achieve the orderly

and expeditious disposition of cases). One recognized application of this

inherent authority is the power to issue preliminary injunctions to restrain a

litigant from engaging in behaviors that may interfere with the judicial

process. *See*, *e.g.*, *Bergen*, 307 F.2d at 726 (court had "broad equity power

to grant an injunction *pendente lite*" to prevent economic harm and "undue

interference" with the fair and orderly presentation of the case…." (citations

omitted)); *accord Doe v. Fitzgerald*, No. 20-10713, 2022 U.S. Dist. LEXIS 20173 (C.D. Cal. Feb. 2, 2022) (recognizing implied power to enjoin harassing or inappropriate conduct related to pending suit); *Young v. Ariz. DEQ*, No. CV-20-1721, 2020 U.S. Dist. LEXIS 201411 (D. Ariz. Oct. 28, 2020); *United Artists Corp. v. United Artist Studios LLC*, No. CV-19-828, 2019 U.S. Dist. LEXIS 220077 (C.D. Cal. Oct. 17, 2019); *SEC v. Kaplan*, No. 3:16-cv-270, 2019 U.S. Dist. LEXIS 161662 (D. Nev. Sep. 20, 2019).

Unlike provisional injunctive relief related to the merits, which generally rests on and is incidental to the court's authority to grant final relief in an equity case, temporary injunctions to protect the integrity of the litigation process based on the court's inherent authority may be granted "although the final relief sought [is] legal and not equitable in nature." *Bergen*, 307 F.2d at 727 (collecting cases).

Second, in the class action setting, Rule 23(d) broadly empowers district courts to oversee and "impose conditions" on the parties' conduct to ensure procedural and substantive fairness. *See Lake v. Unilever U.S., Inc.*, 964 F.Supp.2d 893, 925–26 (N.D. Ill. 2013) (citing *Gulf Oil, supra*).

Preliminary injunctive relief under Rule 23(d) is frequently granted to restrain communications with potential class members that go beyond ordinary business and that might be perceived as threatening or calculated

to interfere with potential class members' freedom to decide whether to participate. *See Unilever*, 964 F.Supp.2d at 930 (judicial intervention is appropriate to prevent communications with potential class members that are "coercive and misleading" or that undermine the class action process); *Wang v. Chinese Daily News, Inc.*, 623 F.2d 743, 755 (9th Cir. 2010), vacated on other grounds by 565 U.S. 801; *see also Wells v. Volf*, No. 4:04CV3193, 2005 U.S. Dist. LEXIS 54921, at *22 (D. Neb. Mar. 7, 2005) (Rule 23(d) can be employed to restrain communications that would "undermine the integrity" of the proceedings or "sabotage the class action" by intimidating potential class members).

Rule 23(d)'s potential applications are broader, however. The court's authority to regulate conduct under Rule 23 "extends to both parties and their counsel" and gives the court "extensive power" to craft rules and remedies, broadly "encompass[ing] many affirmative and negative controls on the parties." *Zarate v. Younglove*, 76 F.R.D. 80, 93–94 (C.D. Cal. 1980). The Federal Rules of Civil Procedure, and the idiosyncratic case management considerations that arise in class actions, thus require and "authorize judicial involvement that would, in any other setting, be antithetical to the well-established norms of judicial passivity." *Id.*; *see also Kutzman v. Derrel's Mini Storage*, 354 F.Supp.3d 1149 (E.D. Cal. 2018)

11

("when a party engages in behavior that threatens the fairness of the litigation," the court is obligated to intervene and regulate the parties' conduct and communications (citing *Gulf Oil* and *Wang, supra*)).

Courts can enjoin class action defendants and their counsel not only from expressly discouraging participation, but also maligning the merits, making "explicit or implicit" threats of financial harm, or otherwise using the defendant's station and "economic power" to coerce potential class members and influence the litigation. *Unilever*, 964 F.Supp.2d at 927–28 (collecting cases).

For example, in *In re IHOP Franchise Litig.*, No. 77, 1972 U.S. Dist. LEXIS 15714, at *2 (W.D. Mo. Jan. 4, 1972), a putative class action against a restaurant franchisor, the court exercised its inherent authority to enjoin the termination of a franchise agreement and prohibited communications threatening termination or otherwise intimidating and harassing potential class members. The court found that the defendant franchisor, by selectively terminating the franchise of the lead class representative, was wrongfully employing tactics "designed to use economic power" to drive the class representative out of business "as a lesson" to other franchisees and to dissuade their participation. *Id.*

Boyne's tactics in this case are from the same playbook.

The Third Circuit addressed the chilling effect that such retaliatory measures can have, observing that while "refusal to deal" is usually a matter of free business enterprise, special considerations arise when parties with an ongoing economic relationship are adverse litigants. Free enterprise does not stretch so far as to allow a defendant to engage in retaliatory conduct that would interfere with the judicial process:

> The undisputed facts here are that the buyer-seller relationship was discontinued because of the filing of the main action. True enough, the defendant can choose customers, but it should not be permitted to do so in order to stifle the main action, especially where it is apparent that such conduct will further the monopoly which plaintiff is attempting to bring about and which, if proved, would entitle plaintiff to permanent relief.

*Bergen*, 307 F.2d at 727. "The point plaintiff convincingly makes is that it will be unable to secure the cooperation of other wholesalers and of retailers to be witnesses because they fear the same sort of retaliatory action that plaintiff has experienced." *Id*. at 728. Accordingly, the court granted an injunction to maintain the status quo during litigation.

As the above passage illustrates, the potential for impropriety and the need for judicial oversight is especially pronounced in captive business relationships where potential class members lack the freedom to simply pick up and conduct their business elsewhere. *Unilever*, 964 F.Supp.2d at

926–29; *see also, e.g. Kleiner v. First Nat'l Bank of Atl.*, 751 F.2d 1193, 1202 (11th Cir. 1985) (coercive and intimidating communications with borrowers who had no other source of credit were improper and properly enjoined); *Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 631–32 (N.D. Tex. 1994) (communications from defendant wholesaler to potential class members denigrating class action was coercive and improper due to class members' economic dependence on a continuing business relationship); *Ralph Oldsmobile*, *Inc. v. GMC*, No. 99-Civ.-4567, 2001 U.S. Dist. LEXIS 13893 (S.D.N.Y. Sep. 7, 2001) (likening the case to *Kleiner* and *Hampton*, a captive relationship between franchisee car dealer and manufacturer was ripe for economic coercion because dealers had no choice but to rely on the defendant manufacturer for inventory, information, parts, supplies and credit, which created a "clear potential for abuse."); *Shores v. Publix Super Markets, Inc.,* No. 95-1162,  1996 U.S. Dist. LEXIS 22396, WL (M.D. Fla. Nov. 25, 1996) (dynamics of employer-employee relationship made communications denigrating class action and making veiled suggestions about the financial consequences inherently coercive, requiring injunction).

As explained above, Boyne has engaged in precisely the same kind of inappropriate intimidation tactics and retaliatory measures to "put the

screws to" the unit owners who have had the temerity to question the fairness and legality of Boyne's business model. Moreover, Boyne has repeatedly sent the same kind of communications denounced and enjoined in the above-cited cases by threatening legal and financial consequences for unit owners and impugning Plaintiffs and their claims. The Court should not allow Boyne to exploit the very captive arrangement that is challenged by this action to put economic pressure on the class representatives, to manipulate other owners into abstaining out of fear, and to undermine these proceedings to prevent the Court from reaching the merits.

## CONCLUSION

Plaintiffs respectfully submit that the Court should issue an order maintaining the status quo by enjoining the class representatives' expulsion from the rental management program and prohibiting further retaliation and intimidation tactics. Plaintiffs motion should be granted.

DATED this 3rd day of February 2023.

CRIST, KROGH, ALKE & NORD, PLLC

By:__/s/ Ben Alke_____
　　　Ben Alke

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 7.1(d)(2) of the Local Rules, the undersigned certifies that this brief is printed with proportionately spaced Arial text typeface of 14 points; is double spaced (except for footnotes and quoted and indented material which are single spaced); with left, right, top and bottom margins of one inch; and the word count as calculated by Microsoft Word is 2,972 words, excluding the Caption and Certificate of Compliance.

DATED this 3rd day of February 2023.

CRIST, KROGH, ALKE & NORD, PLLC

By:  /s/ Ben Alke
        Ben Alke



IAN MCINTOSH
P.O. BOX 10969
BOZEMAN, MT 59719-0969
PHONE: (406) 556-1430
FACSIMILE: (406) 556-1433
IMCINTOSH@CROWLEYFLECK.COM

January 25, 2023

**<u>VIA E-MAIL ONLY</u>**
Ben Alke
Crist, Krogh, Alke & Nord, PLLC
209 S. Willson Ave.
Bozeman, MT  59715
balke@cristlaw.com

      RE:   *Anderson v. Boyne*

Dear Ben:

I am writing regarding two issues related to the *Anderson* litigation.  First, it is my understanding that you made a reservation to stay at the Huntley Lodge this summer.  Given your ongoing lawsuit against Boyne, it would be inappropriate for you to stay at the Huntley Lodge. Boyne intends to cancel your reservation and provide you with a full refund.  Please contact me if there are any issues with obtaining a full refund.

Second, I am writing regarding the rental management agreement to which each of your clients agreed. Each of the rental management agreements states that "Either party may terminate this Agreement at any time upon giving thirty (30) days' notice in writing to the other party."  (*See, e.g.*, Exhibit 12 at 1.) Boyne hereby provides notice of its intent to terminate the rental management between Boyne USA, Inc. and each of the named Plaintiffs. As set forth in the contract, Plaintiffs' rental management agreements will terminate in 30 days, on February 24, 2023. If there are reservations that are specifically assigned to Plaintiffs' units, Boyne will honor those reservations through February 24, 2023.

Please contact me with if you have any questions or if you contend that this letter is somehow insufficient notice under the terms of the rental management agreements.

Sincerely,

CROWLEY FLECK PLLP

*/s/ Ian McIntosh*
Ian McIntosh

cc:  All counsel

**EXHIBIT**

**1**



IAN MCINTOSH
P.O. BOX 10969
BOZEMAN, MT 59719-0969
PHONE: (406) 556-1430
FACSIMILE: (406) 556-1433
IMCINTOSH@CROWLEYFLECK.COM

February 1, 2023

**VIA E-MAIL ONLY**
Ben Alke
Crist, Krogh, Alke & Nord, PLLC
209 S. Willson Ave.
Bozeman, MT  59715
balke@cristlaw.com

      RE:    *Anderson v. Boyne*

Dear Ben:

I am writing to follow up on my letter dated January 25, 2023.  As indicated in my prior letter, your reservation at the Huntley Lodge has been canceled.  In addition, I am writing to request that all attorneys and staff of Crist, Krogh, Alke & Nord, PLLC and Goetz, Geddes & Gardner P.C. that are working on *Anderson v. Boyne* not ski at Big Sky Resort.  Furthermore, we request that all attorneys and staff working on the *Anderson* case not contact Big Sky Resort or stay at any hotels or condominiums owned or operated by Big Sky Resort.  If you need to access any hotels at Big Sky Resort as part of the *Anderson* litigation, please contact me. We will accommodate any reasonable request. Thank you for your anticipated cooperation.

I am also writing to provide notice that the items listed below, which are provided by Boyne as part of rental management, will be removed from Plaintiffs' units on February 25, 2023 at 11:00 am.  Additionally, because Plaintiffs will no longer be in the rental management program, as of February 25, 2023 the services listed below will no longer be available to Plaintiffs or others staying in their units.

**Erharts**
The following items will be removed from Summit units 10606 and 10612:
- Linens - duvet covers, fitted sheets, flat sheets, pillowcases, pillow protectors
- Towels - bath towel, hand towel, wash cloths, bathmats
- Bathroom amenities - bar soap, lotion, cotton balls, Q-tips
- Paper products - paper towels, toilet paper, Kleenex, do not disturb hanger, TV guide
- Kitchen supplies - dish soap, dishwasher detergent, foil, sponge, dish rags, hand towels, pot holders
- Coffee supplies
- Plastic laundry bag, extra plastic bags
- Flashlights

**EXHIBIT**

**2**

- Notepads and pens
- Guest Directory sign
- Humidifiers, fans, heaters, rollaway beds, pack and plays

The following services will no longer be available to Summit units 10606 and 10612:
- Bellman luggage assistance and storage or transportation (Valet still available as labor paid by HOA)
- Concierge support
- Housekeeping services
- Front desk assistance (except for getting keys to unit)
- Complimentary ski valet

### <u>Clagett</u>
The following items will be removed from Village Center 378 (also referred to as Village Center 308):
- Linens - duvet covers, fitted sheets, flat sheets, pillowcases, pillow protectors
- Towels - bath towel, hand towel, wash cloths, bathmats
- Bathroom amenities - bar soap, lotion, cotton balls, Q-tips
- Paper products - paper towels, toilet paper, Kleenex, do not disturb hanger, TV guide
- Kitchen supplies - dish soap, dishwasher detergent, foil, sponge, dish rags, hand towels, pot holders
- Coffee supplies
- Plastic laundry bag, extra plastic bags
- Flashlights
- Notepads and pens
- Guest Directory sign
- Humidifiers, fans, heaters, rollaway beds, pack and plays

The following services will no longer be available to Village Center 378 (also referred to as Village Center 308):
- Bellman luggage assistance/storage or transportation and valet
- Concierge support
- Housekeeping services
- Front desk assistance (except for getting keys to unit)
- Complimentary ski valet

### <u>Anderson</u>
The following items will be removed from Shoshone 1953:
- Linens - duvet covers, fitted sheets, flat sheets, pillowcases, pillow protectors
- Towels - bath towel, hand towel, wash cloths, bathmats
- Bathroom amenities - bar soap, lotion, cotton balls, Q-tips
- Paper products - paper towels, toilet paper, Kleenex, do not disturb hanger, TV guide

- Kitchen supplies - dish soap, dishwasher detergent, foil, sponge, dish rags, hand towels, pot holders
- Coffee supplies
- Plastic laundry bag, extra plastic bags
- Flashlights
- Notepads and pens
- Guest Directory sign
- Humidifiers, fans, heaters, rollaway beds, pack and plays

The following services will no longer be available to Shoshone 1953:
- Bellman luggage assistance/storage or transportation and valet
- Concierge support
- Housekeeping services
- Front desk assistance
- Complimentary ski valet
- Laundry facilities
- Huntley pool and hot tubs

Please contact me if you have any questions.

