# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| LAWRENCE ANDERSON, as trustee for the LAWRENCE T. ANDERSON AND SUZANNE M. ANDERSON JOINT REVOCABLE LIVING TRUST; ROBERT AND NORA ERHART; and TJARDA CLAGETT, | **No. CV 21-95-BU-BMM** |
| Plaintiffs, | **ORDER ON CLASS CERTIFICATION** |
| v. | |
| BOYNE USA, INC.; BOYNE PROPERTIES, INC.; and SUMMIT HOTEL, LLC, | |
| Defendants. | |

## INTRODUCTION

Plaintiffs Larry Anderson ("Anderson"), Bob and Nora Erhart ("Erharts"), and Tjarda Claggett ("Claggett") (collectively "Plaintiffs") move the Court for class certification. (Doc. 88.) Defendants Boyne USA, Inc., Boyne Properties, Inc., and Summit Hotel, LLC (collectively "Boyne") move to deny class certification.

1

(Doc. 86.)

## FACTUAL AND LEGAL BACKGROUND

Boyne owns and operates Big Sky Resort ("Big Sky"), as well as three condominium-hotels at the base of Big Sky known as the Summit, Shoshone, and Village Center (collectively "the Condos"). (Doc. 26 at 2, 5.) Anderson owns a unit in the Shoshone. (*Id.*) Erharts own units in the Summit. (*Id.*) Claggett owns a unit in the Village Center. (*Id.* at 4.)

Boyne marketed the Condos as investments to prospective purchasers and made representations regarding the economic benefits of ownership. (*Id.* at 11.) Unit owners may lease their units exclusively through Boyne. (Doc. 1-1; Doc. 1-2; Doc. 1-3.) Title to the Condos remains subject to certain Declarations. (Doc. 4 at 8.) Boyne drafted the Declarations and allows no amendments without its consent. (Doc. 9 at 12.) Boyne prepared the standard rental-management agreement ("RMA") that unit owners must sign with Boyne if they are not using their unit for personal use. (*Id.*) The RMA requires unit owners to pay Boyne 50 percent of gross rental revenue "after the payment of costs." (*Id.* at 14.)

The Declarations allow Condos to be used either by the unit owners or as "transient hotel type accommodation." (*Id.*) The Declarations require all unit owners to use Boyne, or an agent designated by Boyne, as their exclusive rental agents. (*Id.*) Unit owners must wait at least three years before they may decide not

to renew the rental management contract with Boyne. (*Id.*) A decision not to renew the rental management contract with Boyne requires a vote of 75 percent of unit owners. (*Id.*) Boyne itself owns all of the commercial units in the Village Center. (*Id.*) Boyne also owns several residential units. (*Id.* at 13.) Boyne's ownership constitutes 22 percent of the voting units in the Village Center, in addition to approximately 25 percent of the voting units in the Shoshone. (*Id.* at 12; Doc. 87 at 22.)

Boyne charges unit owners several costs, per the RMA, including resort fees, credit card processing fees, and "wholesalers and travel agent commissions." (Doc. 89-6 at 4; Doc. 89-7 at 4.) The RMAs contain no definitions of these terms. (*See generally* Doc. 89-6; Doc. 89-7.) Boyne's receipts provided to Condo guests reference different fees as compared to the receipts that Boyne keeps for its own records. (*Compare* Doc. 89-25 at 2, *with id.* at 3.) A back-of-house example receipt from a March 2016 guest reservation that Boyne provided in discovery lists "Resort Service Fee" twice, but the receipt makes no mention of package breakfast fees. (*Id.* at 3.) The guest's receipt for the same reservation, by contrast, contains two $60 "Pkg Breakfast" charges, but contains no resort fees. (*Id.* at 2.) Neither receipt lists credit card processing fees, "wholesalers," or travel agent commissions. (*Id.* at 2–3.)

Boyne also controls the central reservation center through which guests of

the Condos make their reservations. (Doc. 26 at 11.) Boyne uses this system to control pricing for each of the units and to determine which units are booked first. (*Id.*) Plaintiffs allege that their contracts with Boyne violate state and federal law. (Doc. 4 at 6.) Plaintiffs plead their claims as a putative class. (*Id.*)

Boyne filed a motion to dismiss on March 25, 2022. (Doc. 3.) The Court granted, in part, and denied, in part, the motion on July 7, 2022, following a motion hearing. (Doc. 15.) Boyne filed a second motion to dismiss on November 17, 2022. (Doc. 27.) The Court denied the motion on February 22, 2023, following a hearing on the motion. (Doc. 64.)

Boyne subsequently sought to terminate Plaintiffs' RMAs, effective February 24, 2023. (Doc. 49-1; Doc. 49-2.) Plaintiffs filed a Motion to Maintain the Status Quo on February 3, 2023. (Doc. 48.) The Court granted, in part, and denied, in part, the motion on February 23, 2023, following a motion hearing. (Doc. 68; Doc. 73.) The Court issued a temporary injunction preventing Boyne from terminating Plaintiffs' RMAs. (Doc. 73 at 16–17.) The Court denied Plaintiffs' requests to enjoin certain communications between Boyne and putative class members. (*Id.*)

Boyne filed a Motion to Deny Class Certification on May 3, 2023. (Doc. 86.) Plaintiffs filed a Motion to Grant Class Certification on May 3, 2023. (Doc. 88.) The Court conducted a hearing on the pending motions on May 18, 2023.

(Doc. 94.)

## LEGAL STANDARD

Class relief proves appropriate where the underlying issues are common to the entire class and the questions of law apply to each class member. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)). Class actions serve to conserve a court's and the parties' resources by allowing an issue affecting every class member to be economically litigated. *Id.* Courts limit claims that fall under the class action umbrella to those class claims "fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of Southwest*, 457 U.S. at 156 (quoting *Gen. Tel. Co. of Northwest v. EEOC*, 446 U.S. 318 (1980)).

