# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| LAWRENCE ANDERSON, as trustee for the LAWRENCE T. ANDERSON AND SUZANNE M. ANDERSON JOINT REVOCABLE LIVING TRUST; ROBERT AND NORA ERHART; and TJARDA CLAGETT,<br><br>Plaintiffs,<br><br>v.<br><br>BOYNE USA, INC.; BOYNE PROPERTIES, INC.; and SUMMIT HOTEL, LLC,<br><br>Defendants. | No. CV 21-95-BU-BMM<br><br>ORDER ON MOTION IN LIMINE |

## INTRODUCTION

Defendants Boyne USA, Inc., Boyne Properties, Inc., and Summit Hotel, LLC (collectively "Boyne") move for an *in limine* order from the Court excluding evidence regarding a failed server. (Doc. 106.) Plaintiffs Larry Anderson ("Anderson"), Bob and Nora Erhart ("Erharts"), and Tjarda Claggett ("Claggett") (collectively "Plaintiffs") oppose the motion. (Doc. 112.)

## FACTUAL AND LEGAL BACKGROUND

The Court assumes familiarity with the factual background provided in its previous orders. Boyne owns and operates Big Sky Resort ("Big Sky"), as well as

1

three condominium-hotels at the base of Big Sky known as the Summit, Shoshone, and Village Center (collectively "the Condos"). (Doc. 26 at 2, 5.) Anderson owns a unit in the Shoshone. (*Id.*) Erharts own units in the Summit. (*Id.*) Claggett owns a unit in the Village Center. (*Id.* at 4.)

Boyne marketed the Condos as investments to prospective purchasers and made representations regarding the economic benefits of ownership. (*Id.* at 11.) Unit owners may lease their units exclusively through Boyne. (Doc. 1-1; Doc. 1-2; Doc. 1-3.) Title to the Condos remains subject to certain Declarations. (Doc. 4 at 8.) Boyne drafted the Declarations and allows no amendments without its consent. (Doc. 9 at 12.) Boyne prepared the standard rental-management agreement ("RMA") that unit owners must sign with Boyne if they are not using their unit for personal use. (*Id.*) The RMA requires unit owners to pay Boyne 50 percent of gross rental revenue "after the payment of costs." (*Id.* at 14.)

Boyne charges unit owners several costs, per the RMA, including resort fees, credit card processing fees, and "wholesalers and travel agent commissions." (Doc. 89-6 at 4; Doc. 89-7 at 4.) The RMAs nowhere define these terms. (*See generally* Doc. 89-6; Doc. 89-7.) Boyne also controls the system through which guests of the Condos make their reservations. (Doc. 26 at 11.)

Boyne used a property management system software program called Megasys until April of 2012. (Doc. 107-1 at 2.) Boyne used Megasys to generate documents

summarizing daily sales, including lodging revenue. (*Id.*) Megasys ran on an associated server. (*Id.*) Boyne transitioned from Megasys to a new property management system program called Springer Miller in April and May of 2012. The new Springer Miller property management system operated via a different set of servers from the Megasys server. (*Id.*)

Boyne alleges that it retained the old Megasys server after the transition from Megasys to Springer Miller. (*Id.* at 3.) Boyne maintained the old server in an idle state and attempted to preserve the information on the old server in "non-production status in an archive rack." (*Id.*) The Megasys server began to exhibit symptoms of failure after several years. (*Id.*) Boyne claims that it attempted to move information from the server to a virtual platform through a "physical to virtual conversion process." (*Id.*) The transfer proved unsuccessful. (*Id.*) Boyne retained the Megasys server and continued to run it in an idle state. (*Id.*)

The server failed sometime before May 2019. (*Id.* at 3.) Boyne does not know the exact date of the server's failure. Boyne subsequently decommissioned and disposed of the server. (*Id.*) Boyne does not possess information generated by the Megasys software related to lodging transactions from before April 2012. (*Id.*) Boyne maintains that detailed transaction information related to lodging at Big Sky is limited to data generated after April 2012. (Doc. 107 at 3.)

Plaintiffs allege that their contracts with Boyne violate state and federal law.