Sincerely,

CROWLEY FLECK PLLP

*/s/ Ian McIntosh*
Ian McIntosh

cc:  All counsel



**From:** **Big Sky Resort Owner Services** owner.services@bigskyresort.com
**Subject:** A Message from Stephen Kircher to Shoshone Owners
**Date:** December 22, 2020 at 6:28 PM
**To:** lance.hw@gmail.com

Dear Shoshone Owner,

As most of you probably know, Boyne Resorts has owned and operated Big Sky Resort since 1976 and it is our intent to continue to lead this resort and the community along the journey of creating a world class mountain destination. Boyne Resorts developed the Shoshone Condominium Hotel and Yellowstone Conference Center in the 1980's in the core of the Mountain Village as part of that journey.

For several decades, Big Sky Resort's relationship with the Shoshone flourished without incident with previous boards adhering to the foundational documents that were set forth as part of any owner's purchase of a unit in this condominium hotel. Owners adhered to the rental management provisions in the covenant and the facilities were maintained at a high level.

However, against our better advice, those early boards did refrain from building up adequate reserves to ultimately keep up with the long-term needs that were required to maintain the Shoshone to the necessary standards. This created a situation that forced later boards in the early 2000's to significantly raise association dues to meet the needs of an aging facility.

Eventually this caused a great deal of pushback, finger pointing and searching for ways to try to lower costs and ultimately led to the levying of inaccurate claims about Big Sky Resort overcharging for services which consequently took this association into some very dark places. Demonizing Big Sky Resort and Boyne was a key strategy as part of that process by several board members and led us at the time to distance ourselves from managing your HOA. It also put you on a path to a long and very expensive lawsuit that ended up settling to your financial detriment and only gave you a minimal number of insignificant clarifications that in my opinion could have been done without involvement of attorneys.

Further, the actions of your board have also caused long term negative cost implications for propane use for Shoshone, Big Sky Resort, and other Mountain Village users of Abaco as well. Additionally, due to the inefficiencies of trying to go it alone with HOA Management, it now it appears Shoshone is paying double (per sq. ft.) what some other similar HOA's in the Mountain Village are paying. This is happening at the same time guests are being treated to a completely disjointed experience and being put at undue risk from absentee management.

All of this was truly a lose/lose situation as it also sapped vital resources, in the form of legal fees and extra expenses, from your own association and from Big Sky Resort that did not get reinvested into improving the overall resort. Based on the flurry of recent communications from your board



EXHIBIT
173
Skircher

EXHIBIT
3

**Plaintiffs002352**

leadership, it seems they are taking you down this very dark path once again.

Please understand, your current board leadership continue to ignore the foundational condominium documents and the brand positioning intent that we set forth as the developers. As a result, Shoshone and Big Sky Resort's brand is being damaged by the poor attempts at renovations and for allowing a mishmosh of rental companies and some owner managed units, which is in clear violation of the rental provisions outlined in your association's foundational documents. This has resulted in a disjointed, inconsistent, potentially unsafe and subpar level of service quality which is negatively affecting the guest experience. Shoshone on its current course is not set up for success nor will it be able to compete in the years to come with the lodging transformation underway around it. Our Big Sky leadership team finds this situation untenable and certainly not in the best interest of long-term owners of Shoshone Condominium Hotel units or Big Sky Resort.

These violations of the foundational documents cannot continue as the status quo and Boyne Resorts is prepared to take whatever action necessary (legal or otherwise) to enforce them to protect the Shoshone and Big Sky Resort brands. We hope that will not be necessary and that the majority of the owners rise to the occasion and do what is right and in all of our collective best interests.

As you also know, Big Sky Resort has initiated a massive capital commitment to continue to elevate the overall experience starting through its Big Sky 2025 initiative. (www.bigsky2025.com). This commitment includes updating the core Mountain Village to effectuate one of the key pillars of the 2025 vision. Big Sky Resort is fully committed to this endeavor, for example we will be investing up to $20M into the Huntley Lodge alone in the near term with an equal amount being invested by the Summit Hotel Homeowners Association and Big Sky Resort to significantly upgrade the Summit Hotel, a transformative project that has already commenced. Further, our company will be investing many times these amounts into the other pillars of Big Sky 2025, such as the on-mountain experiences, as we elevate Big Sky Resort into America's Alp.

In order for the Shoshone Owners to also be brought along on this transformative journey it necessitates that the Shoshone leadership follow our lead and work in unison with us versus trying to act independently. By doing such you can take full advantage of the resources, cost efficiency, experience and leadership the Big Sky team and Boyne offers other HOA's across the nation. As well this will help drive up lagging property values, maximize legitimate rental revenue and facilitate a more enjoyable and safer experience for owners and guests. Shoshone and Big Sky Resort facilities are bolted together physically, and it is in our mutual best interest to function in a fully coordinated manner.

Boyne Resort's recent exercise of its rights of first refusal, and its purchase of Shoshone units, reinforces our commitment to a leadership role and toward the future vision of the Shoshone's role in the base area of Big Sky Resort. We believe in Shoshone and the long-term value of this property if both the HOA and all the units are managed by us and elevated to the standards necessary to compete in the coming years.

Plaintiffs002353

In light of the above, Boyne Resorts encourages Shoshone owners to engage with your board leadership to work in coordination with Big Sky Resort, so Shoshone can move forward in a synchronized manner toward this resort transformation.

With that, the Big Sky Resort team looks forward to a collaborative future and helping you maximize the benefits of the overall resort investments and elevating the Shoshone Condominium Hotel experience to what it deserves to be. The team stands ready to meet directly with the association leadership and any other interested owner who wish to engage in constructive dialogue on getting this association back on track and in compliance with the foundational documents.

Respectfully,

Stephen Kircher
President and CEO
Boyne Resorts

This message was sent to Lance Wallin <lance.hw@gmail.com> by Big Sky Resort Owners
Click here to unsubscribe from further communications

Plaintiffs002354

---------- Forwarded message ---------
From: **Big Sky Resort Owner Services** <owner.services@bigskyresort.com> Date:
Tue, Jan 11, 2022 at 6:52 PM
Subject: A Message from Big Sky Resort
To: <naerhart@gmail.com>

---

Dear Rental Management Owner,

Last week we learned that three condominium owners have filed suit against Boyne Resorts and affiliated entities, the parent company for Big Sky Resort, related to our rental management practices. You can read the claim here. We believe these owners simply do not want to adhere to the relationship framework of a hotel property that they voluntarily purchased and documents that they agreed to and signed.

For 45 years Boyne Resorts has been leading a march toward continual improvement and growth of the Big Sky Resort experience. We believe, and resort and community growth confirms, that this long-term vision improves experiences for all parties including homeowners, visitors, and the larger community.

Part of the claim alleges that Big Sky Resort charges rental management fees that are above market rate. First, there is no defined market rate for rental management in a hotel setting in Big Sky. One of the biggest benefits under the Big Sky Resort model is housekeeping. With Big Sky Resort, guests do not have additional costs for daily, and in some cases turndown, housekeeping. These costs, to a guest or sometimes billed to the owner, can exceed hundreds of dollars per stay in the case of the discount rental management companies. Further, passing those costs along to a guest is not the expectation at a 3–4-star hotel property. Further, under the "you get what you pay for" analogy, some rental management discounters do charge lower rental management fees and many rent at lower rates than Big Sky Resort. Yet, these discounters also provide little to no service or guest conveniences, under-resolve when guest experience problems arise, nickel and dime owners with extra charges, and pay little to no role in unit repair, improvements, or renovation. This "race to the bottom" approach in rental management sets up a scenario for disappointed guests and condominiums falling into disrepair.

Big Sky Resort's management program focuses on setting a high bar for pricing, service quality, guest satisfaction, and unit owner satisfaction. Some services and benefits that Big Sky Resort's management program offer that the discounters do not include:

- Security and management oversite, 24 hours a day, 365 days a year
- A full-time onsite dedicated team of maintenance experts, available for rapid & effective emergency response and repairs
- Guest service agents, available 24 hours a day, at a front desk on site
- Bell staff who escort guests and haul baggage to the accommodation, and assure the guest has everything they need before leaving, available 24 hours a day.
- Housekeeping services, executed and overseen by teams working for Big Sky Resort. In some cases,

**EXHIBIT**

**4**

providing exclusive evening turn-down services, special requests, or dining room service.
- Concierge services, available at no charge, to assist guests in planning special evenings and extraordinary experiences
- Unit owners under management receive a gift package of ski lift tickets for themselves or their friends along with specially designed exclusive owner events
- Exclusive discounts on lift tickets and ski/snowboard rentals for guests and owners when staying in their Big Sky Resort rental managed condominium/home
- Millions of dollars spent annually marketing Big Sky Resort and Big Sky Resort managed lodging
- In addition, the Resort Fee, which is paid for directly by the guest and fully disclosed at the time of booking affords guests highly valued amenities such as on snow ski and snowboard valet, scenic chair lift rides, complimentary boat rentals, children's programs, movies in a theater, and special lobby entertainment events. As well as drivers available to help guests get to restaurants, bars, medical facilities, and shops locally

The plaintiffs in this case do not want to adhere to the condominium documents. Their claim is an attempt to disrupt Big Sky Resort's rights, and our qualitative approach to rental management and guest experience.

Finally, we have highly valued deep relationships with many of you and while there are certain privacies that must be maintained during litigation, we commit to keeping you informed as we fight this frivolous claim and protect our rights, those articulated in the historic condominium documents. We will not allow this claim by three owners to become a distraction from our long-term focus on improvement nor to undermine the fantastic momentum happening at Big Sky Resort.

Respectfully,
Taylor Middleton
President and COO
Big Sky Resort
50 Big Sky Resort Road
Big Sky, Montana 59716

---

© Big Sky Resort, 50 Big Sky Resort Road, PO Box 160001, Big Sky, MT 59716

This message was sent to Robert and Nora Erhart <naerhart@gmail.com> by Big Sky Resort Owners
Click here to unsubscribe from further communications

CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Albert & Diane Bartzick
P.O. Box 160879
Big Sky, MT 59710

Re:  Shoshone Rental Management

Dear Mr. & Mrs. Bartzick:

This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

Sincerely,

CROWLEY FLECK PLLP

David M. Wagner

EXHIBIT
47
B Rooney

BILLINGS   BISMARCK   BOZEMAN   BUTTE   CASPER   CHEYENNE   HELENA   KALISPELL   MISSOULA   SHERIDAN   WILLISTON

CROWLEYFLECK.COM

EXHIBIT

5

Boyne15757

CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Alice and Chuck O'Reilly
3032 Thousand Oaks St.
Billings, MT 59102-0768

Re:  Shoshone Rental Management

Dear Mrs. and Mr. O'Reilly:

This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

Sincerely,

CROWLEY FLECK PLLP

David M. Wagner

Boyne15811

CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Archelle & David Feldshon
1420 Shoreline Dr.
Wayzata, MN 55391-9261

     Re:  Shoshone Rental Management

Dear Mr. & Mrs. Feldshon:

     This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

     Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

     It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

     Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

     Sincerely,

     CROWLEY FLECK PLLP

     David M. Wagner

BILLINGS   BISMARCK   BOZEMAN   BUTTE   CASPER   CHEYENNE   HELENA   KALISPELL   MISSOULA   SHERIDAN   WILLISTON

CROWLEYFLECK.COM

C R O W L E Y | F L E C K
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Burke & Melissa Moran
3910 E. Graf St.
Bozeman, MT 59715-7106

Re:  Shoshone Rental Management

Dear Mr. and Mrs. Moran:

This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

Sincerely,

CROWLEY FLECK PLLP

David M. Wagner

Boyne15919



David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Charles & Lindsay Meakin
2325 Armstrong Cir.
Gastonia, NC 28054-7214

      Re:  Shoshone Rental Management

Dear Mr. & Mrs. Meakin:

      This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

      Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

      It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

      Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

      Sincerely,

      CROWLEY FLECK PLLP

      David M. Wagner

Boyne15974



CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Chris Anderson
4732 Lois Ln.
Missoula, MT 59808

      Re:  Shoshone Rental Management

Dear Mr. Anderson:

      This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

      Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

      It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

      Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

      Sincerely,

      CROWLEY FLECK PLLP

      David M. Wagner

BILLINGS   BISMARCK   BOZEMAN   BUTTE   CASPER   CHEYENNE   HELENA   KALISPELL   MISSOULA   SHERIDAN   WILLISTON

C R O W L E Y F L E C K . C O M

Boyne16082



CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Christine Schrage
25 E. End Ave. Apt 5E
New York, NY 10028-7052

  Re: Shoshone Rental Management

Dear Ms. Schrage:

  This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration). A copy of the Declaration is attached.

  Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne. As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

  It is my understanding that you are not leasing your Shoshone unit through Boyne. If I am incorrect, please let me know. I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

  Please respond to this request within 15 days after you have received this letter. You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

    Sincerely,

    CROWLEY FLECK PLLP

    David M. Wagner

Boyne16136



CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Dorothy & Brett Moody
1307 N. Bell Ave.
Chicago, IL 60622-3034

   Re:  Shoshone Rental Management

Dear Mrs. & Mr. Moody:

   This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

   Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

   It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

   Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

   Sincerely,

   CROWLEY FLECK PLLP

   David M. Wagner

Boyne16191

CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Elena Fisher
Fisher Sky, LLC
733 Eventide Dr.
Memphis, TN 38120-4002

Re:  Shoshone Rental Management

Dear Ms. Fisher:

This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

Sincerely,

CROWLEY FLECK PLLP

David M. Wagner

Boyne16245

CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Eunice Jones
23 Shore Rd.
North Brookfield, MA 01535-1765

Re:  Shoshone Rental Management

Dear Ms. Jones:

This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

Sincerely,

CROWLEY FLECK PLLP

David M. Wagner

BILLINGS   BISMARCK   BOZEMAN   BUTTE   CASPER   CHEYENNE   HELENA   KALISPELL   MISSOULA   SHERIDAN   WILLISTON

C R O W L E Y F L E C K . C O M



CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Greg Zrazik
1632 N. Hudson Ave. Apt 8
Chicago, IL 606614-5661

      Re:  Shoshone Rental Management

Dear Mr. Zrazik:

      This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

      Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

      It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

      Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

              Sincerely,

              CROWLEY FLECK PLLP

              David M. Wagner

Boyne16353



CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Janet Lampe
P.O. Box 82098
Las Vegas, NV 89180-2098

 Re: Shoshone Rental Management

Dear Ms. Lampe:

 This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration). A copy of the Declaration is attached.

 Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne. As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

 It is my understanding that you are not leasing your Shoshone unit through Boyne. If I am incorrect, please let me know. I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

 Please respond to this request within 15 days after you have received this letter. You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

    Sincerely,

    CROWLEY FLECK PLLP

    David M. Wagner

BILLINGS  BISMARCK  BOZEMAN  BUTTE  CASPER  CHEYENNE  HELENA  KALISPELL  MISSOULA  SHERIDAN  WILLISTON

CROWLEYFLECK.COM

Boyne16407



C R O W L E Y | F L E C K
A T T O R N E Y S

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

John & Jane Hodges
3405 Water Hole Trl.
Bozeman, MT 59715-9337

Re: Shoshone Rental Management

Dear Mr. & Mrs. Hodges:

This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration). A copy of the Declaration is attached.

Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne. As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

It is my understanding that you are not leasing your Shoshone unit through Boyne. If I am incorrect, please let me know. I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

Please respond to this request within 15 days after you have received this letter. You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

Sincerely,

CROWLEY FLECK PLLP

David M. Wagner

Boyne16461

C R O W L E Y | F L E C K
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Jonna Stiles Kurucz
769 El Pintado Rd.
Danville, CA 94526-1406

  Re:  Shoshone Rental Management

Dear Ms Kurucz:

  This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

  Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

  It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

  Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

    Sincerely,

    CROWLEY FLECK PLLP

    David M. Wagner

Boyne16515



David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Kenneth Krell
Rudd & Company
725 S. Woodruff Ave.,
Idaho Falls, ID 83401-5286

      Re:  Shoshone Rental Management

Dear Mr. Krell:

      This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

      Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

      It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

      Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

      Sincerely,

      CROWLEY FLECK PLLP

      David M. Wagner

Boyne16570



CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Lance & Rhonda Lincoln
71 Wolfley Rd.
Mountain Home, AZ 72653-5146

  Re:  Shoshone Rental Management

Dear Mr. and Mrs. Lincoln:

  This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

  Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

  It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

  Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

    Sincerely,

    CROWLEY FLECK PLLP

    David M. Wagner

BILLINGS   BISMARCK   BOZEMAN   BUTTE   CASPER   CHEYENNE   HELENA   KALISPELL   MISSOULA   SHERIDAN   WILLISTON

C R O W L E Y F L E C K . C O M

Boyne16624

**C R O W L E Y** | **F L E C K**
A T T O R N E Y S

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Lance Wallin
964 E. Shady Ln
Wayzata, MN 55391-1830

      Re: Shoshone Rental Management

Dear Mr. Wallin:

      This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration). A copy of the Declaration is attached.

      Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne. As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

      It is my understanding that you are not leasing your Shoshone unit through Boyne. If I am incorrect, please let me know. I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

      Please respond to this request within 15 days after you have received this letter. You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

      Sincerely,

      CROWLEY FLECK PLLP

      David M. Wagner

Boyne16678



David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Mark & LouAnn Mueller
4022 N. Downer Ave.
Shorewood, WI 53211-2126

   Re: Shoshone Rental Management

Dear Mr. & Mrs. Mueller:

  This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration). A copy of the Declaration is attached.

  Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne. As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

  It is my understanding that you are not leasing your Shoshone unit through Boyne. If I am incorrect, please let me know. I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

  Please respond to this request within 15 days after you have received this letter. You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

   Sincerely,

   CROWLEY FLECK PLLP

   David M. Wagner

BILLINGS BISMARCK BOZEMAN BUTTE CASPER CHEYENNE HELENA KALISPELL MISSOULA SHERIDAN WILLISTON

C R O W L E Y F L E C K . C O M

Boyne16732

C R O W L E Y | F L E C K
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Mark Payne
4630 Amber Valley Pkwy
Fargo, ND 58104

Re:  Shoshone Rental Management

Dear Mr. Payne:

This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

Sincerely,

CROWLEY FLECK PLLP

David M. Wagner

BILLINGS   BISMARCK   BOZEMAN   BUTTE   CASPER   CHEYENNE   HELENA   KALISPELL   MISSOULA   SHERIDAN   WILLISTON

C R O W L E Y F L E C K . C O M

Boyne16786

CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Mark Sullivan
Giant Moon, LLC
1624 Market St., Suite 226
Denver, CO 80202-1559

      Re:  Shoshone Rental Management

Dear Mr. Sullivan:

      This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

      Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

      It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

      Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

      Sincerely,

      CROWLEY FLECK PLLP

      David M. Wagner

Boyne16841



CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Mark Zyga
5401 E. Van Buren St. Unit 1117
Phoenix, AZ 85008-3473

      Re:  Shoshone Rental Management

Dear Mr. Zyga:

      This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

      Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

      It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

      Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

      Sincerely,

      CROWLEY FLECK PLLP

      David M. Wagner

BILLINGS  BISMARCK  BOZEMAN  BUTTE  CASPER  CHEYENNE  HELENA  KALISPELL  MISSOULA  SHERIDAN  WILLISTON

CROWLEYFLECK.COM

Boyne16895



CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Max & Cindy Erickson
20 Lila Dr.
Havre, MT 59501-5245

      Re:  Shoshone Rental Management

Dear Mr. & Mrs. Erickson:

      This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

      Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

      It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

      Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

      Sincerely,

      CROWLEY FLECK PLLP

      David M. Wagner

Boyne16950

C R O W L E Y | F L E C K
A T T O R N E Y S

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Murray Morgan
2801 Egret Walk Terrace
Jacksonville, Florida 32226

   Re:  Shoshone Rental Management

Dear Mr. Morgan:

   This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

   Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

   It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

   Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

   Sincerely,

   CROWLEY FLECK PLLP

   David M. Wagner

BILLINGS   BISMARCK   BOZEMAN   BUTTE   CASPER   CHEYENNE   HELENA   KALISPELL   MISSOULA   SHERIDAN   WILLISTON

C R O W L E Y F L E C K . C O M

Boyne17004

CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Pou-i (Bonnie) Lee
4310 Cresent St. Apt 1014
Long Island City, NY 11104-4243

     Re:  Shoshone Rental Management

Dear Ms. Lee:

     This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

     Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

     It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

     Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

     Sincerely,

     CROWLEY FLECK PLLP

     David M. Wagner

BILLINGS   BISMARCK   BOZEMAN   BUTTE   CASPER   CHEYENNE   HELENA   KALISPELL   MISSOULA   SHERIDAN   WILLISTON

CROWLEYFLECK.COM

Boyne17058

CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Steven Dorsch
4010 Graf St.
Bozeman, MT 59715-7110

      Re:  Shoshone Rental Management

Dear Mr. Dorsch:

      This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

      Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

      It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

      Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

      Sincerely,

      CROWLEY FLECK PLLP

      David M. Wagner

Boyne17112

CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Tom Nelson
1736 Alder Dr.
Great Falls, MT 59404-3533

      Re: Shoshone Rental Management

Dear Mr. Nelson:

      This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration). A copy of the Declaration is attached.

      Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne. As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

      It is my understanding that you are not leasing your Shoshone unit through Boyne. If I am incorrect, please let me know. I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

      Please respond to this request within 15 days after you have received this letter. You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

      Sincerely,

      CROWLEY FLECK PLLP

      David M. Wagner

Boyne17166



David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Walter & Renee Andrews
c/o Gary L. Walton
Gary Walton, PLLC
2155 Dennison Lane
Bozeman, MT 59718

Re:  Shoshone Rental Management

Dear Mr. Andrews:

This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

Sincerely,

CROWLEY FLECK PLLP

David M. Wagner

BILLINGS  BISMARCK  BOZEMAN  BUTTE  CASPER  CHEYENNE  HELENA  KALISPELL  MISSOULA  SHERIDAN  WILLISTON

CROWLEYFLECK.COM

Boyne17220

CROWLEY | FLECK
ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

November 16, 2021

**Via Certified Mail Return Receipt Requested**

Yolanda Mierza
P.O. Box 161781
Big Sky, MT 59716

      Re:  Shoshone Rental Management

Dear Ms. Mierza:

      This firm represents Boyne USA, Inc. (Boyne), the Developer of the Shoshone Condominium Hotel and the Declarant identified in the Declaration for the Shoshone Condominium Hotel (Declaration).  A copy of the Declaration is attached.

      Under Article X, § 3(b), a Shoshone unit may only be leased through Boyne or a leasing agent designated by Boyne.  As it concerns Shoshone units, Boyne has not designated any leasing agent to act on Boyne's behalf.

      It is my understanding that you are not leasing your Shoshone unit through Boyne.  If I am incorrect, please let me know.  I am writing to encourage you to lease your unit through Boyne as required in the Declaration.

      Please respond to this request within 15 days after you have received this letter.  You may contact me by phone (406-522-4520), email (dwagner@crowleyfleck.com), or by letter mailed to 1915 S. 19th Ave., Bozeman, MT 59718.

      Sincerely,

      CROWLEY FLECK PLLP

      David M. Wagner

BILLINGS   BISMARCK   BOZEMAN   BUTTE   CASPER   CHEYENNE   HELENA   KALISPELL   MISSOULA   SHERIDAN   WILLISTON

CROWLEYFLECK.COM

Boyne17274

# CROWLEY | FLECK
### ATTORNEYS

David M. Wagner
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
Facsimile 406-556-1433
dwagner@crowleyfleck.com

**Via Certified Mail Return Receipt Requested**

December 14, 2021

Murray Morgan
2801 Egret Walk Terrace
Jacksonville, Florida 32226

        Re:  Shoshone Rental Management

Dear Mr. Morgan:

        This firm represents Boyne USA, Inc. (Boyne).  I am writing to notify you that, aside from accessing your Shoshone Unit from your vehicle, you are no longer welcome as a guest on Boyne or Big Sky Resort real property effective immediately.  If you have purchased a ski pass or pre-purchased lift tickets, Boyne will reimburse for those costs upon submission of such a request.

                                Sincerely,

                                CROWLEY FLECK PLLP

                                David M. Wagner



BILLINGS   BISMARCK   BOZEMAN   BUTTE   CASPER   CHEYENNE   HELENA   KALISPELL   MISSOULA   SHERIDAN   WILLISTON

C R O W L E Y F L E C K . C O M

**EXHIBIT**

**6**

Plaintiffs007780

FILED
08/25/2021
*Karen J Miller*
CLERK
Madison County District Court
STATE OF MONTANA
By: Carmin Hill
DV-29-2021-0000079-BC
Berger, Luke
1.00

David M. Wagner
CROWLEY FLECK PLLP
1915 South 19th Avenue
P.O. Box 10969
Bozeman, MT 59719-0969
Telephone: (406) 556-1430
Facsimile: (406) 556-1433
dwagner@crowleyfleck.com

*Attorneys for Plaintiff*

MONTANA FIFTH JUDICIAL DISTRICT COURT, MADISON COUNTY

| | |
|---|---|
| BOYNE USA INC., a Michigan Corporation, )<br><br>Plaintiff, )<br><br>vs. )<br><br>BLSH ENTERPRISES, LLC, a Kansas limited )<br>liability company, )<br><br>Defendant. ) | Cause No.<br><br>**BOYNE USA, INC'S COMPLAINT**<br>**AND JURY DEMAND** |

COMES NOW Plaintiff, Boyne USA, Inc., who complains, alleges, and avers as follows:

**PARTIES**

1.    Plaintiff, Boyne USA, Inc. ("Boyne") is a Michigan corporation that is qualified to do business in the State of Montana.

2.    Defendant, BLSH Enterprises, LLC ("BLSH"), is a Kansas limited liability company that is qualified to do business in the State of Montana.

3.    BLSH either owns or formerly owned condominium unit #1987F located in the Shoshone Condominium Hotel.

4.    The Shoshone Condominium Hotel ("Shoshone") is located in Madison, County Montana.



EXHIBIT
7

EXHIBIT
48
B Rooney

## JURISDICTION AND VENUE

5.      BLSH is subject to the jurisdiction of this Court because it currently owns and previously has owned, used, and possessed real property situated within Montana.

6.      Venue is proper in Madison County because the property at issue is located in Madison County, Montana.

## ALLEGATIONS COMMON TO ALL COUNTS

7.      All condominium units in the Shoshone are subject to the terms and conditions of the Declaration for the Shoshone Condominium Hotel, as amended, which encumbers all condominium units located within the Shoshone.  The Declaration for the Shoshone Condominium Hotel, as amended, is referred to in this Complaint as the "Covenants."

8.      On November 29, 1989, the original Covenants were recorded with the Madison County Clerk and Recorder and are found at Volume 343, pages 206-257.  A true and correct copy of the Covenants is attached as Exhibit A and incorporated herein by reference.

9.      The Covenants were amended in 2006.  The terms and conditions of the 2006 amendment are not at issue in this lawsuit.

10.     The provisions of the Covenants run with the land, include every unit in the Shoshone, and are binding on the unit owners, their heirs, personal representatives, and assigns as long as the Covenants are in effect.

11.     Article VI.4.) of the Covenants expressly provides that each owner shall comply with the provisions of the Covenants.

12.     Article VI.4.) states that the failure to comply with the provisions of the Covenants shall be grounds for an action to recover sums due for damages, including attorney fees incurred in connection therewith.

13.    BLSH purchased unit #1987F subject to the Covenants.

14.    The Covenants provide that "[n]o Unit owner may dispose of a Unit or any

interest therein by sale without complying" with Art. X, § 1 of the Covenants.

15.    Article X, § 1.(a) of the Covenants expressly provides that an owner intending to

sell its condo "shall deliver written notice of such intention to the Developer [Boyne] and shall

furnish the name and address of the intended purchaser and such information as the Developer

[Boyne] shall reasonably request."