Federal Rule of Civil Procedure 23 governs class certification. The party seeking class certification bears the burden of demonstrating that they have met all of the requirements of Rule 23(a) and Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). To certify a class, Plaintiffs must establish the following elements:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4)  the representative parties will fairly and adequately protect
          the interests of the class.

Fed. R. Civ. P. 23(a). If Plaintiffs meet these four requirements, Plaintiffs also

must establish that the class meets one or more of the following conditions:

    (1)  prosecuting separate actions by or against individual class
          members would create a risk of:

        (A)  inconsistent or varying adjudications with respect to
             individual class members that would establish
             incompatible standards of conduct for the party
             opposing the class; or

        (B)  adjudications with respect to individual class
             members that, as a practical matter, would be
             dispositive of the interests of the other members not
             parties to the individual adjudications or would
             substantially impair or impede their ability to protect
             their interests;

    (2)  the party opposing the class has acted or refused to act on
          grounds that apply generally to the class, so that final
          injunctive relief or corresponding declaratory relief is
          appropriate respecting the class as a whole; or

    (3)  the court finds that the questions of law or fact common to
          class members predominate over any questions affecting
          only individual members, and that a class action is
          superior to other available methods for fairly and
          efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).

## DISCUSSION

      Plaintiffs and Boyne have filed cross-motions urging the Court to grant and

deny, respectively, class certification for Plaintiffs. (Doc. 88; Doc. 86.) Plaintiffs

seek to certify the following class:

> All persons and entities, other than Boyne, that:
>
> > (i) own or have owned a unit in the Summit, the Shoshone, or the Village Center; and
> >
> > (ii) [have] participated in the Boyne rental management program.

(Doc. 89 at 10.)

## I.   Whether Plaintiffs' Proposed Class Satisfies the Requirements of Rule 23(a).

The Court first will evaluate the four factors enumerated in Rule 23(a) in evaluating the parties' competing motions for class certification.

### A.  Numerosity.

A class so large that "joinder of all members is impracticable" satisfies Rule 23(a)'s numerosity requirement. Fed. R. Civ. P. 23(a)(1). No bright line rule exists for numerosity. Courts typically grant certification for a proposed class that contains more than 40 members. *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010); *Alexander v. JBC Legal Group, P.C.*, 237 F.R.D. 628, 631 (D. Mont. 2006).

This action involves four named plaintiffs and hundreds of putative class members. Plaintiffs assert that they have satisfied the numerosity requirement. Plaintiffs highlight that the three Condo-Hotels contain 256 total residential units. (Doc. 89 at 24.) Plaintiffs further note an unknown additional number of former

unit owners. (*Id.*) Plaintiffs contend that joinder of all putative class members would prove impracticable. Boyne does not contest the numerosity factor. (Doc. 87.) Plaintiffs have satisfied the numerosity requirement imposed by Fed. R. Civ. P. 23(a)(1).

**B. Commonality.**

A district court may certify a class action only if the matter presents "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common . . . . [as] existence of shared legal issues with divergent factual predicates is sufficient[.]" *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (internal citation omitted). "[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal citation and quotation marks omitted).

The common contention "must be of such a nature that it is capable of classwide resolution," however, and that judicial resolution of the issue proves "central to the validity" of putative class members' claims "in one stroke." *Id.* at 350. A "lawsuit [that] challenges a system-wide practice or policy that affects all of the putative class members" satisfies the commonality requirement. *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 808 (9th Cir. 2020) (citing *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (*abrogated on other*

*grounds by Johnson v. California*, 543 U.S. 499 (2005))). "[A] common contention need not be one that will be answered, on the merits, in favor of the class." *Id.* at 807 (citing *Stockwell v. City & Cnty of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014)).

Plaintiffs contend that they meet the commonality requirement for the following four reasons: (1) all putative class members have had to hire Boyne as their exclusive leasing agent and participate in the rental management program ("Program") in order to rent their units; (2) all putative class members have signed a version of Boyne's standard RMA; (3) Boyne has operated the Program in the same manner for all unit owners and has provided the same monthly statements; and (4) the putative class will rely on the same statistical evidence and calculations for each unit owner in proving their claims. (Doc. 89 at 17–18; Doc. 97 at 28–29.)

Plaintiffs additionally argue that the putative class shares the following common legal questions: (1) whether Boyne owes a fiduciary duty to unit owners; (2) whether Boyne has violated Montana law with respect to management of trust account funds; (3) whether Boyne has manipulated room rentals and discounts for its benefit; and (4) whether Boyne has failed properly to share rental revenue with unit owners. (Doc. 89 at 18.)

Boyne argues that Plaintiffs have failed to satisfy the commonality requirement because "each putative class member rents or resides in their unit for

different reasons." (Doc. 87 at 27.) Boyne additionally asserts that each unit proves "susceptible to unique rental demands" such that no common evidence could prove entitlement to relief on a class-wide basis. (*Id.*) Boyne cites *Sides v. Glob. Travel All., Inc.*, for the proposition that "'the same evidence will [not necessarily] suffice for each member to make a prima facie showing' of commonality," despite dealing with identical provisions in a form contract. No. CV 20-53-BLG-SPW-TJC, 2021 WL 5926136, at *4–5 (D. Mont. Aug. 16, 2021) (*findings and recommendations adopted in full*, No. CV 20-53-BLG-SPW, 2021 WL 5195789, at *2 (D. Mont. Nov. 9, 2021)).