3

(Doc. 4 at 6.) Plaintiffs pled their claims as a putative class. (*Id.*) Boyne filed a motion to dismiss on March 25, 2022. (Doc. 3.) The Court granted, in part, and denied, in part, the motion on July 7, 2022, following a motion hearing. (Doc. 15.) Boyne filed a second motion to dismiss on November 17, 2022. (Doc. 27.) The Court denied the motion on February 22, 2023, following a hearing on the motion. (Doc. 64.)

Boyne subsequently sought to terminate Plaintiffs' RMAs, effective February 24, 2023. (Doc. 49-1; Doc. 49-2.) Plaintiffs filed a Motion to Maintain the Status Quo on February 3, 2023. (Doc. 48.) The Court granted, in part, and denied, in part, the motion on February 23, 2023, following a motion hearing. (Doc. 68; Doc. 73.) The Court issued a temporary injunction preventing Boyne from terminating Plaintiffs' RMAs. (Doc. 73 at 16–17.) The Court denied Plaintiffs' requests to enjoin certain communications between Boyne and putative class members. (*Id.*)

Boyne filed a Motion to Deny Class Certification on May 3, 2023. (Doc. 86.) Plaintiffs filed a Motion to Grant Class Certification on May 3, 2023. (Doc. 88.) The Court granted the motion to certify Plaintiffs' proposed class on June 28, 2023. (Doc. 113.) Boyne filed a Motion *in Limine* to exclude certain evidence regarding the failed Megasys server on June 5, 2023. (Doc. 107.) Plaintiffs filed a Response on June 20, 2023. (Doc. 112.) Boyne filed a Reply on July 5, 2023. (Doc. 114.)

## LEGAL STANDARD

Parties may use motions *in limine* to preclude prejudicial or objectionable evidence before it is presented to the jury. The decision on a motion *in limine* is committed to the district court's discretion—including the decision of whether to rule before trial at all. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). A motion *in limine* "should not be used to resolve factual disputes or weigh evidence." *BNSF R.R. v. Quad City Testing Lab., Inc.*, 2010 WL 4337827, at *1 (D. Mont. 2010). Evidence shall be excluded *in limine* only when it is shown that the evidence is inadmissible on all potential grounds. *See, e.g., Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

A court should defer evidentiary rulings until trial unless evidence meets this high standard, so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context. *Quad City Testing Lab.*, 2010 WL 4337827 at *1. "Although rulings on motions *in limine* may save time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Id.* Rulings on motions *in limine* are provisional and a trial court always may change its mind during the course of trial. *Luce v. United States*, 469 U.S. 38, 41 (1984); *see Agan v. BNSF Ry. Co.,* No. CV 19-83-BLG-SPW, 2022 WL 3700052, at *1 (D. Mont. Aug. 26, 2022).

**DISCUSSION**

Boyne urges the Court to issue an *in limine* order excluding any evidence and arguments related to the failed Megasys server, its contents, and its decommissioning. (Doc. 107 at 3–4.) Boyne argues that evidence relating to the failed server proves irrelevant under Rule 402 and unduly prejudicial under Rule 403. Fed. R. Evid. 402, 403. (*Id.* at 4–5.) Plaintiffs contend that Boyne's request proves improper for the following reasons: (1) that Boyne's server failure amounts to a violation of Montana administrative law; (2) that Boyne has provided false and misleading discovery responses in an attempt to conceal its destruction of the server; (3) that evidence of the failed server proves relevant to Plaintiffs' damages, Boyne's liability, and Boyne's statute of limitations defense; and (4) that evidence of the failed server would not cause Boyne undue prejudice. (Doc. 112 at 3–5, 9, 11, 13, 17.) The Court first will consider whether evidence of the failed server satisfies Rule 402's relevance requirement. Fed. R. Evid. 402.

I. **Whether Evidence Regarding Boyne's Failed Server Proves Relevant.**

Only relevant evidence proves admissible. Fed. R. Evid. 402. The Federal Rules of Evidence define relevant evidence as having any tendency to make a fact more or less probable than it would be otherwise, provided that "the fact is of consequence in determining the action." Fed. R. Evid. 401. Boyne contends that evidence of the failed Megasys server possesses no relevance. (Doc. 107 at 5.)

6

Plaintiffs respond that this evidence proves relevant to their claims, their potential damages, and Boyne's potential defenses. (Doc. 112.)