16.    Article X, § 1.(a) specifically provides:

> Section 1. Right of First Refusal. No Unit owner may
> dispose of a Unit or any interest therein by sale without
> complying with this Section 1:
>
> (a) A Unit owner intending to make a sale of a Unit,
> or any interest therein, except to immediate family
> members, shall deliver written notice of such intention
> to the Developer and shall furnish the name and address
> of the intended purchaser and such other information as
> the Developer shall reasonably request. At the time of
> giving such notice, such Unit owner shall also furnish
> the Developer with copies of all instruments setting
> forth the terms and conditions of the proposed
> transaction. The giving of such notice shall
> constitute a warranty and a representation by such Unit
> owner to the Developer that the Unit owner believes the
> proposed sale to be bona fide in all respects. The
> selling Unit owner shall be responsible to the
> Developer for any damages suffered by it in exercise of
> its rights hereunder and, in the event any proposed

24

> sale is not bona fide, such damages shall include (but
> not be limited to) the difference between the price
> paid by the Developer for the Unit or interest and the
> fair market value thereof.

17.     As noted in Art. X, § 1.(a), at the time of providing such notice, the unit owner is obligated to provide Boyne with copies of all instruments setting forth the terms and conditions of the proposed transaction.

18.     While BLSH provided Boyne a copy of the Buy-Sell Agreement for #1987F, BLSH redacted information from the Buy-Sell Agreement which Boyne was entitled to receive under Art. X, § 1.(a) of the Covenants.

19.     In breach of Art. X, § 1.(a), BLSH:

    a.     Redacted the name and address of the intended purchaser from the Buy-Sell Agreement; and

    b.     Failed to provide Boyne with unredacted copies of all instruments setting forth the terms and conditions of the proposed transaction.

20.     Under Art. X., § 1.(a), the seller of a unit shall be responsible to Boyne for any damages suffered by Boyne in the exercise of Boyne's rights under the Covenants.

21.     Under the Covenants, the seller of a unit that fails to comply with Art. X, § 1.(a) is also liable for any damages Boyne suffers as a result of its inability to exercise its right of first refusal.

22.     Under the Covenants, all remedies contained in the Covenants are not exclusive of any other remedies which may now be, or are hereafter, available to the parties hereto as provided for by law.  Thus, the aggrieved party may pursue all remedies provided by law.

23.     In this matter, Boyne is the aggrieved party.

## COUNT I – BREACH OF THE COVENANTS

24.     Boyne re-alleges all prior allegations as if fully restated herein.

25.     Unit 1987F is subject to the Covenants.

26.     Under the Covenants, a unit owner intending to sell its unit shall deliver written notice of such intention to Boyne and shall furnish the name and address of the intended purchaser and such other information as Boyne shall reasonably request.

27.     Under the Covenants, at the time of giving notice to Boyne, the unit owner shall also furnish Boyne with copies of all instruments setting forth the terms and conditions of the proposed transaction.

28.     Under the Covenants, the unit owner selling its unit shall be responsible to Boyne for any damages suffered by it in exercise of its rights under the Covenants and Art. X, § 1.(a).

29.     As a result of BLSH's breach of the Covenants, Boyne has been damaged.

## COUNT II - DECLARATORY JUDGMENT

30.     Boyne re-alleges all prior allegations as if fully restated herein.

31.     County II is brought under the Uniform Declaratory Judgment Act, Montana Code Ann. § 27-8-101 to § 27-8-13.

32.     An actual controversy has arising and now exists between Boyne and BLSH.

33.     Boyne seeks a declaration of the parties' rights from the Court.

34.     Such a declaration is necessary and appropriate at this time to protect Boyne's legal rights.

## COUNT III – NEGLIGENCE

35.     Boyne re-alleges all prior allegations as if fully restated herein.

36.     BLSH had a duty to comply with Boyne's right of first refusal.

37.     BLSH breach its duty owed to Boyne.

38.     As a result of BLSH's negligence, Boyne has suffered damages in an amount to be proven at trial.

**WHEREFORE** Boyne requests the following relief:

1.      A jury trial on Boyne's claims;

2.      That Judgment be entered in Boyne's favor and against BLSH for all damages caused by BLSH's actions, inactions, and conduct including general and special compensatory damages and interest from the date of loss sustained;

3.      For all attorneys' fees, costs, and disbursements incurred herein; and

4.      For such other and further relief as the Court deems just and proper.

Dated this ⟨5⟩ day of August, 2021.

                              CROWLEY FLECK PLLP

                              By _____
                                      David M. Wagner
                                      P. O. Box 10969
                                      Bozeman, MT  59719-0969

*Boyne USA, Inc's Complaint and Jury Demand - 6*

DECLARATION

for the

SHOSHONE

CONDOMINIUM

HOTEL

Filed for record on this 29th day of
NOVEMBER, A. D. 19 89 at 2:40
o'clock P. M. and recorded In Volume 343
of RECORDS on Page 206 - 257
Records of Madison County, Montana
By, _Dorothy C. Brown_
County Recorder
Fee $ 260.00    Return to KIRWAN & BARRETT
P.O. BOX 1348
BOZEMAN, MT  59715

EXHIBIT
A

Certificate of Name . . . . . . . . . . . . . . . 3

Certificate of Floor Plan . . . . . . . . . . . . 4

DECLARATION FOR THE SHOSHONE CONDOMINIUM HOTEL . . . . . 5

    Title and Nature . . . . . . . . . . . . . . . 5
    Definitions . . . . . . . . . . . . . . . . . 5
    Real Estate . . . . . . . . . . . . . . . . . 8
    Easement, Common Elements. . . . . . . . . . . 10
    Ownership and Voting -- Exhibits . . . . . . . 14
    The Association . . . . . . . . . . . . . . . 18
    Developer's Rights to Change . . . . . . . . . 21
    Amendment . . . . . . . . . . . . . . . . . . 21
    Recreational Facilities . . . . . . . . . . . 22
    Certain Other Restrictions and
      Rights Reserved to Developer . . . . . . . . 24
    Assignment . . . . . . . . . . . . . . . . . . 27
    Restrictions, Maintenance and Liens . . . . . . 27
    Insurance . . . . . . . . . . . . . . . . . . 33
    Removal or Partition -- Subdivision . . . . . . 37
    Remedies . . . . . . . . . . . . . . . . . . . 38
    Severability . . . . . . . . . . . . . . . . . 38
    Miscellaneous . . . . . . . . . . . . . . . . 38

The undersigned being the duly authorized agent of th Department of Revenue of the State of Montana within the Count of Madison, herewith executes the following certificate relatin to the SHOSHONE CONDOMINIUM HOTEL situated as follows:

"See Exhibit A attached"

1.) That the name the SHOSHONE CONDOMINIUM HOTEL is not th same as, similar to or pronounced the same as a word i the name of any other property or subdivision withi Madison County, except for the word "Condominium", and

2.) All taxes and assessments due and payable for the sai SHOSHONE CONDOMINIUM HOTEL have been paid to date.

Dated: *Nov 29 1989*

*Gayla K Albanese*
County Assessor
*by Sylvia*
*Deputy A*

CERTIFICATE OF FLOOR PLAN

The undersigned, being a duly registered professional architect in the State of Montana, herewith certifies the following:

That the floor plans for the SHOSHONE CONDOMINIUM HOTEL situated according to the official plat thereof on file and of record in the office of the County Clerk and Recorder of Madison County, Montana, as duly filed with the Declaration and Bylaws thereof, fully and accurately depict the layout, location, unit designation and dimensions as built and to be built of the SHOSHONE CONDOMINIUM HOTEL and that such floor plans are an accurate copy of the plans filed with and approved by the officials and officers of the State of Montana having jurisdiction to issue building permits. Such floor plans render hand representation of the actual building.

Dated: Nov. 17, 1989

Registered Professional Architect
Number: 1073

THE

SHOSHONE CONDOMINIUM HOTEL

THIS DECLARATION is hereby made and entered into this 29t
day of November 1989, by Boyne USA, Inc., a Michigan corporatio
(hereinafter referred to as the "declarant"), whereby lands an
property hereinafter described are submitted and subject to th
Montana Unit Ownership Act pursuant to Chapter 23, Tile 70, MC
1989, as amended.

The property subject to this Declaration shall be known a
the SHOSHONE CONDOMINIUM HOTEL (hereinafter referred to as th
"condominium").   The address of the condominium is P.O. Box 1
Big Sky, Montana 59716.

## ARTICLE I

## TITLE AND NATURE

The Condominium Project shall be known as Shoshon
Condominium Hotel.   The Condominium Project is established i
accordance with the Montana Unit Ownership Act.   The Condominiu
Project contains individual Units for hotel occupancy and othe
purposes, as set forth herein and in the Bylaws, and each Unit i
capable of individual utilization on account of having its ow
entrance from and exit to a Common Element of the Condominiu
Project.   Each Unit owner in the Condominium Project shall hav
an exclusive right to his Unit and shall have undivided an
inseparable rights to share with other Unit owners the Commo
Elements of the Condominium Project.

## ARTICLE II

## DEFINITIONS

Unless the context expressly provides otherwise, th
following definitions shall pertain throughout this Declaratio
and in the interpretation thereof:

1.) Aggregate Voting:   shall mean the entire number o
votes or persons present or available to vote in perso
or by proxy in a particular circumstance.

2.) Association or Association of Unit Owners:   means al
of the Unit Owners acting as a group and in accordance
with duly adopted Bylaws and this Declaration.

defined in the Bylaws.

4.) **Building:** means the building containing th
condominium units.

5.) **Bylaws:** means the Bylaws promulgated by th
Association under this Declaration and the Un:
Ownership Act.

6.) **Common Elements:** means both general common elemen
and limited common elements.

a.) General Common Elements: includes all tho:
elements which are for the use of all owners and gues
of owners of the condominium. Specifically include
are: all parts of the condominium property not locate
within the boundaries of a unit, including but no
limited to, the land described in Article II
paragraph 1 herein, on which the building is situate
paths and walkways, footings, foundations, framework
columns, trusses, supports, roof and other structure
components of the buildings, exterior walls, gutter
and vertical roof drains, electrical, gas, telephone
water and sewer lines and connections serving all o
the units, elevator, beneficial easements, landscaping
plants and other materials and improvements separat
from and outside of the buildings containing the unit:
and other elements necessary for the safety
maintenance and existence of the condominium in which
each Unit Owner shall have his designated percentage o
interest, as set forth in Article V below.

b.) Limited Common Elements: as used in th
Declaration shall mean those common elements which ar
reserved for the use of fewer than all of the owner
and guests of owners of the condominium. Specificall
as to any given Unit Owner or Owners, limited commo
elements shall mean the following common elements whic
are located within or affixed to the buildin
containing his unit in which the elements are locate
or situated on the real property known as th
condominium.

Flues, chimneys, ducts, cables, conduits, publ:
utility lines, water, sewer, electrical, gas, cabl
television lines and hot and cold water pipes (all suc
utility pipes and lines are limited common element
where they service only one or two units, where the
service all units they shall be general commo

building servicing only a particular unit or less tha[...]
all of the units. The percentage of the separa[...]
unit's interest in the limited common elements shall [...]
computed by determining the number of units that ha[...]
use of the limited common elements and taking t[...]
square footage of such unit and dividing it by t[...]
square footage of the unit or all such units making u[...]
of the particular limited common element. Such squa[...]
footage shall be the same as the square footage used [...]
compute the percentage of interest of the unit owner [...]
the general common elements and shall be the squa[...]
footage of the units on the date of filing of th[...]
Declaration and which are set forth in thi[...]
Declaration.

7.)  Common expenses: means expenses of administratio[...]
maintenance, repair or replacement of general commo[...]
elements and furnishings, expenses agreed upon by t[...]
Association of all Unit Owners, and expenses declar[...]
common by the Unit Ownership Act.

8.)  Declaration: means this document and all part[...]
attached thereto or incorporated by reference.

9.)  Developer: "Developer" means Boyne USA, Inc.,[...]
Michigan corporation, which has made and executed th[...]
Declaration, as the "Declarant", and its successors a[...]
assigns. Both successors and assigns shall always [...]
deemed to be included within the term "Develope[...]
whenever, however and wherever such terms are used [...]
the Condominium Documents.

10.) Limited Expenses: means the expenses attributable [...]
the maintenance, repair and replacement of limit[...]
common elements.

11.) Manager: means the manager, the Board of Director[...]
management corporation or any other person or group [...]
persons retained or appointed by the Board, or by t[...]
Association of Unit Owners for the purpose [...]
conducting the day-to-day operations of th[...]
condominium.

12.) Property: means the land, building, improvements a[...]
structures thereon and all easements, rights a[...]
appurtenances belonging thereto, which are herewit[...]
submitted to the Unit Ownership Act.

13.) Recording Officer: means the county officer charge[...]
with the duty of filing and recording the deed[...]

it is subject.

14.) Unit: shall be the separate condominium units of t[]
condominium and is a parcel of property including a[]
containing one or more rooms occupying one or mo[]
floors or a part or parts thereof, intended for a[]
type of independent use, and with a direct exit to []
street or highway or to common elements leading to []
street or highway.

15.) Unit Designation: is the combination of letter[]
numbers and words which identify the designated unit[]
Units shall be designated by (letter or number) []
units 1901 through 1994 and units A, B and C.

16.) Unit Owner and Owner: means the person owning a un[]
in fee simple absolute individually or as co-owner []
any real estate tenancy relationship recognized und[]
the laws of the State of Montana, in one or more uni[]
of the condominium.

17.) Unit Ownership Act: means and refers to the Un[]
Ownership Act of the State of Montana, Chapter 2[]
Section 70-23-101, MCA (1989) et seq.

Whenever any reference herein is made to one gender, t[]
same shall include a reference to any and all genders where t[]
same would be appropriate; similarly, whenever a reference []
made herein to the singular, a reference shall also be includ[]
to the plural where the same would be appropriate and vice vers[]

ARTICLE III

REAL ESTATE

1.) Description

The property which is by this Declaration submitted a[]
subject to the Montana Unit Ownership Act is described [] follows:

(See Exhibit A attached)

The condominium units consist of ninety-four (94) separa[]
hotel units numbered 1901 through 1994 and three (3) commercia[]
units, to be retained by Developer, lettered A, B and C. T[]
condominium consists of seven floors containing the ninety-fo[]

attached. The provisions of this Declaration and the Bylaws shall be construed to be covenants running with the land an shall include every unit and shall be binding upon the uni owners, their heirs, personal representatives and assigns for a long as this Condominium Declaration and Bylaws are in effect.