The *Sides* plaintiffs' proposed class included all customers who had purchased a travel package from the defendant travel agency for travel after January 31, 2020; whose trips were cancelled or postponed due to the COVID-19 pandemic; and who did not receive full refunds. *Id.* at *2. The magistrate judge in *Sides* determined that the putative class lacked commonality due to differences between the customers' trip packages, refund and/or voucher options offered and ultimately accepted or rejected, and evolving pandemic-related circumstances. *Id.* at *4. The question of the legality of the defendant travel agency's practices proved insusceptible to generalized, class-wide proof because each putative plaintiff's "situation [had been] resolved based on the individual circumstances of the traveler and the scheduled trip." *Id.*

The 1.5 million putative class members in *Dukes* similarly failed to satisfy Rule 23's commonality requirement because they "held a multitude of jobs, at different levels of Wal–Mart's hierarchy, for variable lengths of time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of supervisors[,]" "subject to a variety of regional policies that all differed," and "[s]ome thrived while others did poorly." 564 U.S. at 360. The *Dukes* plaintiffs alleged a general corporate policy of allowing discretion by local managers. *Id.* at 353. The U.S. Supreme Court concluded that the plaintiffs' effort to "sue about literally millions of employment decisions at once" thwarted commonality because "demonstrating the invalidity of one manager's use of discretion [would] do nothing to demonstrate the invalidity of another's." *Id.* at 352, 355–56.

*Sides* and *Dukes* prove distinguishable from the factual circumstances and legal questions here. Plaintiffs do not contend that Boyne has withheld revenue, neglected to share information, and imposed rental management restrictions pursuant to individualized or discretionary determinations. Plaintiffs instead challenge Boyne's overarching, class-wide rental management policies and practices. (Doc. 89 at 17–18.) Plaintiffs' claims prove analogous to those raised by class members in *Parsons v. Ryan*, 54 F.3d 657, 685 (9th Cir. 2014), and *Gonzalez*, 975 F.3d at 807–09.

The Ninth Circuit in *Parsons* affirmed the district court's certification of a proposed class comprised of incarcerated people impacted by allegedly systemic and unconstitutional conditions of solitary confinement and provision of privatized medical, dental, and mental health care services. 754 F.3d at 664–68. The *Parsons* plaintiffs challenged common policies and practices of the Arizona Department of Corrections. *Id.* at 679. The Ninth Circuit emphasized in its discussion of commonality that "all members of the class are subject identically to those same policies and practices, and the constitutionality of any given policy and practice . . . can be answered in a single stroke." *Id.*

Class members in *Gonzalez* leveled a similar legal challenge to an overarching policy or practice. 975 F.3d at 808. *Gonzalez* involved a Fourth Amendment challenge to U.S. Immigration and Customs Enforcement's policy of issuing immigration detainers solely on the basis of electronic database checks to determine probable cause for detention. *Id.* at 797. The Ninth Circuit upheld the district court's finding that the plaintiffs had established commonality. *Id.* at 808. The Ninth Circuit reasoned that "[a] determination concerning the reliability of the system of databases on which the Government relies will resolve Plaintiffs' claims on a classwide basis." *Id.*

Unlike in *Sides* or *Dukes*, Plaintiffs have identified shared questions of law and fact common to the class and appropriate for class-wide resolution. *Sides*, 2021

WL 5926136, at *4–5; *Dukes*, 564 U.S. at 360. Plaintiffs have proffered "sufficient evidence at this stage of the litigation of the existence of [Boyne] policies and practices" that allegedly violate putative class members' contract rights. *Parsons*, 754 F.3d at 683. Plaintiffs raise legal and factual questions regarding Boyne's class-wide deduction of certain fees (Doc. 89-13 at 9–11; Doc. 89-20 at 1–2; Doc. 89-21; Doc. 89-22 at 1; Doc. 89-24 at 1) and practices with respect to disclosure to unit owners of specific rental revenue and costs specific to their units (*see, e.g.*, Doc. 89-14; Doc. 89-15; Doc. 89-16). Plaintiffs additionally challenge common provisions of the RMAs, including with respect to the legality of Boyne's requirement that unit owners who elect to rent their units to use Boyne as their exclusive rental manager. (Doc. 89-4 at 8; Doc. 89-6 at 1; Doc. 89-7 at 1; Doc. 89-12 at 1.)

The questions of whether Boyne's rental management policies and practices have breached its fiduciary duty, whether Boyne systematically has engaged in illegal withholding of rental revenues from unit owners, and whether Boyne's disclosure to putative class members of financial information pertaining to their units' rental revenue and cost breakdown each will provide class-wide answers that go to the heart of putative class members' claims. *Compare Gonzalez*, 975 F.3d at 808, *with Sides*, 2021 WL 5926136, at *4–5. As in *Parsons*, Plaintiffs "have met, and indeed far exceeded, [the commonality] requirement." 754 F.3d at 683. To the

13

extent that some "divergent factual predicates" exist based upon putative class members' different units and rental histories, Plaintiffs' "shared legal issues" prove susceptible to class-wide resolution. *Gonzalez*, 975 F.3d at 807 (citing *Meyer*, 707 F.3d at 1041). Plaintiffs have satisfied Rule 23's commonality requirement. Fed. R. Civ. P. 23(a)(2).

## C. Typicality.

Representative plaintiffs' claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Rule 23(a)(3) is 'permissive' and requires nothing more than that a class plaintiff's claims be 'reasonably coextensive with those of absent class members.'" *Gonzalez*, 975 F.3d at 809 (citing and quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Typicality depends upon "whether other members have suffered the same or similar injury," "whether the action is based on conduct which is not unique to the named plaintiffs," and "whether other class members have been injured by the same course of conduct." *Parsons*, 754 F.3d at 685. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief is sought." *Id.* (citing *Hanon*, 976 F.2d at 508).

Plaintiffs assert that they have satisfied the typicality requirement because putative class members have signed the same standard RMAs and have suffered the same type of injury as a consequence of Boyne's administration of the

Program. (Doc. 89 at 27; Doc. 97 at 26.) Plaintiffs contend that the inclusion of representative class members who own units in each of the Summit, the Shoshone, and the Village Center Condo-Hotels further supports typicality. (Doc. 89 at 27.) Boyne responds that Plaintiffs' claims prove unique for the following four reasons: (1) some putative class members bought their units because they wanted Boyne as their rental manager; (2) differences exist between Plaintiffs with respect to their reasons for signing the RMAs and their rental histories; (3) putative class members will have different damages; and (4) Plaintiffs are subject to unique defenses, including regarding the applicable limitations periods for their claims. (Doc. 87 at 23–27.)