### A. Statute of Limitations.

Statutes of limitations serve "to protect against the prosecution of stale claims." *Rustico v. Intuitive Surgical, Inc.*, 993 F.3d 1085, 1093 (9th Cir. 2021). A court may not award "damages for years beyond the relevant limitations periods." *Zucchella v. Olympusat, Inc.*, 2023 WL 2628107, at *10 (C.D. Cal. Jan. 10, 2023) (internal citation omitted). Boyne argues that the Megasys server contained no information that falls within the applicable limitations period for Plaintiffs' claims. (*Id.*) Plaintiffs filed the action on December 31, 2021. (Doc. 1.) Boyne contends that the longest possible limitations period for any of Plaintiffs' claims is eight years. (Doc. 107 at 5.) Boyne argues that any information from before from December 31, 2013, lacks relevance under Rule 402. (*Id.* at 6.) The Court disagrees.

The Court previously has rejected some of Boyne's statute of limitations arguments in its Orders of July 7, 2022 and February 2, 2023. (Doc. 15; Doc. 64.) The Court has determined that Plaintiffs' claims are not time-barred in light of Boyne's fiduciary duty to unit owners and the applicability of the continuing tort doctrine. Boyne's argument would fail, moreover, even if the Court were to accept that no evidence on the Megasys server fell within the applicable limitations period.

"[E]ven if the statute of limitations bars liability for conduct outside the

limitations period, evidence of pre-limitations conduct may nonetheless be admissible for other purposes." *Basich v. Patenaude & Felix, APC*, No. C11–04406 EJD (HRL), 2012 WL 2838817, at * 2 (N.D. Cal. July 10, 2012) (internal citation omitted). The Ninth Circuit in *Flores v. City of Westminster* considered a district court's denial of a motion to exclude evidence of events outside the limitations period. 873 F.3d 739, 754 (9th Cir. 2017). *Flores* involved employment discrimination claims by Latinx city police officers against their city and current and former police chiefs. *Id.* at 745. The district court denied the defendants' motion to exclude pre-limitations period evidence. *Id.* at 754. The Ninth Circuit affirmed on the basis that evidence of defendants' acts proved relevant to the plaintiffs' claims that they suffered discrimination under a departmental custom or policy. *Id.*

Plaintiffs' claims, as with those leveled by the plaintiffs in *Flores*, concern an alleged pattern or practice of defendants' conduct rather than discrete acts or omissions. (Doc. 112 at 13–14.) The Court concludes that evidence from before December 31, 2013, proves potentially relevant to Plaintiffs' claims that Boyne's long-standing rental management practices violate their rights. *Basich v. Patenaude & Felix, APC*, 2012 WL 2838817, at * 2; *Flores*, 873 F.3d at 754.

### B. Property Management Record-Keeping Requirements Under Montana Administrative Law.

The parties disagree about the requirements of Montana administrative law with respect to the length of time during which Boyne must maintain records for

8

Condo owners in Boyne's capacity as property manager and agent. Plaintiffs cite a provision of Montana administrative law that requires property managers to keep records until 8 years after the termination of a property management agreement:

> Trust account records, complete files of properties managed (including, but not limited to, the property management agreement, lease or rental agreement, and all transactions concerning the property in which the property manager was involved), and all other related documents *shall be maintained for not less than eight years from the date the property management agreement terminates*.

ARM § 24.210.805(17) (emphasis added). Boyne relies upon a separate provision to argue that Montana administrative law requires it to maintain records for eight years from the date of receipt or transaction rather than from the termination of a property management agreement:

> Trust account records and real estate related documents, including sales contracts, leases and options, agency agreements, closing statements, and all other real estate related documents *shall be maintained for eight years from the latter of the date of receipt or the date the transaction was completed*.

ARM § 24.210.601(1) (emphasis added). ARM § 24.210.805 falls in the "Property Management" subchapter within the "Board of Realty Regulation" chapter of the Department of Labor and Industry ("DLI") administrative regulations. ARM § 24.210.601, by contrast, is housed within the "Brokers and Salespersons" subchapter within the same chapter of the DLI regulations.

Boyne maintains that the two provisions work "in harmony." (Doc. 114 at 9.)