## 2.) Condominium Units

Each Unit, together with the appurtenant undivided interes in the common elements of the condominium shall together compris one condominium unit, shall be inseparable, and may be conveyed leased, rented, devised or encumbered as a condominium i accordance with this Declaration.

## 3.) Encroachments

If any portion of the general common elements or limite common elements encroaches upon a Unit or Units, a valid easemen for the encroachment and for the maintenance of the same, so lon as it stands, shall and does exist. If any portion of the Uni encroaches upon the general common elements, or limited commo elements, or upon an adjoining Unit or Units, a valid easemen for the encroachment and for the maintenance of the same, so lon as it stands, shall and does exist. Such encroachments an easements shall not be considered or determined to b encumbrances either on the general common elements, the limite common elements, or on the Units for the purpose of marketabilit of title. In the event the building or any portion thereof i destroyed and then rebuilt, the Owners of the Unit or Units agre that minor encroachments of parts of the general common o limited common elements because of such construction shall b permitted and that an easement for such encroachment and th maintenance and repair of the same shall exist.

## 4.) Buildings

The Units comprising the condominium are contained in on (1) building.

## 5.) Unit Boundaries

Each unit shall include the part of the building containin the Unit that lies within the boundaries of the Unit, whic boundaries are as follows:

a.) Upper and Lower Boundaries: the upper and lowe boundaries of the Unit shall be the following boundarie extended to an intersection with the perimetrica boundaries.

1. Upper Boundary: the plane of the underside of th

    2.   Lower Boundary: the surface of the soil under each ground floor unit and the plane of the underside of the floor members of a second or higher floor unit.

b.) Perimetrical Boundaries: the perimetrical boundaries of the Unit shall be the following boundaries extended to a intersection with the upper and lower boundaries.

    1.   Exterior Building Walls: the intersecting vertical planes adjacent to and including the exterior of the interior sheathing or wall covering of the outside walls bounding a Unit. (the outside surface of the interior drywall on the outside walls.)

    2.   Interior Building Walls: the vertical planes of the centerline of the walls between the Units extended to an intersection with other perimetrical boundaries.

## 6.) Construction Materials

The principal materials of construction of the Units are concrete for the foundations, footings, slabs, basement, and floors, steel for the structure, sheetrock, oak trim for the interior, carpet, wood or tile for the floors, fedderlite drywall panels and natural rock for exterior wall surfaces, and metal aggregate on the roof of the building.

## ARTICLE IV

## EASEMENT, COMMON ELEMENT

## 1.) Common Element Easements

A nonexclusive right of ingress and egress and support through the general common elements are subject to such rights.

## 2.) Easement for Utilities

Each Unit may have its air space penetrated by electrical wires and lines, gas lines, mechanical equipment including air handling ducts, hot and cold water lines, waste water lines and vents and other utility and mechanical lines, pipes or equipment. These lines, where they serve only one unit shall be an appurtenance to such unit, but where they serve more than one unit shall be part of the common elements - either limited or general depending upon how many units are being served thereby as defined in Article II, paragraph 6. Such items shall be so installed and maintained so that they shall not unreasonabl

within a wall. A non-exclusive easement shall exist through
over and across each unit for inspection, installation
maintenance, replacement and repair of such utility lines ar
mechanical equipment for the use of all of the unit owners or th
unit owners being serviced by the air space being penetrated b
such lines and/or equipment to a minimum, ingress and egress fo
the purpose of such inspection, installation, maintenance
replacement or repair of such easement rights shall only be don
under the direction and approval and with the authority of th
Owners Association and/or the Manager unless an emergency exist
in which event any action may reasonably be taken which i
justified under the circumstances to minimize damage which woul
otherwise occur as a consequence of such emergency. There shal
be easements to, through and over those portions of the land
structures, buildings, improvements and walls (including interio
Unit walls) contained therein for the continuing maintenance an
repair of all utilities in the Condominium. There shall exis
easements of support with respect to any Unit interior wall whic
supports a Common Element.

### 3.) Easements for Public Utilities

The Developer reserves the right at any time during th
Development and Sales Period to grant easements for utilitie
over, under and across the Condominium to appropriat
governmental agencies or public utility companies and to transfe
title of utilities to governmental agencies or to utilit
companies. Any such easement or transfer of title may b
conveyed by the Developer without the consent of any Unit owner
mortgagee or other person and shall be evidenced by a
appropriate amendment to this Declaration and recorded in th
Madison County Records. All of the Unit owners and mortgagee
of Units and other persons interested or to become interested i
the Project from time to time shall be deemed to have irrevocabl
and unanimously consented to such amendment or amendments of thi
Declaration as may be required to effectuate the foregoing gran
of easement or transfer of title.

### 4.) Grant of Easements by Association

The Association, acting through its lawfully constitute
Board of Directors shall be empowered and obligated to gran
such easements, licenses, rights-of-entry and rights-of-way over
under and across the Condominium Premises for utility purposes
access purposes or other lawful purposes as may b
necessary for the benefit of the Condominium, subject, however,
to the written approval of the Developer.

### 5.) Easements for Maintenance, Repair and Replacement

through the Condominium Premises, including all Units and Comm
Elements, as may be necessary to fulfill any responsibilities
maintenance, repair, decoration or replacements which they or a
of them are required or permitted to perform under t
Condominium Documents or by law. These easements includ
without any implication of limitation, the right of t
Association to obtain access at all times to meters, control
valves, pipes, conduits, and other Common Elements located with
or to which access may be gained through any Unit or i
appurtenant Limited Common Elements.

### 6.) Declaration of Easement and Agreement for Maintenance

Boyne U.S.A., Inc., a Michigan corporation (Boyne), and t
Association have executed and recorded a certain Declaration
Easement and Agreement for Maintenance (the "Declaration") dat
_____, filed _____, in _____ Boo
pages _____, records of Madison County, Montana. In t
Declaration, Boyne has granted a nonexclusive roadway easeme
for the benefit of Unit owners and their respective successor
assigns, invitees, customers, employees, guests, lessee
licensees and other authorized persons, over and with respect
Low Dog Road, for the purposes of ingress and egress to and fr
Low Dog Road and to and from the Condominium Project, all subje
to the terms and conditions in the Declaration applicab
thereto. In the Declaration, Boyne has also granted for t
benefit of such parties a nonexclusive parking easement f
parking spaces equal to one parking space per Unit over and wi
respect to certain parking areas situated at the Big Sky Reso
property to be designated from time to time by Boyne, all subje
to the terms and conditions in the Declaration applicab
thereto. Boyne has also granted in the Declaration, for tl
benefit of the Association and the Unit owners, nonexclusi
easements for sanitary sewer, water and gas mains and electr
and telephone lines, all subject to the terms and conditions
the Declaration applicable thereto. Boyne has also granted
nonexclusive easement, for the benefit of such parties, f
ingress and egress to and from the pool and health cl
facilities over the Big Sky Resort Property to be designated fr
time to time. The Association has agreed pay Boyne an initi
annual charge of $28,000.00 per year in consideration for su
easements and services, which annual charge is subject
periodic adjustment. There are no restrictions on the rights
Boyne to grant easements to other parties over and with respe
to such roadway, parking areas and utility easements, and Boyn
may require such other parties to pay such charges as Boyne ma
in its sole discretion, determine.

### 7.) Additional Easements for Developer's Other Projects

by the Developer on any tracts of land contiguous to the Condominium Project, whether or not such improvements are made part of the Condominium Project (such improvements being hereinafter collectively referred to as the "Other Projects").

(a) A perpetual nonexclusive easement for utilization, tapping, tying into, extending and enlarging all utility mains located in the Condominium Project, including, but not limited to, water, gas, storm and sanitary sewer mains. The Developer will pay all costs of such utilization, tapping, tying into, extending and enlarging, and will restore all areas thereby disturbed to their original condition immediately prior to commencement thereof, to the extent possible consistent therewith. All expenses of maintenance, repair, replacement and resurfacing of such utility mains shall be shared by the Association and the owners of units in the Other Projects utilizing such utility mains on a proportionate basis determined on the basis of the respective number of Units and the number of units of the Other Projects utilizing such utility mains.

(b) A perpetual nonexclusive easement in, over and upon the General Common Elements of the Condominium Project for such demolition, construction, and alteration of the General Common Elements of the Condominium as may be deemed necessary or appropriate by the Developer for connection of the Other Projects to the Condominium Project. The Developer will pay all costs of such demolition, construction and alteration, and will restore all areas disturbed by such demolition, construction and alteration to the extent possible consistent with the connections thereby made.

(c) A perpetual nonexclusive easement in, over and upon the General Common Elements of the Condominium Project for the purposes of ingress and egress to and from the Other Projects through the hallway and service areas of the Condominium Project, subject to such reasonable rules and regulations governing such access as may be enacted by the Association, which rules and regulations shall be equitable and nondiscriminatory.

The above easements shall be for the benefit of the Developer and owners of the Other Projects, and their respective heirs, successors, assigns, families, guests and invitees. The Developer hereby agrees that it will not cause or allow the Condominium Project to be encumbered by any lien in connection with any construction engaged in by the Developer regarding the

and expenses incurred in connection with defending th
Condominium Project against any such liens.

## 8.) Specific Written Easements

The Developer may, by subsequent instrument, prepared an
recorded in its sole discretion without the necessity of conser
by any interested party, specifically define by legal descriptio
the easements created by this Article IV.


## ARTICLE V

## OWNERSHIP AND VOTING -- EXHIBITS

## 1.) Percentage of Interest

Each Unit Owner shall be entitled to the exclusiv
ownership, use and possession of his Unit and the percentage o
the interest of each Unit Owner in the common elements as se
forth below and determined by each unit owner's interna
ownership. Each Unit Owner shall have a percentage of undivide
interest in the general common elements of the condominium. Suc
percentage represents his ownership interest in the genera
common elements, his liability for common expenses, and th
voting interest of the Unit Owner or Owners in all matter
concerning the Association of Unit Owners. The percentage o
interest was determined on the basis of relative square foot
with the square footages of Units A, B and C reduced by 75% an
the square footages of Units 1901 through 1994 being increased
proportionate amount each. Such percentage of interest owned b
each of the Units in the condominium shall be according to th
percentages set forth below:

| UNIT NO. | UNIT TYPE | PERCENTAGE OF INTEREST IN GENERAL COMMON ELEMENTS |
|----------|-----------|---------------------------------------------------|
| A | Basement | 2.00% |

**First Floor**

| | | |
|----------|-----------|---------|
| 1901 | A | .93% |
| 1902 | A | .93% |
| 1903 | A | .93% |
| 1904 | B | 1.03% |
| 1905 | B | 1.03% |
| 1906 | A-1 | .93% |

| 1908 | C | 1.04% |

---

## Second Floor

| 1909 | A | .93% |
| 1910 | A | .93% |
| 1911 | A | .93% |
| 1912 | B | 1.03% |
| 1913 | B | 1.03% |
| 1914 | A-1 | .93% |
| 1915 | A-1 | .93% |
| 1916 | C | 1.04% |
| 1917 | A-3 | 1.04% |
| 1918 | A-1 | .93% |
| 1919 | A-2 | .93% |
| B | Meeting | .20% |
| C | Therapy | .20% |

---

## Third Floor

| 1920 | A | .93% |
| 1921 | A | .93% |
| 1922 | A | .93% |
| 1923 | B | 1.03% |
| 1924 | B | 1.03% |
| 1925 | A-1 | .93% |
| 1926 | A-1 | .93% |
| 1927 | C | 1.04% |
| 1928 | A-3 | 1.04% |
| 1929 | A | .93% |
| 1930 | A | .93% |
| 1931 | B | 1.03% |
| 1932 | B | 1.03% |
| 1933 | A-1 | .93% |
| 1934 | A-2 | .93% |

---

## Fourth Floor

| 1935 | A | .93% |
| 1936 | A | .93% |
| 1937 | A | .93% |
| 1938 | B | 1.03% |
| 1939 | B | 1.03% |
| 1940 | A-1 | .93% |
| 1941 | A-1 | .93% |

| 1943 | A-3 | 1.04% |
| 1944 | A | .93% |
| 1945 | A | .93% |
| 1946 | B | 1.03% |
| 1947 | B | 1.03% |
| 1948 | A-1 | .93% |
| 1949 | A-2 | .93% |

---

## Fifth Floor

| 1950 | A | .93% |
| 1951 | A | .93% |
| 1952 | A | .93% |
| 1953 | B | 1.03% |
| 1954 | B | 1.03% |
| 1955 | A-1 | .93% |
| 1956 | A-1 | .93% |
| 1957 | C | 1.04% |
| 1958 | A-3 | 1.04% |
| 1959 | A | .93% |
| 1960 | A | .93% |
| 1961 | B | 1.03% |
| 1962 | B | 1.03% |
| 1963 | A-1 | .93% |
| 1964 | A-2 | .93% |

---

## Sixth Floor

| 1965 | A | .93% |
| 1966 | A | .93% |
| 1967 | A | .93% |
| 1968 | B | 1.03% |
| 1969 | B | 1.03% |
| 1970 | A-1 | .93% |
| 1971 | A-1 | .93% |
| 1972 | C | 1.04% |
| 1973 | A-3 | 1.04% |
| 1974 | A | .93% |
| 1975 | A | .93% |
| 1976 | B | 1.03% |
| 1977 | B | 1.03% |
| 1978 | A-1 | .93% |
| 1979 | A-2 | .93% |

---

## Seventh Floor

| 1980 | B   | 1.34% |
|------|-----|-------|
| 1981 | D   | 1.34% |
| 1982 | D   | 1.34% |
| 1983 | E   | 1.47% |
| 1984 | E   | 1.47% |
| 1985 | D-1 | 1.34% |
| 1986 | D-1 | 1.34% |
| 1987 | F   | 1.48% |
| 1988 | D-2 | 1.48% |
| 1989 | D   | 1.34% |
| 1990 | D   | 1.34% |
| 1991 | E   | 1.47% |
| 1992 | E   | 1.47% |
| 1993 | D-1 | 1.34% |
| 1994 | D-1 | 1.34% |

---

2.) <u>Floor Plans and Exhibits</u>

The condominium consists of the property as described above, and a total of ninety-seven (97) separate Condominium Units as shown on the floor plans. For identification and descriptive purposes the following Exhibits are attached and by reference hereto incorporated into and made a part of this Declaration:

Exhibit B: showing the floor plans and general floor layout for each of the Units of the condominium, the area of each, the dimensions and the designation for each Unit.