Boyne asserts that the existence of putative class members who are satisfied with Boyne and support its continued, exclusive rental management of the Condo-Hotels defeats typicality. (Doc. 87 at 23–24.) This contention restates Boyne's adequacy argument, addressed below in section (I)(D). Boyne also argues that differences in Plaintiffs' claimed damages destroy typicality. (*Id.* at 25.) Boyne repeats and expands upon this assertion as it relates to the Rule 23(b)(3) predominance analysis. (*Id.* at 28–32; Doc. 96 at 27–28, 31–32.) Boyne's damages argument fails to defeat typicality for the same reasons it fails to undermine predominance, as discussed below in section II(A). The Court declines to duplicate its analysis and instead will proceed to consider Boyne's remaining arguments in

turn.

Boyne argues that differences between Plaintiffs preclude typicality. (Doc. 87 at 24.) Boyne cites, for instance, Bob Erhart's claims that he had "no choice" but to sign his RMA because Boyne was the Summit's exclusive rental manager. (*Id.*) Anderson admits that he chose to sign his RMA with Boyne on the basis that "[s]elf-[rental] management was not an option for me because I was not living here locally[.]" (*Id.*) Boyne also highlights the fact that Clagett terminated his RMA in 2015, lived in his unit for two years, and subsequently entered into a new RMA with Boyne in 2017. (*Id.*) These differences between Plaintiffs prove immaterial. The "nature of [Plaintiffs'] claim[s] or defense[s]" proves typical notwithstanding the differences Boyne highlights in "the specific facts from which [the claims or defenses] arose." *Parsons*, 754 F.3d at 685.

Each named plaintiff has entered into an RMA with Boyne. Each named plaintiff remains subject to the same challenged rental management practices. Boyne has failed to identify any putative class members who would not be subject to the RMAs and rental management practices that Plaintiffs challenge. Plaintiffs' claims need not be identical to those of all putative class members. *Id.* Plaintiffs' claims remain "reasonably coextensive with those of absent class members" for purposes of Rule 23(a)(3)'s "permissive" standard. *Gonzalez*, 975 F.3d at 809 (internal citation omitted).

16

Boyne's final typicality argument about Plaintiffs being subject to unique defenses misconstrues both the record and the Court's previous orders. (Doc. 87 at 26–27.) Boyne contends that Plaintiffs "face severe statute of limitations problems." (*Id.* at 20.) Boyne emphasizes that Anderson asked questions about the revenue statements, resort services fee, and breakfast fees during a Shoshone Condominium Hotel Owners' Association ("SCHOA") meeting in 2013. (*Id.* at 21; Doc. 87-12 at 5.) Boyne argues that "Erharts knew of effectively all issues alleged with Boyne's rental management program since at least 2015." (Doc. 87-13 at 2–3.) Boyne quotes Clagett's deposition testimony that he "saw shortcomings in the [RMA] before signing it" in 2014. (Doc. 87-14 at 3.)

The Court finds unpersuasive Boyne's assertions about the extent of Plaintiffs' knowledge of Boyne's rental management policies and practices. Bob Erhart stated in his deposition that he expected Boyne's discretion to set room rates to be limited by principles of fairness, reasonableness, and competitiveness. (Doc. 87-13 at 2–3.) Clagett, despite having identified some shortcomings in the RMA before he signed it, emphasized that "the problems [including the resort fee deduction] were not highlighted or evident" and that he signed the agreement without "any disclosure of what [the resort fee] was or what it meant." (Doc. 87-14 at 3.)

The probability that other class members received similar notices, information, or had similar suspicions renders the statute of limitations analysis a common issue that supports typicality. Whether the statute of limitations has begun to run involves an analysis common to Plaintiffs and every putative class member. *Textana, Inc. v. Klabzuba*, 222 P.3d 580, 587 (Mont. 2009).

Boyne also appears to ignore the Court's previous determinations regarding the limitations period in Orders of July 7, 2022 and February 2, 2023 denying Boyne's first and second motions to dismiss. (Doc. 15; Doc. 64.) The Court already has determined that Plaintiffs' claims are not time-barred in light of Boyne's fiduciary duty to unit owners and the applicability of the continuing tort doctrine. "Plaintiffs' claims have continued to accumulate so long as Boyne has acted as their rental manager, and, therefore, the claims are not time barred." (Doc. 15 at 6.) "Boyne's role as rental manager proves sufficient to establish a fiduciary relationship." (*Id.* at 8.) "Boyne cannot escape liability for ongoing, illegal action just because it has been engaging in that conduct for many years." (Doc. 64 at 11.)

Boyne has failed to offer any evidence or argument that would disturb the Court's conclusions with respect to the limitations period. Plaintiffs' claims and Boyne's potential defenses prove similar and "reasonably co-extensive," even if some individualized fact analysis would prove necessary. *Gonzalez*, 975 F.3d at 809 (citing and quoting *Hanon*, 976 F.2d at 508). Plaintiffs have established

18

typicality pursuant to Fed. R. Civ. P. 23(a)(3).

**D. Adequacy of Representation.**

Under Rule 23(a)(4), Plaintiffs must fairly and adequately protect class interests. Fed. R. Civ. P. 23(a)(4). This inquiry presents a two-fold test: first, "the named representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Second, a district court considering class certification must determine whether the named plaintiffs and counsel will litigate vigorously on behalf of the entire class. *Ellis v. Costco Wholesale Corp.*, 657 F. 3d 970, 985 (9th Cir. 2011). The named plaintiff "requirement is satisfied so long as one of the class representatives is an adequate class representative." *Local Joint Executive Bd. v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001). Adequacy additionally requires that "named plaintiff's counsel [be] competent to represent the class." *Byorth v. USAA Casualty Ins. Co.*, 333 F.R.D. 519, 530 (D. Mont. 2019).