9

Boyne argues that ARM § 24.210.601(1) applies to the general retention period for documents during transactions involving real estate licensees. By contrast, ARM § 24.210.805(17) applies to the retention period for documents after the termination of a property management or other real estate agreement. (*Id.*) Boyne also highlights that no private cause of action exists for Plaintiffs to plead or pursue a claim for a violation of ARM § 24.210.805(17). (Doc. 107 at 9.) Plaintiffs counter that ARM § 24.210.601(1) proves inapplicable to Boyne. (Doc. 112 at 15.) Plaintiffs argue that ARM § 24.210.601(1) applies to real estate brokers and salespeople, but not property management agreements. (*Id.*) Plaintiffs additionally argue that the "more specific provisions" of ARM § 24.210.805(17) "expressly govern[]" property management agreements. (*Id.*)

The Court recognizes Boyne's argument that ARM § 24.210.805(17) authorizes no private cause of action. The Court agrees with Plaintiffs, however, that a violation of the law may provide "evidentiary support" for common-law causes of action. *Mark Ibsen, Inc. v. Caring for Montanans*, 371 P.3d 446, 455 (Mont. 2016). Evidence regarding Boyne's potential violations of Montana administrative law with respect to record-keeping requirements would prove relevant and likely admissible should Plaintiffs prevail on their interpretation of the relationship between ARM § 24.210.805(17) and ARM § 24.210.601(1). *Ibsen*, 371 P.3d at 455.

The Court lacks sufficient evidence in the record, however, regarding the

relationship between the record-keeping requirements contained in ARM § 24.210.805(17) and ARM § 24.210.601(1). The Court cannot, at this time, determine whether Montana administrative law requires Boyne to maintain property management records for Plaintiffs dating back only eight years, or whether it requires Boyne to maintain all property management records until eight years after the termination of a property management agreement. The Court will reserve ruling on the admissibility of evidence or arguments regarding Boyne's alleged violations of Montana administrative law. The Court will order supplemental briefing from the partis regarding the applicable state administrative-law standard for real estate and property management document retention.

## II. Whether Evidence Regarding Boyne's Failed Server Proves Unduly Prejudicial.

Federal Rule of Evidence 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" Fed. R. Evid. 403. A court may exclude evidence under Rule 403 where a party seeks to admit it for no purpose other than to "generally show [the opposing party] in a bad light[.]" *Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1335 (9th Cir. 1985).

### A. Boyne's Megasys Server Failure.

Boyne urges the Court to exclude all evidence regarding the failure of the Megasys server on the basis that it proves unduly prejudicial. (Doc. 107 at 10–12.)

11

The Court agrees with Plaintiffs that such an *in limine* ruling would prove overbroad. Boyne asserts that it had no obligation to preserve the server and its contents. (*Id.* at 11.) Boyne may have had an obligation, however, to preserve this evidence pursuant to ARM § 24.210.805(17.) The Court has not yet determined Boyne's record-keeping obligations under Montana administrative law, as discussed above.

Regardless of any potential violation of Montana administrative law by Boyne, the evidence formerly housed on the Megasys server could have helped prove or disprove Plaintiffs' claims and/or Boyne's defenses about Boyne's long-standing and allegedly illegal rental management practices. The potential probative value of the fact of and basic circumstances surrounding the server's failure is not substantially outweighed by the risk of undue prejudice to Boyne. Fed. R. Evid. 403. The Court determines that Plaintiffs possess valid reasons to admit evidence regarding the server's failure. *Coursen*, 764 F.2d at 1335. The Court will deny Boyne's motion *in limine* to the extent that Boyne seeks to bar Plaintiffs from admitting any evidence of the server's failure. Boyne may seek an appropriate limiting instruction regarding the scope and/or use of such evidence.

### B. Boyne's Alleged Spoliation of Evidence and Obstruction of Discovery Related to the Failed Server.

Boyne urges the Court to exclude evidence or argument that Boyne's Megasys server failure amounts to bad-faith spoliation of evidence. (Doc. 114 at 11.) Boyne cautions that such evidence would cause it to suffer undue prejudice and would

confuse the jury. (*Id.*) Plaintiffs refer to Boyne's "destruction of evidence," "destruction of records," "spoliation of evidence," and "obstruct[ion of] discovery regarding its destruction [of] records." (Doc. 112 at 18–19.) Plaintiffs suggest that they may seek sanctions from the Court regarding Boyne's purported spoliation of evidence. (*Id.* at 3, 19.) Plaintiffs additionally assert that Boyne has obstructed discovery and has provided false discovery responses and deposition testimony regarding the server's failure. (*Id.* at 7.)