Exhibit C: showing the site plan of the condominium and the location of the building containing the Condominium Units on the Property.

3.) <u>Exclusive Ownership</u>

Each Owner or Owners shall be entitled to exclusive ownership and possession of their Unit. Such Owners may use the general and limited common elements in accordance with the purposes for which they are intended and as they may otherwise agree between themselves, so long as they do not hinder or encroach upon the lawful rights of other Unit Owners.

## THE ASSOCIATION

### 1.) Membership

Any Owner of a Unit in the condominium shall, automatically, upon becoming the Owner of said Unit, be a member of the ASSOCIATION OF UNIT OWNERS OF SHOSHONE CONDOMINIUM HOTEL, hereinafter referred to as the Association, and shall remain a member of said Association until such time his membership in said Association shall automatically cease. The membership shall be limited to Unit Owners as defined in this Declaration.

### 2.) Function

It shall be the function of the Association to:

a.) Adopt Bylaws for the governance of the Association.

b.) Make provisions for the general management and/or repairs and maintenance of the Condominium.

c.) Levy assessments as provided for in the Declaration, Bylaws and Unit Ownership Act.

d.) Adopt and implement a policy for the affairs of the Condominium.

e.) Enter into contracts to hire personnel for the management of the affairs of the Association and the maintenance and repair of the common areas.

### 3.) Vote

On all matters, unless excluded by this Declaration, to be decided by the Association, each Unit Owner shall have a vote equal to his percentage of interest in the general common elements. An owner of a condominium Unit, upon becoming an Owner, shall be a member of the Association and remain a member for the period of his unit ownership. Except as otherwise provided in the Unit Ownership Act, this Declaration or the Bylaws, a majority of the aggregate interest present at any meeting or by proxy shall be sufficient to act on matters brought before the Association. Meetings of the Association shall only be conducted when a quorum is present, as defined in the Association Bylaws.

### 4.) Failure to Comply

Each owner shall comply strictly with the provisions of this Declaration, the Bylaws of the Association and the rules, regulations, decisions and resolutions of the Association adopted pursuant thereto as the same may be lawfully amended from time to

for an action to recover sums due, for damages or injunctive relief or both, and for reimbursement of all costs, including attorney fees incurred in connection therewith, which action shall be maintainable by the Manager in the name of the Association, on behalf of the owner or by an aggrieved owner where there has been a failure of the Association to bring such action within a reasonable time.

### 5.) Payment of Assessments

When due: All assessments shall be due ten (10) days from the date of mailing such assessment following the meeting at which time assessments are levied by the Association and may be payable in installments, monthly or quarterly, at the option of the Board. The amount of the common expenses assessed against each condominium Unit and the amount of limited expenses assessed against each condominium Unit shall be the personal and individual debt of the owner thereof. No owner may exempt himself from liability for this contribution toward the common expenses and the limited expenses by waiver of the use of enjoyment of any of the general common elements or limited common elements or by abandonment of his Unit. All assessments which are not paid within thirty (30) days from the date they are due and payable become delinquent and are subject to interest and penalty charges. The Association or Manager shall have the responsibility of taking prompt action to collect any unpaid assessment which becomes delinquent. In the event of delinquency in the payment of the assessment, the Unit Owner shall be obligated to pay interest at the rate to be determined by the Board on the amount of the assessment from the due date thereof, together with such late charges as may be provided in the Bylaws of the Association. Suit to recover a money judgment for unpaid common expenses and limited expenses may be maintainable without foreclosing or waiving the lien securing the same.

> a.) Common expenses and common profits, if any, and limited common expenses of the Condominium shall be distributed among, and charged to the Unit Owners according to the percentage of interest of each in the common elements.

> b.) Except as otherwise limited in this Declaration, each Unit Owner shall have the right to use the common elements for all purposes incident to the use of and occupancy of the unit, and such other incidental uses permitted by this Declaration, which rights shall be appurtenant to and run with the whole unit.

### 6. Levying Assessments - When Made - Purposes

upon the Unit Owners in the following manner and for the following reasons;

a.) Assessments shall be made a part of the regular annual business meeting of the Association as provided in the Bylaws of the Association or assessments can be made for special purposes at any other regular or special meeting thereof. All assessments shall be fixed by resolution of the Board of Directors. Notice of the assessment, whether regular or special, the amount thereof, and the purpose for which it is made including an annual budget for expenditures and operation, for regular annual assessments, shall be served on all Unit Owners affected, by delivering a copy of the same to the Owner personally or by mailing a copy of the notice to the said Owners at their addresses of record at least ten (10) days prior to the date for such meeting.

b.) Assessments shall be made for the repair, replacement, insurance, general maintenance, management and administration of common elements, fees, costs and expenses of the manager, taxes for common areas if any, for the repair and replacement of the interior furniture, furnishings, carpet for each unit and related items and assessments for the Unit Owner's percentage share of any Improvement Districts which may exist or be created. Assessments shall be based upon and computed by using the percentage of interest that each Unit Owner has in relation to the common elements.

c.) Assessments may also be made for the payment of limited common element expenses such that the Unit Owners are chargeable only for the expenses relating to their respective units or building. Unit Owners shall share in the payment for limited expenses for the repair, maintenance and replacement of limited common elements of their respective Units in accordance with the percentage the condominium unit or units have in the limited common elements involved, then the entire cost of such repair, maintenance or replacement shall be borne by that Unit.

d.) Assessments may also be made for any purpose contemplated by this Declaration and for any purpose set out in the Montana Unit Ownership Act.

e.) Common expenses and profits, if any, of the Condominium shall be distributed among and charged to, the Unit Owners according to the percentage of undivided interest of each in the common elements

f.) In a voluntary conveyance of a Unit, the Grantee of the Unit shall be jointly and severally liable with the Grantor for all unpaid assessments by the Association against the latter for his share of the common expenses up to the time of the grant or conveyance, without prejudice to the Grantee's right to recover from the Grantor the amounts paid by the Grantee therefore. However, any such Grantee shall be entitled to a statement from the Manager or Board of Directors of the Association, as the case may be, setting forth the amount of said unpaid assessments against the Grantor due the Association and such Grantee shall not be liable for, nor shall the Unit conveyed be subject to a lien for, any unpaid assessments made by the Association against the Grantor in excess of the amount therein set forth.

g.) At the time the Association holds its first meeting, a reserve account shall be set up to which initial assessments shall then be deposited.

## ARTICLE VII

### DEVELOPER'S RIGHT TO CHANGE

The developer, Boyne USA, Inc., reserves the right to change the interior design and arrangement of all Units, so long as the declarant owns the Units so altered. No such change shall increase the number of Units or alter the boundary of the general common elements without an amendment of this Declaration.

## ARTICLE VIII

### AMENDMENT

Section 1. Amendment of this Declaration shall be made in the following manner:

At any regular or special meeting of the Association of Unit Owners such amendment may be proposed as a resolution by any Unit Owner, or the Board or Manager. Upon adoption of the resolution by a majority vote of those present the amendment shall be made subject for consideration at the next succeeding meeting of the Association with notice thereof, together with a copy of the amendment to be furnished to each owner no later than thirty (30) days in advance of such meeting. At

approved upo receiving the favorable note of at least ninety percen (90%) of the Unit Owners. If so approved, it shall b the responsibility of the Association to file th amendment with the Clerk and Recorder's Office o Madison County, Montana.

Section 2. The Developer hereby reserves the right a any time, on behalf of itself and on behalf of the Association to amend this Declaration and the Condominium Documents withou approval of any Unit owner or mortgagee for the purposes o correcting survey or other errors and for any other purpos unless the amendment would materially alter or change the right of a Unit owner or mortgagee, in which event Unit owner an mortgagee consent shall be required as provided above.

Section 3. Change in Percentage of Value. The valu of the vote of any Unit owner and the corresponding proportion o common expenses assessed against such Unit owner shall not b modified without the written consent of such Unit owner and hi mortgagee, nor shall the percentage of value assigned to any Uni be modified without like consent, except as provided in thi Declaration or in the Bylaws.

Section 4. Developer Approval. The Condominiu Documents shall not be amended without the written consent of the Developer.

Section 5. Notwithstanding the procedure set fort above, the Declarant may amend this Declaration, or any othe project document, prior to any sale or lease of a Unit o interest thereof.

## ARTICLE IX

## RECREATIONAL FACILITIES

Section 1. Description of Recreational Facilities and Parties With Right to Use. The Unit owners and guests staying in the units described herein have the right to use the two swimming pools and health club facility located at the Huntley Lodge along with guests of the Huntley Lodge. Entry to the facilities will be by a keyed or electronic entry system. The recreational facilities have been designed for use by occupants of the Shoshone Condominium Hotel and occupants of the Huntley Lodge at Big Sky. The Developer and the Unit owners through the Association shall pay a proportional share of all expenses of repair, maintenance, operation and replacement of the recreational facilities. The share of such expenses shall be

in the hotel condominium units in the Shoshone Condominium Hote and the number of maximum guests allowable in the hotel units i the Huntley Lodge. Expense of repair, maintenance, operation and replacement of the recreational facilities shall be deemed t include, but not necessarily be limited to, expenses incurred fo hazard and liability insurance, personnel required to staff maintain and repair the recreational facilities, supplie incident thereto, real and personal property taxes in connectio therewith, and, in general, all expenses reasonably necessary o incident to the operation, maintenance and repair of th recreational facilities. The easement for the use of th recreational facilities created pursuant to this Article shal also include a perpetual easement over the condominium projec for reasonable pedestrian and vehicular ingress and egress to an from the recreational facilities for the reasonable use thereo by all persons entitled to such use.

Section 2. Administration of Recreational Facilities The Developer shall administer the recreational facilities unti the time of the first meeting of the Association provided for i Article 4 of the Bylaws. The Developer shall have the right t establish and maintain reasonable rules and regulations for th use of the facilities, prepare the first annual operating budge for the facilities, hire necessary employees and staff personnel and bill and collect from the Association the Association' proportionate share of the expense of repair, maintenance operation and replacement of the recreational facilities for th facilities first year of operation. Following the first meetin of the Association, a committee of three (3) persons shall b appointed to administer the recreational facilities. Two member of the committee shall be appointed by the Developer and on member of the committee shall be appointed for by th Association. Members of the committee shall be appointed for term of one (1) year. The committee shall take over th responsibility for administering the recreational facilities fro Developer. The committee shall be responsible for preparing th second annual budget and all subsequent annual budgets an collecting each parties proportionate share of each budget. Al decisions relative to the administration of the recreationa facilities shall be made by majority vote and be governed by th following standards: (1) the Recreational Facilities shall b fairly and jointly administered; (2) an annual operating budge for the Recreational Facilities shall be prepared and all expenditures shall be consistent with said budget and subject t audit by all parties; (3) said budget shall provide reasonable maintenance of the Recreational Facilities; (4) no additions t the Recreational Facilities nor termination of the use thereof shall occur without the consent of 51% of the parties entitled t the use thereof; (5) rules relating to the use of the Recreational Facilities may be adopted by the committee, but

shall be equitable and nondiscriminatory as to all users; (6) an easements of access reasonably necessary for utilization c the Recreational Facilities by all persons entitled thereto shal be deemed to exist by reason hereof; (7) all disputes betwee parties entitled to the use of the Recreational Facilities be subject to arbitration in accordance with the rules of th American Arbitration Association in effect at the time of th dispute; and (8) the failure of any party to pay its require share of the costs of maintenance of the Recreational Facilitie shall operate to suspend the right of said party to utilize th Recreational Facilities for so long as such costs shall remai unpaid (which remedy shall be in addition to all other remedie provided under the Condominium Documents or provided in any othe instruments pertaining to the use of the Recreational Facilitie by any person or persons). The books and records regarding th Recreational Facilities shall be kept separate by the committe and shall be made available for inspection by all owners of Unit and the Developer.

Section 3. Specific Written Easements. The Develope may, by a subsequent instrument, prepared and recorded in it sole discretion without the necessity of consent by an interested party, specifically define by legal description th easements created by this Article IX.

# ARTICLE X

## CERTAIN OTHER RESTRICTIONS AND
## RIGHTS RESERVED TO DEVELOPER

Section 1. Right of First Refusal. No Unit owner may dispose of a Unit or any interest therein by sale without complying with this Section 1:

(a) A Unit owner intending to make a sale of a Unit, or any interest therein, except to immediate family members, shall deliver written notice of such intention to the Developer and shall furnish the name and address of the intended purchaser and such other information as the Developer shall reasonably request. At the time of giving such notice, such Unit owner shall also furnish the Developer with copies of all instruments setting forth the terms and conditions of the proposed transaction. The giving of such notice shall constitute a warranty and a representation by such Unit owner to the Developer that the Unit owner believes the proposed sale to be bona fide in all respects. The selling Unit owner shall be responsible to the Developer for any damages suffered by it in exercise of its rights hereunder and, in the event any proposed

sale as actual damages such damages shall include (but not be limited to) the difference between the price paid by the Developer for the Unit or interest and the fair market value thereof.

(b)  Within 30 days after receipt of such notice of intention to sell the Developer shall either waive its right to purchase the Unit or interest by written notice delivered to the selling Unit owner or execute and deliver to such Unit owner a contract of sale upon terms as favorable to the selling Unit owner as the terms furnished with the notice.  The Developer shall have not less than 30 days subsequent to the date of execution of such contract in which to close the transaction.  The selling Unit owner shall be bound to consummate the transaction with the Developer pursuant to such contract.  If the Developer fails to execute and deliver such written waiver or contract for sale to such selling Unit owner within such 30-day period for any reason whatsoever, such Unit owner may then sell the Unit or interest to the offeror provided that the sale is on the terms and conditions and for the price set forth in the notice of intention to sell delivered to the Developer.