The Ninth Circuit "do[es] not 'favor denial of class certification on the basis of speculative conflicts.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (quoting *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003)). Courts recognize that "[i]t will almost always be the case that some putative class members are happy with things as they are." *Norris-Wilson v. Delta-*

19

*T Group, Inc.*, 270 F.R.D. 596, 606 (S.D. Cal. 2010). "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 942 (quoting 1 William B. Rubenstein et al., *Newberg on Class Actions* § 3.58 (5th ed. 2011)).

### i.   Adequacy of Plaintiffs as Class Representatives.

Boyne contends that Plaintiffs constitute inadequate class representatives because they possess a fundamental conflict of interest with putative class members. (Doc. 87 at 15.) Boyne highlights that some putative class members in each of the three Condo-Hotels oppose the litigation. (*Id.* at 11–12, 18–20; Doc. 96 at 19.) Boyne has attached to its motion for denial of class certification affidavits from four Condo-Hotel unit owners: Lynne Conkling ("Conkling"), Vasilios Mylonas ("Mylonas"), Jason Martel ("Martel"), and Suzanne Schreiner ("Schreiner") (collectively "Unit Owner Affiants"). (Doc. 87-7; Doc. 87-8; Doc. 87-9; Doc. 87-10.)

Boyne's Unit Owner Affiants state that they oppose the putative class action due to anticipated adverse impacts to the Condo-Hotels' reputations and the real estate value of their units should the Court invalidate the RMAs or Boyne's exclusive rental management provision. (Doc. 87 at 18–19.) Boyne additionally

20

represents that a majority of Shoshone unit owners "currently choose to use Boyne" as their rental manager. (*Id.* at 22.)

Rule 23(a)(4) concerns "conflicts between the class representatives and other members of the putative class, not between those who do and don't think a lawsuit is a good idea in the first place." *Norris-Wilson*, 270 F.R.D. at 606 (internal citation omitted.) The fact that some "potential class members disagree with the spirit of an action doesn't mean [that] it shouldn't be certified." *Id.* The district court in *O'Connor v. Uber Technologies, Inc.* rejected a similar conflict of interest argument to that advanced by Boyne. No. 13-cv-03826-EMC, 2015 WL 5138097, at *12–13 (N.D. Cal. Sept. 1, 2015), *rev'd on other grounds by* 904 F.3d 1087 (9th Cir. 2018). *O'Connor* involved a class action over the alleged misclassification of Uber drivers as independent contractors. *Id.* at *1–2. The district court found no conflict that could defeat representative adequacy where a "small fraction" of the affected drivers submitted declarations in support of the status quo and Uber's allegedly unlawful business model. *Id.* at *12.

The district court in *O'Connor* noted that Uber's proffered driver declarations reflected a statistically insignificant and non-representative sample of the putative class and that Uber had presented no "evidence that the responses of these drivers were free from the taint of biased questions," including a lack of information about whether the declarants had been told that prevailing class

members "might be entitled to thousands of dollars." *Id.* The district court further emphasized its "doubts that most Uber drivers or declarants correctly understand the pertinent legal differences between being an employee and an independent contractor, or the potential consequences of this lawsuit." *Id.* at *13. *O'Connor* also noted that any "class members who truly object to the goals of [the] lawsuit [remained] free to opt-out[.]" *Id.*

Boyne's alleged conflict of interest argument similarly lacks merit. The Court notes, as an initial matter, that Boyne failed to identify the four Unit Owner Affiants in its initial disclosures. (Doc. 97 at 11.) Boyne also has withheld from Plaintiffs its communications with potential class members based on an assertion of work product privilege. (*Id.* at 11 n.1.) Plaintiffs assert that Boyne's Unit Owner Affiants may possess their own conflicts of interest. (*Id.* at 14–15.)

For example, Schriener is a real estate agent who works with Big Sky Real Estate Co., which describes itself as a "Partner" of Boyne on its website. (Doc. 97-6.) Plaintiffs note that Conkling is being sued for abuse of process for bringing claims on behalf of Boyne, a non-party, against SCHOA board members in the *Benton* litigation. *See Benton v. Shoshone Condominium Owners' Assoc., et al.*, DV-29-2018-54, Order on Mot. to Dismiss Counterclaim, 12 (Mont. Fifth Judicial District, Madison County, Nov. 18, 2021). (Doc. 97-7.) Finally, Mylonas, Martel,

and Scheiner each have served on Condo-Hotel boards that Plaintiffs allege to be "improperly controlled by Boyne as part of the Program." (Doc. 97 at 14.)

Nowhere do Boyne's Unit Owner Affiants state that they want Boyne to misappropriate rental income or violate Montana law. The affidavits similarly lack any specific information regarding Unit Owner Affiants' knowledge of the allegedly unlawful manner in which Boyne operates the Program. (Doc. 97 at 19.) As in *O'Connor*, Boyne's Unit Owner Affiants constitute a statistically insignificant and non-representative sample of the putative class. 2015 WL 5138097, at *12–13. Boyne similarly has failed to present "evidence that the responses of [Unit Owner Affiants are] free from the taint of biased questions," or were made with the benefit of information about Boyne's allegedly unlawful rental management practices and policies. *Id.*

The Ninth Circuit, moreover, has rejected conflict of interest-based arguments against class certification where some putative class members prefer an allegedly unlawful status quo. *Hamidi v. Serv. Emps. Int'l Union Local 1000*, No. 2:14-319 WBS KJN, 2015 WL 2455600, at * 6 (E.D. Cal. May 22, 2015) (citing *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 781 (9th Cir. 1986)); *Lerwill v. InFlight Mot. Pics, Inc.*, 582 F.2d 507, 512 n.4 (9th Cir. 1978). The district court emphasized in *Smith v. Cardinal Logistics Management Corp.* that it would prove "antithetical" to public policy to allow a small group of people to thwart class

certification on conflict-of-interest grounds because they were satisfied with an allegedly illegal situation. No. 07-2104 SC, 2008 WL 4156364, at *7 (N.D. Cal. Sept. 5, 2008). Plaintiffs continue to allege that Boyne's rental management policies and practices reflect unlawful conduct that deprives unit owners of their rights. (Doc. 89 at 38; Doc. 97 at 19–21.) The Court rejects Boyne's attempt to defeat adequacy on the basis of Unit Owner Affiants' support for the potentially illegal status quo. *Hamidi*, 2015 WL 2455600, at * 6.