Plaintiffs' charges of spoliation lack support in the record. Boyne's Vice President of IT Operations, Dan Hoadley, has proffered sworn evidence that the server "suffered an irrecoverable hardware failure" years after Boyne transitioned to a new software system on different servers. (Doc. 107-1 at 3.) Plaintiffs fail to provide any evidence that the server failure was intentional or occurred in anticipation of litigation. The server failed sometime before May 2019. (Doc. 107 at 3.) Plaintiffs filed this action in December 2021. (Doc. 1.) Plaintiffs fail to demonstrate how the server's failure could represent bad-faith conduct in anticipation of this action.

Plaintiffs' arguments about Boyne's discovery responses similarly lack merit. Boyne produced documents relating to the server's failure in its supplemental discovery responses, dated June 8, 2023. (*See* Doc. 114 at 2–3; Doc. 114-1.) Boyne's discovery responses and deposition testimony do not appear to contain false or

13

obstructive statements. Plaintiffs' allegations are not well-taken at this time. The Court reminds the parties to engage in the discovery process in good faith and to comply with the applicable Federal and Local Rules. Fed. R. Civ. P.; D. Mont. L.R.

The Court agrees with Boyne that allowing Plaintiffs to admit evidence characterizing the failed server as rising to the level of bad-faith spoliation risks unduly prejudicing Boyne. Fed. R. Evid. 403; *Coursen*, 764 F.2d at 1335. The Court will grant Boyne's motion *in limine* to the extent that Plaintiffs may not admit evidence at trial linking the failed server to arguments about bad-faith spoliation of evidence or obstruction of discovery.

## CONCLUSION

Evidence of Boyne's failed Megasys server proves relevant under Rule 402. Fed. R. Evid. 402. Boyne has failed to demonstrate that it would suffer undue prejudice under Rule 403 were Plaintiffs permitted to introduce any evidence or argument regarding the server's failure. Fed. R. Evid. 403. Plaintiffs may refer to the server's failure. Boyne has demonstrated, however, that the introduction of evidence or arguments by Plaintiffs regarding Boyne's supposed spoliation of evidence would carry a substantial risk of causing Boyne undue prejudice. *Id.*

The Court reserves ruling on the admissibility of evidence regarding Boyne's alleged violations of Montana administrative law with respect to property managers' document retention requirements. The parties shall submit supplemental briefing to

the Court regarding the interpretation of and potential tension between ARM § 24.210.805(17) and ARM § 24.210.601(1). The Court will grant, in part, deny, in part, and reserve ruling on, in part, Boyne's Motion *in Limine*. (Doc. 106.)

## ORDER

Accordingly, **IT IS ORDERED:**

1. Boyne's Motion for Class Certification (Doc. 106) is **GRANTED, in part, DENIED, in part, and RESERVED UPON, in part.**

2. Plaintiffs may admit evidence of Boyne's server failure.

3. Plaintiffs may not admit evidence that Boyne's server failure represents an example of destruction or spoliation of evidence or evinces an intent to do so.

4. The Court will reserve ruling on the applicability of ARM § 24.210.805(17) and/or ARM § 24.210.601(1) to Boyne's record-keeping obligations under Montana administrative law.

5. The Court will reserve ruling on the admissibility of evidence or argument by Plaintiffs that Boyne's Megasys server failure violates Montana administrative law.

6. The parties shall submit to the Court supplemental briefing, on or before July 25, 2023, at 5:00 P.M., not to exceed fifteen (15) pages in length, regarding the following issues: (1) the interpretation of and relationship between the record-keeping requirements imposed by Montana administrative law pursuant to ARM §

15

24.210.805(17) and ARM § 24.210.601(1); and (2) the applicability of the provisions to Boyne's record-keeping obligations under Montana administrative law.

7. The parties shall comply with all discovery and disclosure rules as required by the Federal Rules of Civil Procedure and the Local Rules.

DATED this 11th day of July, 2023.

_____

Brian Morris, Chief District Judge
United States District Court