(c)  In the event a sale is consummated between a Unit owner and any proposed purchaser upon any basis other than as disclosed to the Developer, the Developer shall then have the same right of first refusal as expressed above, which right shall expire 30 days after the Developer receives knowledge of the actual terms of the transaction or 1 year after consummation of the original transaction, whichever occurs first.

(d)  This Section shall not apply to a public or private sale held pursuant to foreclosure of a first mortgage on any Unit in the Project, nor shall this Section apply to any subsequent sale by any holder of a first mortgage on any Unit in the Project who or which obtained title to the Unit covered by such mortgage pursuant to the remedies provided in the mortgage, foreclosure of the mortgage, or deed (or assignment) in lieu of foreclosure.

(e)  Waiver of the right to purchase by the Developer with respect to a proposed sale of a Unit or interest shall not constitute waiver of the Developer's right of first refusal with respect to any future proposed sales by a Unit owner thereof.

Section 2.  Resale Brokerage Restriction.  No Unit owner may dispose of a Unit or any interest therein by sale

(a) A Unit owner intending to make a sale of a Unit, or any interest therein, shall deliver written notice of such intention to the Developer. Such Unit owner must list such Unit or interest for sale with a broker designated by the Developer, as exclusive agent, pursuant to such broker's then current standard exclusive listing agreement for the Project, for a period of 60 days, unless the Developer waives its rights under this Section in writing, which written waiver shall state the period of such waiver.

(b) If, at any time (whether during the term of the Developer's original listing agreement or otherwise), the selling Unit owner reduces the selling price of the Unit or interest, the Unit owner shall again list the Unit or interest for sale with the broker designated by Developer, as exclusive agent, pursuant to such broker's then current standard exclusive listing agreement for the Project, for another 60-day period, at such reduced price.

(c) This Section shall not apply to a public or private sale held pursuant to a foreclosure of a first mortgage on any Unit in the Project, nor shall this Section apply to any subsequent sale by any holder of a first mortgage on any Unit in the Project who or which obtained title to the Unit covered by such mortgage pursuant to the remedies provided in the mortgage, foreclosure of the mortgagee, or deed (or assignment) in lieu of foreclosure.

(d) Waiver of the resale brokerage restriction contained in this Section by the Developer with respect to a Unit owner's proposed sale shall not extend beyond the period stated in the writing evidencing such waiver.

Section 3. Leasing. A Unit owner may not lease his Unit unless:

(a) the Unit is leased only as a transient hotel accommodation; and

(b) the Unit is leased only through Developer or a leasing agent designated by Developer, pursuant to Developer' or such leasing agent's then current leasing agency/management agreement for the Project, and upon such terms and conditions as Developer or such leasing agent may require, in their sole discretion. Developer may lease any number of Units in the

tions as Developer may determine, in Developer's sole discretion.

Section 4.    Notices.    All writings required or permitted to be given or delivered under this Article IX shall be deemed given or delivered, if the writing is directed to the Developer, by delivering it personally to an officer of the Developer, or if such writing is directed to the selling Unit owner, by delivering it personally to such Unit owner, or if mailed, in a sealed wrapper by United States registered or certified mail, return receipt requested, postage prepaid, properly addressed, if to the Developer, at the address shown on page five (5) of this Declaration and if to such Unit owner, at the Unit owner's address shown on the records of the Association. Each such mailed writing shall be deemed to have been given or delivered when deposited in the United States mail as above provided. Each such personally delivered writing shall be deemed given or delivered upon delivery thereof in the manner above provided. The Developer may change its address for the purposes of delivery of such writings by delivering written notice of such change to the Unit owner in the manner above provided at least 10 days prior to the effective date of such change.


## ARTICLE XI

## ASSIGNMENT

Any or all of the rights and powers granted or reserved to the Developer in the Condominium Documents or by law, including the power to approve or disapprove any act, use or proposed action or any other matter or thing, may be assigned by it to any other entity or to the Association. Any such assignment or transfer shall be made by appropriate instrument in writing duly recorded in the office of the Madison County Clerk and Recorder.


## ARTICLE XII

## RESTRICTIONS, MAINTENANCE AND LIENS

1.)  Restrictions

All of the Units in the Condominium shall be held, used and enjoyed subject to the following limitations and restrictions:

only to
purposes of transient hotel accommodation and for occupancy b
Unit owners, their families, and their guests and invitees who d
not pay consideration for such occupancy, consistent with th
other restrictions contained herein and the Rules and Regulation
of the Condominium; provided, however, that Units A,B and C ma
be used for any lawful purpose, including, without limitation
for storage, therapy and meeting room purposes.   The Commo
Elements shall be used only for purposes consistent with th
foregoing.

Section 2.   Leasing.   A Unit owner may not lease hi
Unit except as provided in this Declaration.

Section 3.   Alterations and Modifications.   No Uni
owner shall make any alteration or structural modification in an
element.   Such alterations and modifications shall only b
undertaken by the Association, if approval has been given by th
Developer.   The restrictions contained in this paragraph shal
not apply to commercial units A,B and C.

Section 4.   Activities.   No immoral, improper, unlawfu
or offensive activity shall be carried on in any Unit or upon th
Common Elements nor shall anything be done which may be or becom
an annoyance or a nuisance to the Unit owners of the Condominium
No unreasonably noisy activity shall occur in or on the Commo
Elements or in any Unit at any time and disputes among Uni
owners, arising as a result of this provision which cannot b
amicably resolved, shall be arbitrated by the Association.   N
Unit owner shall do or permit anything to be done or keep o
permit to be kept in his Unit or on the Common Elements anythin
that will increase the rate of insurance on the Condominiu
without the written approval of the Association, and each Uni
owner shall pay to the Association the increased cost o
insurance premiums resulting from any such activity or th
maintenance of any such condition even if approved.   Activitie
which are deemed offensive and are expressly prohibited include,
but are not limited to, the following:   any activity involving
the use of firearms, air rifles, pellet guns, B-B guns, bows and
arrows, or other similar dangerous weapons, projectiles o
devices.

Section 5.   Pets.   No animals, including househol
pets, shall be maintained by any Unit owner in his Unit o
elsewhere in the Project.   Any Unit owner who causes any animal
to be brought or kept upon the premises of the Condominium shall
indemnify and hold harmless the Association from any loss, damage
or liability which the Association may sustain as the result of
the presence of such animal on the premises.   The Association
may, without liability to the owner thereof, remove or cause to
be removed any animal from the Condominium.   In the event of any

with these Bylaws and in accordance with duly adopted rules and regulations of the Association.

Section 6. Aesthetics. The Common Elements shall not be used for storage of supplies, materials, personal property or trash or refuse of any kind, except as provided in duly adopted rules and regulations of the Association. No unsightly condition shall be maintained on any patio, porch or deck and only furniture and equipment consistent with the normal and reasonable use of such areas shall be permitted to remain there during seasons when such areas are reasonably in use and no furniture or equipment of any kind shall be stored thereon during seasons when such areas are not reasonably in use. Trash receptacles shall be maintained in areas designated therefor at all times and shall not be permitted to remain elsewhere on the Common Elements except for such short periods of time as may be reasonably necessary to permit periodic collection of trash. The Common Elements shall not be used in any way for the drying, shaking or airing of clothing or other fabrics. In general, no activity shall be carried on nor condition maintained by a Unit owner either in his Unit or upon the Common Elements, which is detrimental to the appearance of the Condominium.

Section 7. Vehicles. No house trailers, commercial vehicles, boat trailers, boats, camping vehicles, camping trailers, motorcycles, all terrain vehicles, snowmobiles, snowmobile trailers or vehicles, other than conventional passenger automobiles and trucks, may be parked or stored upon the premises of the Condominium or any parking area benefitting the Condominium. No inoperable vehicles of any type may be brought or stored upon the Condominium or any such parking areas either temporarily or permanently. Commercial vehicles and trucks shall not be parked in or about the Condominium unless while making deliveries or pickups in the normal course of business. Unit owners shall, if the Association shall require, register with the Association all cars to be parked on the Condominium or such parking areas. Use of motorized vehicles anywhere on the Condominium or parking areas and private roadways benefitting the Condominium, other than conventional passenger automobile or trucks, authorized maintenance vehicles and commercial vehicles as provided in this Section 7, is absolutely prohibited. The Association may, without liability to the owner thereof, cause vehicles in violation of this Section to be towed from the Condominium, or such parking areas or roadways, and stored elsewhere, all at the expense of the offending Unit owner.

Section 8. Advertising. No signs or other advertising devices of any kind shall be displayed which are visible from the exterior of a Unit or on the Common Elements, including "For

Section 9.  Rules and Regulations.  It is intended tha
the Board of Directors of the Association may make rules an
regulations from time to time to reflect the needs and desires c
the majority of the Unit owners in the Condominium.  Reasonabl
regulations consistent with the Act, this Declaration and th
Bylaws concerning the use of the Common Elements may be made an
amended from time to time by any Board of Directors of th
Association, including the first Board of Directors (or it
successors) prior to the Transitional Control Date.  Copies o
all such rules, regulations and amendments thereto shall b
furnished to all Unit owners.  All such rules and regulation
shall be subject to the written consent of Developer.

Section 10.  Right of Access of Association.  Th
Association or its duly authorized agents shall have access t
each Unit and any Limited Common Elements appurtenant theret
from time to time, during reasonable working hours, upon notic
to the Unit owner thereof, as may be necessary for th
maintenance, repair or replacement of any of the Common Elements
The Association or its agents shall also have access to each Uni
and any Limited Common Elements appurtenant thereto at all time
without notice as may be necessary to make emergency repairs t
prevent damage to the Common Elements or to another Unit.  I
shall be the responsibility of each Unit owner to provide th
Association means of access to his Unit and any Limited Commo
Elements appurtenant thereto during all periods of absence, an
in the event of the failure of such Unit owner to provide mean
of access, the Association may gain access in such manner as ma
be reasonable under the circumstances and shall not be liable t
such Unit owner for any necessary damage to his Unit and an
Limited Common Elements appurtenant thereto caused thereby or fo
repair or replacement of any doors or windows damaged in gainin
such access.

Section 11.  Landscaping.  The Association shall not
perform any landscaping or plant any trees, shrubs or flowers or
place any ornamental materials upon the Common Elements
(including any Limited Common Element area appurtenant to a
Unit), without the prior written approval of Developer.  No Unit
owner shall perform any such activities without the prior written
consent of Developer and the Association.

Section 12.  Maintenance by Owners Association.  T h e
Association shall maintain and keep in repair the exterior of the
Units and the common and limited common areas and the fixtures
thereof.  All fixtures, utility lines and equipment installed in
the Unit commencing at a point where the utilities enter the Unit
shall be maintained and kept in repair by the Association.  The

impair any easement.

The Association shall also keep all areas and limited common elements appurtenant to the Units in a clean and sanitary condition. The right of the Association to repair, alter, and remodel is coupled with the obligation to replace any finishing or other materials removed with similar type or kinds of materials. No acts or alteration, repairing or remodeling by the Association shall impair in any way the structural integrity of the Units or the structural integrity of limited common elements or general common elements.

Section 13. Exterior Alterations. No Owner may change, alter or remodel the exterior of his Unit without the prior written approval of the Board of Directors and the Developer.

The Association shall take all necessary steps, including, but not limited to, painting, care of shrubs and plants, exterior maintenance and repair, roof repair, concrete repair, snow removal and replacement or repair of all broken or worn parts, to ensure that the building does not unnecessarily deteriorate. The Board of Directors of the Association shall annually inspect the building and proceed with any necessary maintenance or repairs. Failure by the Board of Directors of the Association to make annual inspections and/or proceed with any necessary maintenance shall give the Landowner as any mortgagee or beneficiary of any trust indenture the right to order such work done and bill the Association therefor after notice to the Association of such intent by the said lienholder and giving the Association a reasonable time to perform such work. Any lienholder or representative of the same and the Landowner, upon written request, shall have the right to join in the annual inspection made by the Board of Directors and suggest needed repairs and maintenance necessary to preserve the security value of the condominium project.

Labor performed and materials furnished and incorporated into a Unit with the consent of or at the request of the Unit Owner, his agent, his contractor or subcontractor shall be the basis for the filing of a lien against the Unit or the Unit Owner consenting to or requesting the same. Each Unit Owner shall indemnify and hold harmless each of the other Owners from and against all liability arising from the claim of any lien against the Unit or against the general common elements or limited common elements for construction performed or for labor, materials, services or other products incorporated in the Owner's Unit at such Owner's request.

All sums assessed but unpaid for the share of general common expenses and limited common expenses chargeable to any

assessment liens on the Unit in favor of any assessing authority and all sums unpaid on a first or second mortgage or a first o second trust indenture of record or contract for deed, includin all unpaid obligatory sums as may be provided by suc encumbrance. To evidence such lien, the Manager shall prepare written notice of lien assessment setting forth the amount o such unpaid indebtedness, the amount of accrued interest and lat charges thereon, the name of the Owner of the Condominium Uni and a description of the Condominium Unit. Such notice shall b signed and verified by one of the officers of the Association o by the Manager, or his authorized agent, and shall be recorded i: the office of the Clerk and Recorder of Gallatin County, Montana Such lien shall attach from the date of recording such notice Such lien may be enforced by the foreclosure of the defaultin Owner's Condominium Unit by the Association in the manne: provided in the Unit Ownership Act and as provided by the foreclosure of a mortgage on real property upon the recording o: a notice of claim thereof. In any such foreclosure the Unit Owner shall be required to pay a reasonable rental for the Unit and the Plaintiff in such foreclosure action shall be entitled to the appointment of a receiver to collect the same. Suit to recover a money judgment for unpaid common expenses shall be maintainable without foreclosure or waiving the lien securing the same. In any such proceeding the Owner may be required to pay the costs, expenses and attorney's fees incurred in filing a lien, and in the event of foreclosure proceedings, additional costs, expenses and attorney's fees incurred.