The Court agrees with Plaintiffs that the stated opposition of Boyne's Unit Owner Affiants fails to establish a fundamental conflict of interest sufficient to defeat class certification. (Doc. 89 at 28.) Plaintiffs, in turn, have proffered sufficient evidence that they and their counsel meet Rule 23(a)(4)'s adequacy requirement. Fed. R. Civ. P. 23(a)(4). Named Plaintiffs each have submitted declarations that affirm their understanding of the significance of the litigation and their appreciation of the roles and responsibilities that they would possess if permitted to proceed as class representatives. (Doc. 89-29; Doc. 89-30; Doc. 89-31; Doc. 89-32.) Plaintiffs certify that they remain "committed to achieving the best possible result for class members." (Doc. 89 at 28–29.)

Plaintiffs affirm that their interests align with those of the class in establishing Boyne's liability and maximizing class-wide damages. (Doc. 89 at 28.) Plaintiffs each confirm that they remain prepared to "turn[] down a settlement

offer that might be more lucrative for [them], personally" in order to meet their class representative obligations. (Doc. 89-29 at 3; Doc. 89-30 at 3; Doc. 89-31 at 3; Doc. 89-32 at 3.) Plaintiffs also express an understanding that the injunctive relief they seek "would not in any way prevent [Boyne's Unit Owner Affiants] from continuing to work with Boyne[.]" (Doc. 97 at 19 n.6.) All Plaintiffs currently own Condo-Hotel units. The Court agrees with Plaintiffs that they possess "an interest in both damages for past injuries and in prospective equitable relief." (*Id.* at 23.)

Boyne argues that Anderson may not serve as an adequate class representative because he owns a unit in the Shoshone and some Shoshone unit owners "have been able to rent their units outside of Boyne in the past." (*Id.* at 21.) This argument lacks merit. Class certification requires a finding that one or more representative plaintiffs meets the Rule 23(a)(4) adequacy requirement. *Local Joint Executive Bd.*, 244 F.3d at 1162 n.2. Anderson's status as a Shoshone unit owner does not dislodge the Court's finding that that no fundamental conflict of interest exists among Plaintiffs, including Anderson. Anderson's status as a Shoshone unit owner fails to undermine Anderson's stated commitment to protect the interests of the putative class. (Doc. 89-29 at 2–3.) Even were Anderson inadequately positioned to represent the class, Erharts and Clagett independently would satisfy the adequacy requirement. The Court determines that Plaintiffs have made a sufficient showing to establish the absence of any fundamental conflict of interest.

*Lerwill*, 582 F.2d at 512; *Ellis*, 657 F. 3d at 985. Plaintiffs have satisfied Rule 23(a)(4)'s adequacy requirement. Fed. R. Civ. P. 23(a)(4).

**ii. Adequacy of Plaintiffs' Counsel.**

Federal Rule of Civil Procedure 23(g) mandates that if this Court certifies a class it "must appoint class counsel." Fed. R. Civ. P. 23(g)(1). Boyne also asserts that Plaintiffs' counsel cannot provide adequate class representation. (Doc. 87 at 21–23.) Boyne characterizes Plaintiffs' counsel's representation of the SCHOA in the *Benton* litigation, No. DV-29-2018-54 (Mont. Fifth Judicial District) (*see* Doc. 97-7), as presenting a "positional conflict." (Doc. 87 at 22; Doc. 96 at 23.) Boyne argues that its 25.2% voting interest in the SCHOA and some Shoshone unit owners' opposition to the class action create a conflict of interest and preclude a finding of adequacy. (Doc. 87 at 22.)

The Court finds unpersuasive Boyne's arguments about the adequacy of Plaintiffs' counsel. The *Benton* litigation concerns a dispute between two SCHOA members and certain SCHOA board members and leadership. (Doc. 97-7 at 2.) The Montana state district court for the Fifth District, Madison County, observed in its November 18, 2021 Order that "Boyne's interests often run contrary to the interests of the members of Shoshone." (*Id.* at 12.) The Court finds the mere fact that Plaintiffs' counsel represents the SCHOA in the *Benton* litigation insufficient to establish a conflict.

26

Benjamin Alke and Jeffrey Tierney, counsel for Plaintiffs, have submitted sworn declarations attesting to their professional qualifications, the qualifications and resources of their respective law firms, and their efforts to "diligently and vigorously prosecute[]" this action. (Doc. 89-33 at 7; Doc. 89-34 at 5.) Mr. Alke and Mr. Tierney each represent that their firms "ha[ve] no known conflicts that might prevent" their adequate class representation. (Doc. 89-33 at 7; Doc. 89-34 at 5–6.) The Court determines that counsel for Plaintiffs prove adequate and will fairly represent the interests of the class members. *Byorth*, 333 F.R.D. at 530; *O'Connor*, 2015 WL 5138097, at \*36. The Court will appoint Mr. Alke, Mr. Tierney, Devlan Geddes, John Crist, Haley Ford, and Henry Tesar as class counsel in this matter. Fed. R. Civ. P. 23(g).