The Board of Directors of the Association on behalf of the other Unit Owners, the owner of the real property and other Unit Owners shall have the power to bid on the Condominium unit at a foreclosure or other legal sale and to acquire and hold, lease, mortgage and vote the votes appurtenant to, convey or otherwise deal with the same as did the former owner. Any lienholder holding a lien on a Condominium Unit may pay, but shall not be required to pay, any unpaid general common expenses, or limited common expenses payable with respect to any such Unit, and upon such payment such lienholder shall have a lien on said Unit for the amounts paid of the same rank as the lien of his encumbrance without the necessity of having to file a notice or claim of such lien.

Where a lienholder or other purchaser of a Unit obtains title to the Unit as a result of foreclosure of the first mortgage or trust indenture, such acquirer of title, his successors and assigns, shall not be liable for the share of common expenses or assessments by the Association chargeable to such Unit which became due prior to the acquisition of title to such Unit by such acquirer. Such unpaid share of common expenses and assessments shall be deemed to be common expenses collectible

Section 14. Interior Remodeling. No Unit owner sha
remodel or change the interior of his own unit. Interi
remodeling may only occur upon approval of the Developer and t
Board of Directors of the Association. Remodeling shall
funded by monies collected from assessing as provided for
Article 14 of the Bylaws. The restrictions contained in th
paragraph shall not apply to Units A, B and C.

Section 15. Reserved Rights of Developer. Developer
Rights in Furtherance of Development and Sales. None of tl
restrictions contained in this Article XII shall apply to tl
commercial activities or signs or billboards, if any, of tl
Developer during the Development and Sales Period or of tl
Association in furtherance of its powers and purposes set fort
herein, as the same may be amended from time to time
Notwithstanding anything to the contrary elsewhere herej
contained, Developer shall have the right to maintain a sale
office, a business office, a construction office, model units
storage areas and reasonable parking incident to the foregoir
and such access to, from and over the Project as may k
reasonable to enable development and sale of the entire Projec
by Developer and may continue to do so during the entir
Development and Sales Period.

## ARTICLE XIII

## INSURANCE

1.) All insurance policies upon the condominium propert
shall be purchased by the Association and shall be issued by a
insurance company authorized to do business in Montana.

a.) Named Insured : Personal Property: The name
insured shall be the Association individually as agen
for the Unit Owners without naming them. Such policie
shall provide that payments for losses thereunder b
the insurer shall be paid to the insurance Truste
hereinafter designated, and all policies an
endorsements thereon shall be deposited with the
insurance Trustee. Unit Owners may obtain insurance
coverage at their own expense upon their own personal
property and for their personal liability and living
expense.

b.) Copies to Mortgagees and Landowners: One copy of
each insurance policy and of all endorsements thereor
shall be furnished by the Association to each mortgagee
of a Unit Owner on request.

a.) Casualty:   All buildings and improvements upon the land shall be insured to any amount equal to the full insurable replacement value and all personal property included in the common elements shall be fully insured with all such insurance to be based on current replacement value, as determined annually by the Board, the Landowner, the insurer and any first lienholders or their representatives; but subject to such deductible clauses as are required in order to obtain coverage at reasonable costs, and which coverage shall be increased by the Board as may be necessary to provide that the insurance proceeds will be sufficient to cover replacement, repairs or reconstruction.   Such coverage shall afford protection against:

(1)  Loss or damage by fire and other hazards covered by a standard extended coverage endorsement; and

(2)  Specifically such other risks including flood and earthquake loss as from time to time shall customarily be covered with respect to buildings similar in construction, location and use as the building on the land; and

(3)  Errors or Omissions Insurance for the Directors, Officers and Managers if the Association so desires, in amounts to be determined by the Board.

The policies shall state whether the following items are included within the coverage in order that the Unit Owners may insure themselves if the items are not insured by the Association:   airhandling equipment for space cooling and heating, service equipment such as dishwasher, disposal, laundry, fireplaces, refrigerator, stove, oven, whether or not such items are built-in equipment, interior fixtures such as electrical and plumbing fixtures, floor coverings, inside paint and other inside wall finishings.

b.)  Public Liability:   In such amounts and with such coverage as shall be required by the Board of Directors of the Association, including, but not limited to, hired automobile and nonowned automobile coverage, if applicable, and with cross-liability endorsement to cover liabilities of the Unit Owners as a group to a Unit Owner.

c.)  Other Insurance:   Such other insurance as the

required by the Federal and State laws.

### 3.) Premiums

Premiums upon insurance policies purchased by the Association shall be paid by the Association as a common expense except that the amount of increase in the premium occasioned by use for other than a residence, misuse, occupancy or abandonment of a Unit or its appurtenances or of the common elements by a Unit Owner shall be assessed against the Owner.  Not less than ten (10) days prior to the date when a premium is due, evidence of such payment shall be furnished by the Association to each lienholder listed in the roster of lienholders.

### 4.) Insurance Trustee

All insurance policies purchased by the Association shall be for the benefit of the Association and the Unit Owners and their mortgagees as their interests may appear, and shall provide that all proceeds covering property losses shall be paid to such bank in Montana with trust powers as may be designated as insurance trustee by the Board of Directors of the Association which trustee is herein referred to as the insurance trustee. The insurance trustee shall not be liable for payment of premiums nor for the renewal or the sufficiency of policies nor for the failure to collect any insurance proceeds.  The duty of the insurance trustee shall be to receive such proceeds as are paid and hold the same in trust for the purposes elsewhere stated in this instrument and for the benefit of the Unit Owners, their mortgagees and the Landowners.

### 5.) Distribution of Proceeds

Proceeds of insurance policies received by the insurance trustee shall be distributed to or for the benefit of the beneficial owners in the following manner:

a.) Miscellaneous:  Expenses of administration, insurance trustee and construction or remodeling supervision shall be considered as part of the cost of construction, replacement or repair.

b.) Reconstruction or Repair:  Any balance remaining shall be used for reconstruction and repair as hereafter provided.

### 6.) Association as Agent

The Association is irrevocably appointed agent for each

property . . . or any claims arising under insurance policie
purchased by the Association and to execute and deliver release
upon the payment of claims.

### 7.) Benefit to Mortgagees

Certain provisions in this paragraph entitle
"Insurance" are for the benefit of mortgagees or trust indentur
beneficiaries of leasehold condominium parcels, and all suc
provisions are covenants for the benefit of any mortgagee of
Unit and may be enforced by such mortgagee or beneficiary.

### 8.) Notice to Lienholder

The Owners Association shall notify the holder of an
first lien on any of the Units of the occurrence of any loss i
excess of $10,000.00 within thirty (30) days of such loss.

### 9.) Reconstruction

a.) If a Unit or Units are found by the Board o:
Directors to be not tenantable after the casualty, the damage
property may be reconstructed or rebuilt; or if not then the
property shall be subject to the applicable provisions of the
Unit Ownership Act.

b.) Plans and Specifications: Any reconstruction o:
repair must be substantially in accordance with the plans for
specifications for the original improvements, or if not, ther
according to plans and specifications approved by the Developer
and not less than seventy-five percent (75%) of the Unit Owners
including the Owners of all Units the plans for which are to be
altered. Any such reconstruction not in accordance with the
original plans and specifications must be set forth in an
amendment to the Declaration, which amendment shall be prepared
and filed of record.

c.) Responsibility: The responsibility for
reconstruction or repair after casualty shall be the Owners
Association who shall work with the insurance trustee to carry
out the provisions of this Article.

d.) Assessments: If the proceeds of insurance are not
sufficient to defray the estimated costs of reconstruction or
repair for which the Association is responsible, or if at any
time during such reconstruction or repair, or upon completion
of such reconstruction or repair, the funds for the payment of
the costs thereof are insufficient, assessments shall be made
against all Unit Owners in sufficient amounts to provide funds to
cover the payment of such costs. Such assessments shall be in

the general
common elements,

e.) Construction Funds: The funds for payment of
costs of reconstruction or repair after casualty, which shall
consist of proceeds of insurance held by the insurance trustee
and funds collected by the Association from assessments against
Unit Owners, shall be disbursed in the sound discretion of the
trustee and according to the contract of reconstruction or
repair, which contract must have the approval of the Board of the
Unit Owners involved and the Developer.

f.) Surplus: It shall be presumed that the first
monies disbursed in payment of costs of reconstruction and repair
shall be from the insurance proceeds. If there is a balance in
construction fund after payment of all costs of the
reconstruction and repair for which the fund is established, such
balance shall be paid to the Association for the use and benefit
of the Unit Owners.

## ARTICLE XIV

## REMOVAL OR PARTITION - SUBDIVISION

The Condominium may only be removed from condominium
ownership, and may only be partitioned or sold, upon compliance
with each of the conditions hereof;

a.) The Developer and the Board of Directors of the
Association must approve the plans of removal,
partition or sale, including the details of how any
partition or sale, and the distribution of property or
funds shall be accomplished.

b.) The plan of removal, partition, subdivision,
abandonment, termination or sale must be approved as
provided in the Montana Unit Ownership Act. If
approval for any of the foregoing is not required by
the Unit Ownership Act, then approval shall be required
from at least ninety percent (90%) of the Owners or
first lienholders in the Condominium project and
Landowner of the real property on which the condominium
is situated. Upon obtaining such approval, the Board
shall be empowered to implement and carry out the plan
of removal, partition, subdivision, abandonment,
termination or sale.

c.) No Unit may be divided or subdivided into a
smaller Unit, nor any portion thereof sold or otherwise
transferred, except as provided above.

d.)   The common elements of the Condominium shall not be abandoned, partitioned, subdivided, encumbered, sold or transferred without compliance with all of the above requirements.


## ARTICLE XV

### REMEDIES

All remedies provided for in this Declaration and Bylaws shall not be exclusive of any other remedies which may now be, or are hereafter, available to the parties hereto as provided for by law.


## ARTICLE XVI

### SEVERABILITY

The provisions hereof shall be deemed independent and severable and the invalidity or partial invalidity or unenforceability of any one or more provision shall not affect the validity or enforceability of any other provision hereof.


## ARTICLE XVII

### MISCELLANEOUS

1.)   Utility and Structural Easements

In addition to the easement provided for in paragraph III, 2 above, easements are reserved through the condominium property as may be required for utility service ducts - including water, sewer, power, telephone, natural gas and cable television, in order to serve the condominiums adequately.

Every portion of a unit which contributes to the structural support of the building shall be burdened with an easement of structural support for the benefit of the common elements.

2.)   Right of Access

The Association shall have the irrevocable right, to be exercised by the Manager, to have access to each Unit from time

maintenance, repair or replacement of any of the limited com
elements therein or accessible therefrom or for making emerge
repairs therein necessary for the maintenance, repair
replacement of any of the limited common elements ther
necessary to prevent damage to the general or limited com
elements or to any Unit.

Damage to the interior or any part of the U
resulting from maintenance, repair, emergency repair
replacement of any of the general or limited common elements
as a result of an emergency repair within another Unit at
instance of the Association shall be designated either limited
general common expenses by the Association and assess
accordance with such designation.

### 3.) Expenditures

No single expenditure or debt in excess of $1,000.
may be made on incurred by the Association or Manager without t
prior approval of a majority of the Unit Owners.

### 4.) Benefit

Except as otherwise provided herein, this Declaratio
shall be binding upon and shall inure to the benefit of th
Declarant, the Association and each Unit Owner, and the heirs
personal representatives, successors and assigns of each.

### 5.) Service of Process

The name and address of the person to receive servic
of process for the Condominium until another designation is file
of record shall be: Jeane Alm, Huntley Lodge, Big Sky, Montan
59716.

6.) A first lienholder, upon request, will be entitled t
written notification from the Association of any default in the
performance by an individual Unit Owner of any obligation unde
the condominium documents which is not cured within sixty (60
days.

7.) First lienholders shall have the right to examine the
books and records of the Owners Association and any Manager for
the condominium project.

8.) The Declarant expressly makes no warranties or
representations concerning the property, the units, the
Declaration, the Bylaws or deeds of conveyance except as
specifically set forth therein and no one may rely upon such

Estimates of common expenses are deemed accurate, but no warran or guarantee is made or is intended, nor may one be relied upon

9.) Each unit owner shall automatically become a member the Big Sky Owners' Association upon acquisition of an ownersh interest in a condominium unit.

IN WITNESS WHEREOF, the Declarant has caused th Declaration to be made and executed according to the provisio of the Montana Unit Ownership Act, Section 70-23-101, et seq MCA (1989).

SHOSHONE CONDOMINIUM HOTEL

BY: _____
John E. Kircher, Vice President
Boyne USA, Inc.
Declarant

STATE OF MONTANA        )
                        : ss.
County of Madison       )

On this 28th day of November 1989, before me, a Notary Public in and for the State of Montana, personally appeared John E. Kircher, known to me to be the Vice President of the corporation that executed the within instrument, and acknowledged to me that such corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year first above written.

_____
Notary Public for the State of MT
Residing at: Bozeman, MT
My commission expires: 6/29/91

A tract of land located within the NE¼, Section 30, Township
South, Range 3 East, P.M.M., Madison County, and mor
particularly described as follows:

Commencing at the N¼ corner of said Section 30,
Thence S 33°09'31" East a distance of 1685.92 feet to the N
corner of said tract and the true point of beginning;
Thence through the following courses:
Thence S 45°00'00" East, a distance of 76.00 feet;
Thence S 45°00'00" West, a distance of 122.00 feet;
Thence N 45°00'00" West, a distance of 10.00 feet;
Thence West, a distance of 25.50 feet;
Thence North, a distance of 10.56 feet;
Thence N 67°30'00" West, a distance of 33.01 feet;
Thence N 45°00'00" West, a distance of 10.00 feet;
Thence N 45°00'00" East, a distance of 145.20 feet to the true
point of beginning.





TYPICAL A UNIT





TYPICAL B UNIT

NOTE:
PARTITION WALLS ARE
KEYED WITH HEXAGON SYMBOL
AND P NUMBERS. SEE
WALL SECTIONS, SHEET A-21





TYPICAL C UNIT









TYPICAL D-2 LOFT PLAN
SCALE: 1/4" = 1'-0"



TYPICAL E LOFT PLAN









Unit B

UNIT B FLOOR PLAN
1/4"=1'-0"

NORTH

Unit C