## II.    Whether Plaintiffs' Proposed Class Satisfies the Requirements of Rule 23(b).

The Court next must analyze whether the proposed class would satisfy the separate requirements of Rule 23(b)(1), Rule 23(b)(2), and Rule 23(b)(3).

### A.    Certification Under Rule 23(b)(1)

Rule 23(b)(1) authorizes class actions to proceed where prosecuting individual actions by class members would meet the following creteria: (A) create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that would be dispositive of the interests of the

27

other members not parties to the individual adjudications. Fed. R. Civ. P. 23(b)(1).

Plaintiffs argue that the following questions regarding Boyne's legal obligations require class-based resolution and would prove impossible or unworkable to resolve through individual actions: (1) whether Boyne acts as the leasing agent and property manager for unit owners; (2) whether Boyne properly manages a trust account for unit owners; (3) whether Boyne's practices of depositing rental receipts into a general fund rather than a trust fund breaches its fiduciary duty; (4) whether Boyne's practice of "giving away" unit owners' rooms at a discount rate breaches its fiduciary duty; (5) whether Boyne's alleged breach of Montana law regarding trust accounts constitutes constructive fraud; and (6) whether Boyne's failure to affirmatively disclose the amounts Boyne deducted qualifies as constructive fraud. (Doc. 89 at 30.)

Boyne does not address Rule 23(b)(1) in its class certification denial briefing. (Doc. 87.) The Court declines to certify the class under Rule 23(b)(1) in light of its determination that certification under Rule 23(b)(2) and (3) proves appropriate. Fed. R. Civ. P. 23(b).

### B.   Certification Under Rule 23(b)(2).

Federal Rule of Civil Procedure 23(b)(2) applies when the opposing party either has acted or refused to act on grounds that apply to the entire class, such that injunctive relief or declaratory relief proves appropriate for the whole class. Fed.

R. Civ. P. 23(b)(2). "These requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 687–88 (internal citation omitted.) A Rule 23(b)(2) class does not permit members to opt out and does not require a district court to afford potential members notice of the action. *Dukes*, 564 U.S. at 362.

Plaintiffs assert that they have met the requirements for class certification pursuant to Rule 23(b)(2) on the basis that they seek declaratory relief regarding the terms of Boyne's Standard Agreement and the Declarations of the Condo-Hotels. (Doc. 89 at 38.) Plaintiffs seek a declaratory judgment from the Court that the Standard Agreement proves illegal and unenforceable, in part, because it violates Montana law with respect to the handling of trust funds. (*Id.*) Plaintiffs also seek a declaratory judgment that the requirement that unit owners must use Boyne as their rental manager if they choose to rent their units is illegal and unenforceable. (*Id.*) Plaintiffs additionally request interpretation of the Standard Agreement that will provide uniform, class-wide relief without any individualized inquiries. (*Id.*)

Boyne argues that Rule 23(b)(2) relief proves inappropriate because Plaintiffs seek relief that necessarily would harm some putative class members. (Doc. 87 at 34.) Boyne emphasizes that Rule 23(b)(2) does not afford class

members a chance to opt out. (*Id.*) *Boyne* relies upon *Mayfield v. Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997), to argue against certification under Rule 23(b)(2). (Doc. 96 at 34.) *Mayfield* proves distinguishable. Putative class members in *Mayfield* sought certification pursuant to Rule 23(b)(2) for an injunction against enforcement of Department of Defense policies relating to a DNA repository for all armed servicemembers. *Id.* at 1424. The Ninth Circuit concluded that the representative class members' separation from active-duty military service rendered the case moot. *Id.* at 1425. The Ninth Circuit additionally determined that the representative class members interests presented a conflict of interest with the "antithetical" interests of absent class members and who "wished the policies fully enforced" within the context of a program with an unchallenged, lawful purpose. *Id.* at 1425, 1427. The Court already has considered and rejected Boyne's conflict-of-interest arguments in the Rule 23(a) adequacy analysis, above.

Plaintiffs "seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 687–88 (internal citation omitted). Boyne cannot use the opposition of some putative class members to prevent a judicial determination regarding the lawfulness of its rental management program and practices. *Smith*, 2008 WL 4156364 at *21. Declaratory judgment regarding the legality of Boyne's challenged policies and practices must apply across the class as a whole.

Should the Court ultimately determine that any of Boyne's challenged policies or practices proves illegal, such judgment would prove meaningless unless applied to Boyne without exception for putative class members who would prefer to opt out. *See Avilez v. Pinkerton Gov. Servs*, 286 F.R.D. 450, 458–59 (C.D. Cal. 2012), *vacated on other grounds by* 595 Fed. App'x 579 (9th Cir. 2015); *Smith*, 2008 WL 4156364 at *21. The Court will certify the class for injunctive and declaratory relief pursuant to Rule 23(b)(2). Fed. R. Civ. P. 23(b)(2). Putative class members remain free to opt out from the damages class pursuant to Rule 23(b)(3). Fed. R. Civ. P. 23(b)(3).

### C.   Certification Under Rule 23(b)(3).

Federal Rule of Civil Procedure 23(b)(3) requires a district court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). A Rule 23(b)(3) class would not present a mandatory class. Putative class members may opt out after receiving notice. *Ellis v. Costco Wholesale Corp.*, 657 F. 3d 970, 987 (9th Cir. 2011). Rule 23(b)(3) permits class certification where a class action may not be required, but would be more convenient. *Amchem Products, Inc.*, 521 U.S. at 615. Predominance and superiority allow the rule "to cover cases 'in which a class action would achieve economies of time, effort, and expense," and would "promote . . . uniformity of

decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3) Advisory Committee Note to 1966 amendment)).

### i. Whether Common Questions Predominate.

"A principal purpose behind Rule 23 class actions is to promote efficiency and economy of litigation." *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (internal citation and quotation marks omitted). "The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). Rule 23(b)(3) certification proves inappropriate "[i]f the main issues in a case require the separate adjudication of each class member's individual claim or defense." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

Boyne responds that common questions do not predominate in light of putative class members' individual damages inquiries. (Doc. 87 at 29.) Boyne characterizes the individual damage analysis required for each putative class member as "infinitely complex." (*Id.*) Boyne cites the different locations, views,

and price points offered by specific units, as well as different market demand across units. (*Id.* at 29–30.) Boyne contends that each putative class member would need to prove proximate causation of damages on an individualized basis. (*Id.* at 31.) Boyne additionally argues that no method exists to calculate damages on a class-wide basis. (*Id.* at 31.)

The Court deems Boyne's predominance arguments unpersuasive. Plaintiffs raise common questions regarding the legality of Boyne's overall rental management practices and Program administration for all putative plaintiffs. (Doc. 89 at 31, 34; Doc. 97 at 31–32.) The resolution of Plaintiffs' claims will turn upon analysis of Boyne's largely standardized contractual documents and class-wide administrative and financial records. Plaintiffs' proposed class proves "sufficiently cohesive." *Wang*, 737 F.3d at 545.

The dollar value of each unit owners' potential damages "is invariably an individual question." *Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150, 1155 (9th Cir. 2016) (citing *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1075, 1091 (9th Cir. 2010)). Ninth Circuit precedent proves "well settled" that "the need for individualized findings as to the amount of damages does not defeat class certification." *Vaquero*, 824 F.3d at 1155 (internal citation omitted); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975). The Court agrees with Plaintiffs that the nature of their alleged damages would allow a uniform computation process

rather than separate, individualized inquiries. Individual variations in the ultimate damages figures potentially claimed by putative class members cannot preclude class certification. *Vaquero*, 824 F.3d at 1155.

The Court determines that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Amchem Products*, 521 U.S. at 623. Class certification for the putative class will "promote efficiency and economy of litigation." *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d at 958. Plaintiffs have satisfied Rule 23(b)(3)'s predominance requirement. Fed. R. Civ. P. 23(b)(3).

### ii.  Whether a Class Action Proves Superior to Any Other Alternative.

Rule 23(b)(3) lists four, non-exclusive considerations to aid a court in determining whether the class action form represents the superior option: (1) class members' individual interest in individually controlling the claims in a separate action; (2) the extent of litigation already commenced by or against class members; (3) the desirability or undesirability of concentrating the claims in the forum; and (4) any difficulties managing the class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D).

Boyne argues that a class action would not provide a superior method of adjudicating the case. Boyne repeats its adequacy and commonality arguments about Plaintiffs' alleged fundamental conflict of interest and the necessity of an individualized damages analysis for each putative class member. (Doc. 87 at 32–

33.) Boyne's arguments prove unavailing. Boyne additionally asserts that the ongoing *Benton* state-court litigation tilts the first two Rule 23(b)(3) factors in favor of denying class certification. (Doc. 96 at 32.) *Benton* involves claims brought by Shoshone unit owners against certain SCHOA board members. (*See, e.g.*, Doc. 97-7.) Plaintiffs maintain that the *Benton* litigation remains irrelevant to class certification. (Doc. 102 at 14 n.5.)

*Benton* involves no challenge to Boyne's rental management policies and practices. (*Id.*; Doc. 96 at 32.) The *Benton* litigation proves insufficiently related to Plaintiffs' claims to change the superiority analysis. The Court agrees with Plaintiffs that class members possess little interest in controlling their individual claims due to the complexity of the case and the shared legal and fact questions regarding Boyne's class-wide rental management practices. No other known individual actions have been filed by members of the proposed class. (Doc. 89 at 35.)

The proposed class also proves manageable. Class members and their claims can be identified from Boyne's business records. (Doc. 89 at 35–36.) A class action proves particularly appropriate in light of Plaintiffs' allegations about antitrust elements and allegations of threatened economic retaliation. (*Id.* at 36–37.) To allow the case to proceed as a class action would promote judicial economy, efficiency, and uniformity, without sacrificing procedural fairness. The

Court determines that the Rule 23(b)(3) factors weigh in favor of Plaintiffs. Fed. R. Civ. P. 23(b)(3). A class action proves superior to any other alternative. *Amchem Products, Inc.*, 521 U.S. at 615, 623.

## CONCLUSION

Plaintiffs have satisfied the numerosity, typicality, commonality, and adequacy requirements imposed by Fed. R. Civ. P. 23(a)(1). A class action proves the superior method to resolve Plaintiffs' legal claims in light of their complexity and alleged antitrust elements, the centrality of common contractual documents and Boyne's class-wide rental management practices, and considerations of judicial economy. The Court will certify the class under Rule 23(b)(2) for potential declaratory and injunctive relief and under Rule 23 (b)(3) for potential damages. Fed. R. Civ. P. 23(b)(2)–(3). The Court will grant Plaintiffs' motion to certify the class (Doc. 88) and will deny Boyne's motion to deny class certification (Doc. 86).

Accordingly, **IT IS ORDERED:**

1. Plaintiffs' Motion for Class Certification (Doc. 88) is **GRANTED.**

2. Defendants' Motion to Deny Class Certification (Doc. 86) is **DENIED.**

3. The Court certifies the following class pursuant to Fed. R. Civ. P. 23(b)(2), for potential injunctive and declaratory relief, and 23(b)(3), for potential damages:

All persons and entities, other than Boyne, that:

(i) own or have owned a unit in the Summit, the
Shoshone, or the Village Center; and

(ii) [have] participated in the Boyne rental
management program.

4. Plaintiffs' counsel, Benjamin Alke, Jeffrey Tierney, Devlan Geddes, John

Crist, Haley Ford, and Henry Tesar, are appointed as class counsel.

DATED this 28th day of June, 2023.

_____
Brian Morris, Chief District Judge
United States District Court