## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| LAWRENCE ANDERSON, as trustee for the LAWRENCE T. ANDERSON AND SUZANNE M. ANDERSON JOINT REVOCABLE LIVING TRUST; ROBERT AND NORA ERHART; and TJARDA CLAGETT,<br><br>Plaintiffs,<br><br>v.<br><br>BOYNE USA, INC.; BOYNE PROPERTIES, INC.; and SUMMIT HOTEL, LLC,<br><br>Defendants. | **No. CV 21-95-BU-BMM**<br><br><br>**ORDER ON MOTIONS TO COMPEL** |

## INTRODUCTION

Plaintiffs Larry Anderson ("Anderson"), Bob and Nora Erhart ("Erharts"), and Tjarda Clagett ("Clagett") (collectively "Plaintiffs") have filed a motion to compel the production of certain documents. (Doc. 133.) Defendants Boyne USA, Inc., Boyne Properties, Inc., and Summit Hotel, LLC (collectively "Boyne") move for an order from the Court to compel the production of other certain documents. (Doc. 140.) Boyne opposes Plaintiffs' motion. (Doc. 146.) Plaintiffs oppose Boyne's motion. (Doc. 163.) The parties represent that they have attempted in good faith to confer with the opposing party before filing their respective motions to compel. The

Court conducted separate telephone conferences on these motions on October 11, 2023, and November 28, 2023. (Docs. 155 and 178.) The Court failed to settle the parties' differences regarding the disputed discovery requests and now issues this Order to resolve the pending motions.

## FACTUAL AND LEGAL BACKGROUND

The Court assumes familiarity with the factual background provided in its previous orders. Boyne owns and operates Big Sky Resort ("Big Sky"), as well as three condominium-hotels at the base of Big Sky known as the Summit, Shoshone, and Village Center (collectively "the Condos"). (Doc. 26 at 2, 5.) Anderson owns a unit in the Shoshone. (*Id.* at 3.) Erharts own units in the Summit. (*Id.*) Clagett owns a unit in the Village Center. (*Id.* at 4.)

Unit owners may lease their units exclusively through Boyne pursuant to the Rental Management Agreement ("RMA") (Doc. 1-1; Doc. 1-2; Doc. 1-3.) Plaintiffs allege that their contracts related to the rental management program with Boyne violate state and federal law. (Doc. 4 at 6; *see e.g.,* Doc. 26 at 22.) Plaintiffs pled their claims as a putative class. (Doc. 26 at 24–25.) The Court certified the following class pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3):

> All persons and entities, other than Boyne, that:
>
> (i) own or have owned a unit in the Summit, the Shoshone, or the Village Center; and
> (ii) [have] participated in the Boyne rental management program.

(Doc. 113 at 36–37.)

## LEGAL STANDARD

The Court possesses broad discretion to manage discovery. *Kelley v. Billings*, No. CV 12-74-BLG-RFC-CSO, 2013 U.S. Dist. LEXIS 50370, at *3 (D. Mont. April 8, 2013) (citing *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012)). A motion to compel may be filed when a party disagrees with the objections raised by the other party and wants to compel more complete answers. *Nei v. Travelers Property Cas. Co. of Am.*, 326 F.R.D. 652, 656 (D. Mont. 2018). The Court can compel the production of evidence within the limits of Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 26(b)(1) permits discovery of any nonprivileged matter that will be relevant to any party's claim or defense and is proportional to the needs of the case. Evidence need not be admissible to be relevant, and thus discoverable. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

"Once a party establishes that a discovery request seeks relevant information, '[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'" *Schulz v. Mt. West Farm Bureau Mut. Ins. Co.*, No. CV 20-88-M-DLC, 2021 U.S. Dist. LEXIS 18944, at *5 (D. Mont. Feb. 1, 2021) (quoting *Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 559–60 (S.D. Cal. 2019)). The movant must have conferred or attempted to confer in good faith with the party failing to respond

to the discovery requests prior to filing a motion to compel. Fed. R. Civ. P. 37(a)(1).

**DISCUSSION**

The Court first will address Plaintiffs' motion to compel. (Doc. 133.) The Court will address separately Boyne's motion to compel. (Doc. 140.)

### I. Plaintiffs' Motion to Compel.

Plaintiffs seek an order compelling Boyne to respond to the following discovery requests:

- Interrogatory No. 14;
- Request for Production No. 21;
- Request for Production No. 76;
- Request for Production No. 77;
- Request for Production No. 78;
- Request for Production No. 52;
- Request for Production No. 66; and
- Request for Production No. 53.

(Doc. 133 at 2.) Plaintiffs request that the order compel Boyne to either produce all responsive information and documents or respond unequivocally that such information or documents do not exist. (*Id.*) Plaintiffs further demand that Boyne identify all financial institutions and accounts, produce complete trust accounting records, and produce complete and unredacted tax returns and financial statements for all relevant subsidiaries and affiliated entities. (*Id.*) Boyne contends that the requested discovery proves overly burdensome, irrelevant, and disproportional to the needs of the case. (Doc. 146 at 6; Doc. 134-1 at 32, 38; Doc. 134-2 at 4–7; Doc. 134-3 at 2–5; Doc. 134-6 at 2–6.)

4

### A. Interrogatory No. 14.

Plaintiffs' Interrogatory No. 14 asks Boyne to identify "by institution and account number" the "Agent's" account into which "rental receipts" are placed pursuant to the RMA between the parties. (Doc. 134-1 at 32.) Boyne objects. Boyne contends that the objects sought by the interrogatory are not "proportional to the needs of this case and seeking information not relevant to the claims asserted (outside the scope of discovery)." (*Id.*) Boyne further argues that the interrogatory seeks information "unrelated to the claims and defenses in this case." (*Id.*)

A court must construe relevance to encompass any matter that relates to a party's claim or defense. *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020). Information proves relevant to an action "[i]f the information sought might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement." *Moe v. Sys. Transp., Inc.*, 270 F.R.D. 613, 618 (D. Mont. 2010) (internal quotations omitted). The RMA provides that "Agent [Boyne] is expressly authorized to deposit rental receipts from Owner's unit with receipts collected from other Units managed by Agent in Agent's general corporate account." (Doc. 134 at 5; Doc. 1-3 at 3.) Plaintiffs allege that Boyne has been depositing money into its general corporate account for property management that Montana law requires to be deposited into a trust account. (Doc. 134 at 4.) Plaintiffs also allege that Boyne has breached its fiduciary duty to the unit owners. (Doc. 26 at 17–18.) Interrogatory No.

5

14 seeks information potentially relevant to these claims.

The Court next must assess whether Interrogatory No. 14 seeks information proportional to the needs of the case. The Court looks at the following factors to determine whether a discovery request proves proportional to the needs of the case:

> (1)    the importance of the issues at stake in the action;
> (2)    the amount in controversy;
> (3)     the parties' relative access to relevant information;
> (4)    the parties' resources;
> (5)    the importance of the discovery in resolving the issues; and
> (6)    whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Plaintiffs' claims involve a class action against an entity that Plaintiffs allege engages in property management activities in violation of federal and state law. The issues at stake in the action prove important. The amount in controversy also proves significant. Plaintiffs allege more than $5 million in damages. (Doc. 26, ¶ 13; Doc. 134 at 7.) Both parties have significant resources. Plaintiffs lack access to Boyne's financial records or accounting information, and the discovery sought proves important to resolving issues in the case. The account information can lead directly to relevant information, including evidence of potential breaches of fiduciary duty in Boyne's management of Plaintiffs' rental funds. The burden of the proposed discovery proves minimal. Interrogatory No. 14 requests that Boyne only disclose the name of the institution that keeps its corporate account and the account number

for that account. The Court will order Boyne to respond to Interrogatory No. 14 and disclose the name of the institution that maintains its corporate account and the account number. The information provided by Boyne in response to Interrogatory No. 14 shall remain subject to the protective order previously entered by the Court. (Doc. 31.)

### B. Requests for Production of Accounting Records.

Plaintiffs next seek production of accounting records for each plaintiff and class member.

### 1. Requests for Production No. 21, 76, 77, and 78.

Request for Production No. 21 seeks production of "the full accounting records" for each named plaintiff "on all transactions affecting their units." (Doc. 134-1 at 16.) Request for Production No. 76 seeks the same information for all class members. (Doc. 134-2 at 4.) Requests for Production No. 77 and No. 78 seek production of trust account records, including the information required by A.R.M. § 24.210.805(13) and the chronological record required by A.R.M. § 24.210.805(15). (*Id.* at 5–6.) Boyne generated an Excel spreadsheet from its point-of-sale data in response to these requests. (Doc. 146 at 23–26; Doc. 146-1.)

Plaintiffs report that they likely can determine the amounts that Boyne claims that it charged for resort, breakfast, and other fees. (Doc. 134 at 9–10.) Plaintiffs argue that this spreadsheet does not allow them to verify, however, whether the

amount Boyne claims to have charged for these items matches what Boyne actually

charged for these items. (*Id.* at 10.) The amount that Boyne actually charged for

these items falls at the center of this dispute.

Plaintiffs further contend that Boyne's disclosure of the POS data improperly

puts the burden on Plaintiffs to sort through the transactions to compile a record for

each unit owner. The Court agrees. Montana law requires all property managers to

keep at the property management office a record of all funds received and disbursed

in the following manner:

> (a) proof of deposit showing the date of deposit or electronic transfer, amount, source of money, and where deposited;
> (b) monthly bank statements are to be retained and kept on file;
> (c) disbursement of trust funds shall be made by either check or electronic transfer. If checks are used, trust account checks must be numbered and all voided checks recorded. The checks must denote the property manager's business name, address, and must be designated as "trust account;"
> (d) a record which shows the chronological sequence in which funds are received and disbursed;
> > (i) for funds received, the record must include the date the funds are deposited, the name of the party who is giving the money, the name of the principal, and the amount;
> > (ii) for disbursements, the record must include the date the funds are disbursed, the name of the payee, the name of the principal, and the amount;
> > (iii) no disbursement from the trust account shall be made until the deposit has been verified;
> > (iv) a running balance must be shown after each entry.

A.R.M. § 24.210.805(13). Montana law further requires that a property manager

keep a chronological record "for each property owner showing all income, expenses,

and disbursements." A.R.M. § 24.210.805(15). "The record entries must clearly identify the parties to a transaction, the date, and the amounts received." *Id.* The record must show "the date, the payee, and the amount" when disbursing funds. *Id.* Finally, the record must show a "running balance" after each entry. *Id.*

The spreadsheets produced by Boyne fail to provide any information on disbursements to the unit owners or a running balance. Boyne argues that the spreadsheet data, when coupled with the monthly statements, contains the information required by Montana law. (Doc. 146 at 24.) The monthly statements fail to include any information on the parties to a transaction, from whom Boyne received the funds, where Boyne deposited the funds, or the payee of the disbursement checks. Boyne has produced thousands of pages of documents through which a person must sift to locate the transactions related to a unit. The person must then compare those transactions to the monthly statements and perform calculations on those transactions to try to trace the rental income from the consumer to Boyne to the property owner. The records produced prove insufficient on their own and requiring Plaintiffs to construct their own records based on a conglomeration of the documents proves inconsistent with Montana law placing the burden on property managers to keep full accounting records. A.R.M. § 24.210.805(13).

The Court directs Boyne to disclose the accounting records for Plaintiffs and every class member to the extent that such records exist. To the extent that such

records do not exist, the Court directs Boyne to answer affirmatively and unequivocally that the excel spreadsheet and monthly statements represent the only accounting and transaction records that Boyne possesses for the named plaintiffs or the class members.

### C. Requests for Financial Statements.

Plaintiffs next seek to discover financial information related to Boyne's management program.

#### 1. Request for Production No. 52 and 66.

Request for Production No. 52 asks that Boyne "produce [] any financial statements which show the amount earned by Boyne through the Rental Management Program from 2006 to the present." (Doc. 134-5 at 2.) Boyne objected to the request as being "overly broad, unduly burdensome, not proportional to the needs of the case, and seeking documents not relevant to the claims asserted (outside the scope of discovery)." (*Id.* at 2.) Request for Production No. 66 asks that Boyne "provide copies of all documents that show the amount of revenue earned by Boyne through the rental management program." (Doc. 134-6 at 2.) Boyne initially responded that it did not possess financial documents that distinguished the amount earned by the rental management program and objected to the request as unduly burdensome. (*Id.*) Boyne supplemented its response and produced profit and loss statements for lodging operations at Big Sky Resort from 2006 to 2023. (Doc. 134-

5 at 2–3; Doc. 134-6 at 2–4; Doc. 147-1.) Boyne also produced profit and loss statements for all of Big Sky Resort's operations. (Doc. 134-5 at 2–3; Doc. 134-6 at 2–4; Doc. 147-2.) Boyne further referenced the point-of-sale data produced as showing all revenue earned from each of the named Plaintiffs' units since 2012. (Doc. 134-5 at 2; Doc. 134-6 at 2.)

The Court first addresses Boyne's objection that the requests for production prove disproportional to the needs of the case and seek irrelevant documents. Plaintiffs seek disgorgement of Boyne's profits from the RMA program with the unjust enrichment claim. (Doc. 26, ¶ 130.) Plaintiffs further allege that Boyne charged rates beyond what the RMA authorized and retained those profits. (*Id.*, ¶ 120.) These claims, combined with the Court's decision to certify the class, render the amounts earned by Boyne through the rental management program relevant to Plaintiffs' claims.

The discovery requested would not be unduly burdensome or overly broad. It relates directly to Boyne's operation of the rental management program. The time frame includes 17 years, but the class extends to all those who owned the condos. Some class members may have owned condos dating back to the late 1990s. Plaintiffs' request for this information dating back to 2006 proves more limited. Financial information concerning how much Boyne has earned from the rental management program directly relates to these claims. Requests for Production No.

52 and 66 are not disproportional to the needs of the case, unduly burdensome, or overly broad. Requests for Production No. 52 and 66 seek relevant and discoverable information. Boyne must respond to these requests.

The Court now addresses Plaintiffs' contention that they are entitled to all audited financial statements. (Doc. 134 at 14–15.) Plaintiffs argue that "[w]hether or not [the financial statements] disclose the amounts Boyne received through the [rental management] program," Plaintiffs are entitled to the statements because the statement prove probative of Boyne's net worth for punitive damages purposes. (Doc. 134 at 15.) *Plaintiffs confuse relevancy and responsiveness*. Audited financial statements may be probative of Boyne's net worth for punitive damages purposes, thereby rendering them relevant and discoverable.

Requests for Production No. 52 and 66 seek financial statements that "show the amount earned by Boyne *through the Rental Management Program* from 2006 to the present" and documents that "show the amount of revenue earned by Boyne *through the rental management program*." (Emphasis added). These requests for production only require Boyne to produce financial documents that show revenue earned through the rental management program. Accordingly, the Court rejects Plaintiffs' motion to compel the production of financial documents beyond those that show the amount of revenue earned by Boyne through the rental management program from 2006 to the present.

Finally, Plaintiffs assert that Boyne must produce audited financial statements and contest Boyne's assertion that the statements produced represent "audited" statements. (Doc. 165 at 11–12.) Boyne must produce any "audited" financial statements that it has in its possession that show the amount of revenue earned by Boyne through the rental management program, or alternatively verify that the statements already produced are audited statements. The information provided by Boyne in response to Requests for Production No. 52 and 66 shall remain subject to the protective order previously entered by the Court. (Doc. 31.)

### D. Request for Tax Returns.

Plaintiffs' Request for Production No. 53 asks Boyne to "produce complete copies of your federal and state tax returns [ ] for the years 2016 to the present." (Doc. 134-1 at 38.) Boyne objects to the request as unduly burdensome, and not proportional to the needs of this case. (*Id.*) Boyne declined to produce any tax returns. Boyne argues that any alleged damages before class certification would be limited to economic damages, thus, the request would not be reasonably calculated to lead the discovery of admissible evidence. Boyne provided "a heavily redacted" copy of a tax return from one year.

"[T]ax returns and related documents 'do not enjoy an absolute privilege from discovery.'" *Kelley*, 2013 U.S. Dist. LEXIS 50370, at *15 (quoting *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975)). The Court

13

employs a two-prong test to balance the need for broad discovery and the preference for confidentiality in tax returns. The Court first "must find that the returns are relevant to the subject matter of the action." *Kelley*, 2013 U.S. Dist. LEXIS 50370, at *16. The Court then "must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." *Id.*

The Court first addresses Boyne's objections that the requested production proves unduly burdensome and disproportional to the needs of the case. Boyne's claim that Request for Production No. 53 would be unduly burdensome lacks merit. The production of seven years of tax returns requires little effort or expense. Boyne's claim that Request for Production No. 53 proves disproportional also lacks merit. This action involves a class action suit against an entity engaging in property management activities allegedly in violation of federal and state law. The issues at stake in the action prove important. The amount in controversy also proves significant. Plaintiffs allege more than $5 million in damages. (Doc. 26, ¶ 13; Doc. 134 at 7.) Both parties have significant resources. Plaintiffs lack access to Boyne's tax returns, and the burden of the proposed discovery proves minimal. Further, Boyne's financial condition falls at the center of this dispute given Plaintiffs' claims for unjust enrichment and punitive damages. The requested production of tax returns is not disproportional to the needs of the case.

Boyne's tax returns prove relevant. "Where a claim for punitive damages is

made[] [ ] a party's financial status is relevant to the subject matter of the action and thus a proper subject of pretrial discovery." *Corporate Air v. Edwards Jet Ctr. Mont. Inc.*, 190 P.3d 1111, 1125 (Mont. 2008); *see also Guinnane v. Dobbins*, 2020 U.S. Dist. LEXIS 145979, at *4 (D. Mont. Aug. 13, 2020) (quoting *Baker v. CNA Ins. Co.*, 123 F.R.D. 322, 330 (D. Mont. 1988)). Plaintiffs' claims for punitive damages and unjust enrichment put Boyne's financial status at issue in this case, thereby rendering Boyne's tax returns relevant and a proper subject of discovery.

A compelling need also exists for disclosure of Boyne's tax returns, as the information regarding Boyne's financial condition contained therein is not otherwise readily attainable. The Court further finds that the protective order already entered in this matter provides adequate protection against public disclosure and other privacy concerns presented with tax returns. The Court orders Boyne to produce its tax records in accordance with Request for Production No. 53. The information provided by Boyne in response to Request for Production No. 53 shall remain subject to the protective order previously entered by the Court. (Doc. 31.)

**II. Boyne's Motion to Compel.**

Boyne seeks an order compelling Plaintiffs to respond to the following discovery requests:

- Interrogatory No. 11;
- Request for Production No. 23;
- Request for Production No. 37 (Anderson);
- Request for Production No. 33 (Clagett and Erharts);

- Interrogatory No. 14;
- Request for Production No. 29 (Anderson);
- Request for Production No. 31 (Clagett and Erharts);
- Privilege log;
- Interrogatory No. 5;
- Interrogatory No. 6;
- Request for Production No. 12;
- Request for Production No. 13;
- Request for Production No. 14; and
- Request for Production No. 15.

(Doc. 140 at 2–3.) Boyne argues that Plaintiffs provided deficient responses to these requests and have refused to remedy the responses. (Doc. 142 at 6.) Plaintiffs contend that many of the discovery requests seek irrelevant information and "violate[] well established limitations on discovery." (Doc. 163 at 8.)

## A. Interrogatory No. 11 and Request for Production No. 23

Boyne's Interrogatory No. 11 asks that Plaintiffs "identify each category of damage sought, the amount for each category, and how each amount was calculated." (Doc. 141-1 at 23.) Plaintiffs respond by explaining the following categories of damages in this case:

(1) Amounts charged in excess of the 50% of the gross rental revenue for their units, including any amounts not shared with Plaintiff for forfeited deposits, revenue earned by Boyne through group sales or package deals, and the value of comp nights.
(2) The difference between amounts charged by Boyne and the fair market rate of the services provided by Boyne.
(3) Disgorgement of monies received by Boyne as a result of the arrangement it created.

(*Id.* at 23–24.) Plaintiffs argue that they presently lack the documents and

16

information needed to provide an accurate computation of their damages. (Doc. 163 at 15–16.) Request for Production No. 23 seeks to discover "all documents that relate to, contain information about, or support" Plaintiffs' response to Interrogatory No. 11. (Doc. 141-1 at 25.) Plaintiffs again responded that they lacked the requisite documents and information to fully calculate damages. (*Id.*)

Boyne cites *Dallas v. Travelers Home & Marine Ins. Co.* to supports its argument that Plaintiffs must provide answers to interrogatories seeking detailed damages calculations. (Doc. 141 at 12–13 (citing *Dallas*, No. CV 20-48-M-DLC, 2021 U.S. Dist. LEXIS 4896, at *2–4 (D. Mont. Jan. 11, 2021).) *Dallas* proves distinguishable. The defendant in *Dallas*, like Boyne, moved to compel answers to interrogatories seeking an itemization of the plaintiff's damages. *Dallas*, 2021 U.S. Dist. LEXIS 4896, at *9. The plaintiff in *Dallas* contested, however, that defendants were entitled to discover specific amounts of damages. *Id.* at *9. Moreover, the district court decided that motion to compel after the deadline for damages experts had passed. *Id.* at *3.

Plaintiffs have not refused to provide a breakdown of damages calculations. In fact, Plaintiffs appear to have provided an explanation of the method by which they plan to calculate damages and some rough estimates for some of the damages categories. (Doc. 163-6 at 3; Doc. 163-4 at 3–6.) Plaintiffs have argued instead that this interrogatory proves premature and that Plaintiffs lack the necessary information

17

to respond to this interrogatory. The scheduling order provides that Plaintiffs need not disclose damages experts until February 28, 2024, and discovery does not close until June 5, 2024. (Doc. 156 at 2.) The Court agrees that the motion to compel responses to Interrogatory No. 11 and Request for Production No. 23 prove premature. Accordingly, the Court denies Boyne's motion to compel responses to Interrogatory No. 11 and Request for Production No. 23. Boyne may reraise these issues closer to the damages expert disclosure deadline if Plaintiffs continue to refuse to provide specific calculations.

### B. Request for Production No. 37 (Anderson) and Request for Production No. 33 (Clagett and Erharts)

Request for Production No. 37 to Plaintiff Anderson asks Plaintiff Anderson to produce his state and federal tax returns, "including all schedules and 'separate forms filed on the tax returns for rental activities' from 2010 to present." (Doc. 141-1 at 57.) Request for Production No. 33 to Plaintiffs Erharts seeks production of "state and federal tax returns, including all schedules from 2004 to present." (Doc. 141-2 at 49.) Request for Production No. 33 to Plaintiff Clagett seeks production of "state and federal tax returns, including all schedules from 2013 to present." (Doc. 141-3 at 61.) Plaintiffs objected to these requests for production on the grounds that their tax returns are not reasonably calculated to lead to the discovery of admissible evidence and that this request is harassing to the putative class representatives. (Doc. 141-3 at 61; Doc. 141-2 at 54; Doc. 141-1 at 57.) Plaintiffs further contend that their

18

tax returns contain no information not readily available from other sources currently in Boyne's possession. Plaintiffs point, for example, to monthly rental income statements generated by Boyne, maintenance expenses, and homeowner's association assessments. (Doc. 141-3 at 61; Doc. 141-2 at 54; Doc. 141-1 at 57.)

"[T]ax returns and related documents 'do not enjoy an absolute privilege from discovery.'" *Kelley*, 2013 U.S. Dist. LEXIS 50370, at *15 (quoting *Premium Serv. Corp.*, 511 F.2d at 229). The Court employs a two-prong test to balance the need for broad discovery and the preference for confidentiality in tax returns. The Court first "must find that the returns are relevant to the subject matter of the action." *Kelley*, 2013 U.S. Dist. LEXIS 50370, at *16. The Court then "must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." *Id.*

Plaintiffs' tax returns prove relevant. Plaintiffs asserted a claim for breach of fiduciary duty based on a theory that the condo units constitute investments and unregistered securities, the management of which subjected Boyne to certain fiduciary obligations. (Doc. 26 at 17.) Plaintiffs also have alleged unjust enrichment and fraud claims that assert that Boyne profited at the expense of Plaintiffs. These claims put Plaintiffs' financial status at issue in this case, thereby rendering Plaintiffs' tax returns relevant and a proper subject of discovery.

A compelling need also exists for disclosure of Plaintiffs' tax returns.

Plaintiffs argue that Boyne can obtain the information elsewhere, including by referencing the monthly statements provided by unit owners. The Court finds that the tax returns include various information, including how Plaintiffs categorize their units, the fair rental days reported, and the return on their investment reported, that is not readily accessible elsewhere. Furthermore, the Court further finds that the protective order entered in this matter provides adequate protection against public disclosure and other privacy concerns presented with tax returns. The Court orders Plaintiff Anderson to produce his tax records in accordance with Request for Production No. 37. The Court orders Plaintiffs Clagett and Erharts to produce their tax records in accordance with Request for Production No. 33. The information provided by Plaintiffs in response to these requests shall remain subject to the protective order previously entered by the Court. (Doc. 31.)

### C. Interrogatory No. 14, Request for Production No. 29 (Anderson), and Request for Production No. 31 (Clagett and Erharts)

Interrogatory No. 14 requests that Plaintiffs disclose whether they "have discussed the allegations of the Complaint with any other unit owner of the Shoshone Condominium Hotel, the Summit Condominium Hotel, or the Lone Peak Center Condominium." (Doc. 141-2 at 28; Doc. 141-1 at 51; Doc. 141-3 at 28.) Boyne further seeks the name of the person, the date of the conversation, and the content of the conversation. (Doc. 141-2 at 28; Doc. 141-1 at 51; Doc. 141-3 at 28.) Request for Production No. 29 to Plaintiff Anderson and Requests for Production No. 31 to

Plaintiffs Clagett and Erharts ask Plaintiffs to produce "all documents that relate to, contain information about, or support" Plaintiffs' response to the discovery request. (Doc. 141-3 at 29; Doc. 141-2 at 44; Doc. 141-1 at 51.)

Plaintiffs initially raised attorney-client privilege and work product objections to the request. (Doc. 141-3 at 48–49; Doc. 141-2 at 44–45; Doc. 141-1 at 51–52.) Plaintiff Anderson supplemented his answers and cited to previously produced documents marked Plaintiffs000219-253, Plaintiffs007891-8188, Plaintiffs008512-8628, Plaintiffs009255-9527, and Plaintiffs009361-10425. (Doc. 141-1 at 51.) Plaintiff Anderson further notes that all privileged documents responsive to this request "have been identified on Plaintiffs' Privilege Log." *Id.* Plaintiffs Clagett and Erharts supplemented and confirmed that they did not possess any non-privileged responsive documents and all privileged documents responsive to the request had been identified in Plaintiffs' privilege log. (Doc. 141-3 at 48–49; Doc. 141-2 at 44–45.) Plaintiffs contend that their answer will remain the same regardless of whether the Court grants this motion because no communications with other class members took place that did not involve counsel. (Doc. 163 at 27–28.)

The Court declines to order Plaintiffs to produce communications with class members covered by attorney-client privilege. Plaintiffs "do not disagree that Boyne is entitled to communications with other class members not involving counsel." (Doc. 163 at 27.) The Court directs Plaintiffs to disclose all communications between

class members that took place without counsel present to the extent that any such communications took place. The Court grants this motion to compel to the extent that Plaintiffs have any information or documents responsive to these requests.

### D. Privilege Log

Boyne contends that the privilege log produced by Plaintiffs proves insufficient. The Court has reviewed Plaintiffs' privilege log. A privilege log must allow the Court or the opposing party to determine the existence of the privilege based on the description of the entries. *See Kephart v. Nat'l Union Fire Ins. Co.*, No. CV-06-97-BLG-CSO, 2007 U.S. Dist. LEXIS 56354, at *5–6 (D. Mont. Aug. 2, 2007). A sufficient privilege log contains "a description of responsive material withheld, the identity and position of its author, the date it was written, the identity and position of all addresses and recipients, the material's present location, and specific reasons for its being withheld, including the privilege invoked and grounds thereof." *Kephart*, 2007 U.S. Dist. LEXIS 56354, at *5 (internal quotations omitted). "The subject matter and author of each exhibit is critical in determining whether the attorney-client privilege prevents its discovery." *Palmer by Diacon v. Farmers Ins. Exch.*, 861 P.2d 895, 906 (Mont. 1993).

Plaintiffs' privilege log states the parties involved, the date, the type of communication/document, the subject of the communication/document, and the privilege asserted. (Doc. 141-11.) The Court agrees with Boyne that some of the

descriptions appear vague at first glance. For example, the description for Bates No. Plaintiffs000236; 000239-40; 000243; 000249–250 simply states "[e]mail between clients and attorney in anticipation of litigation." (*Id.* at 2.) The remainder of the privilege log allows a reviewing party, however, to discern the privilege. The privilege log identifies the document as an email from the Erharts to Ben Alke (attorney) and cc'ing Lance Wallin. (*Id.*) The privilege log identifies the subject of the email as "2017, 2018, 2019 Unit Revenue calculations." (*Id.*)

The Court deems Plaintiffs' privilege log to be sufficient in that it allows the Court to determine the existences of a privilege based on the description of the type of document/communication, the date, the parties involved, and the subject. *Kephart*, 2007 U.S. Dist. LEXIS 56354, at *5. The Court denies Boyne's motion to compel Plaintiffs to produce a more detailed privilege log. Boyne may raise challenges to specific documents withheld and specific claims of privilege if it has any.

### E. Interrogatory No. 5 and Interrogatory No. 6

Interrogatory No. 5 asks Plaintiffs to describe all facts supporting Plaintiffs' allegation that "rates charged for rental management services at resorts similar to Big Sky – which do not require owners to use the developer as rental manager – charge less than 50%." (Doc. 141-3 at 10; Doc. 141-2 at 10; Doc. 141-1 at 11.) Plaintiffs objected that the interrogatory proved overly broad and unduly

burdensome. (Doc. 141-3 at 10; Doc. 141-2 at 10; Doc. 141-1 at 11.) Plaintiffs further objected that the interrogatory constituted a contention interrogatory.

Interrogatory No. 6 asks Plaintiffs to describe all facts supporting Plaintiffs' allegation that "Boyne . . . made representations to unit owners" that "were untrue." (Doc. 141-3 at 11; Doc. 141-2 at 11; Doc. 141-1 at 12.) Plaintiffs raised the same objections that they raised to Interrogatory No. 5 but provided approximately two pages of allegations that it contended constitute the principal and material allegations supporting its false representation claim. (Doc. 141-3 at 11–13; Doc. 141-2 at 11–13; Doc. 141-1 at 12–14.)

Boyne moves the Court to strike the objections made by Plaintiffs to Interrogatory No. 5 and Interrogatory No. 6. (Doc. 171 at 11.) Boyne further moves the Court to compel Plaintiffs to respond fully to those discovery requests. (*Id.*) Plaintiffs argue that it has provided a sufficient response to Interrogatory No. 5 and Interrogatory No. 6 because it has provided the principal and material facts that support Plaintiffs' allegations. (Doc. 162 at 22 n.2.)

"An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). District courts in the Ninth Circuit have upheld interrogatories that ask for "all facts upon which a particular allegation in the complaint was based." *Caekaert v. Watchtower Bible & Tract Soc'y*, CV 20-52-BLG-SPW, 2023 U.S. Dist. LEXIS

96652, at *11, 14–15 (D. Mont. June 2, 2023). A California district court compelled a response to interrogatories that asked a party "to state all facts upon which a particular, specified allegation in the Complaint is based." *Cable & Computer Tech. v. Lockheed Saunders*, 175 F.R.D. 646, 651 n.3, 652 (C.D. Cal. 1997). A Montana district court similarly compelled responses to an interrogatory that sought "all facts that are relevant to [the plaintiff's] allegations of negligence." *Caekaert*, 2023 U.S. Dist. LEXIS 96652, at *11, 14–15.

The Court finds that Boyne adequately confined its interrogatories to specific topics. Interrogatory No. 5 and Interrogatory No. 6 seek facts supporting specific allegations in Plaintiffs' complaint. Interrogatory No. 5 seeks facts specifically relating to Plaintiffs' allegations that Boyne overcharges for rental management services compared to other companies. Interrogatory No. 6 seeks facts specifically relating to Plaintiff's allegations of false representations. The Court strikes Plaintiffs' objections to Interrogatory No. 5 and Interrogatory No. 6 and compels Plaintiffs to respond to the interrogatories to the extent feasible with the discovery that has been completed and with the obligation to supplement as additional discovery occurs. *See Caekaert*, 2023 U.S. Dist. LEXIS 96652, at *17.

### F. Requests for Production No. 12, 13, 14, and 15

Request for Production No. 12 asks Plaintiffs to produce all documents that "relate to, contain information about, or support" Plaintiffs' response to

Interrogatory No. 5. (Doc. 141-3 at 11; Doc. 141-2 at 11; Doc. 141-1 at 11.) Plaintiffs produced 12 pages of documents in response to this request. (Doc. 141-3 at 11; Doc. 141-2 at 11; Doc. 141-1 at 11.) Requests for Production No. 13, 14, and 15 ask Plaintiffs to produce all documents that "relate to, contain information about, or support" Plaintiffs' response to Interrogatory No. 6, 7, and 8, respectively. (Doc. 141-3 at 13, 15, 17; Doc. 141-2 at 13, 15, 17; Doc. 141-1 at 14, 17, 18.) Plaintiffs produced 7,889 pages of documents in response to these requests. (Doc. 141-3 at 13, 15, 17; Doc. 141-2 at 13, 15, 17; Doc. 141-1 at 14, 17, 18.)

Boyne argues that Plaintiffs' responses to Requests for Production No. 12-15 prove insufficient. Boyne notes that Plaintiffs' response to Request for Production No. 12 contains only Plaintiff Andersons's closing instructions, settlement statement, and warranty deed from the purchase of his unit. (Doc. 141 at 29.) Boyne further notes that the responses to Requests for Production No. 13-15 contain 7,889 pages that constitute nearly all of Plaintiffs' initial production. (*Id.* at 31.) Plaintiffs respond that Requests for Production No. 12-15 constitute impermissible contention-based requests for production and seek the mental impressions of Plaintiffs' attorneys as to what documents prove relevant to what claims. (Doc. 163 at 19–21.)

Plaintiffs failed to raise any objection to Requests for Production No. 12-15 at the time that Plaintiffs answered the discovery. "[T]he Ninth Circuit recognizes

'that a failure to object to discovery requests within the time frame required constitutes a waiver of any objection.'" *Garner v. USAA Gen. Indem. Co.*, No. CV 19-59-M-KLD, 2020 U.S. Dist. LEXIS 55215, at *12 (D. Mont. March 30, 2020) (quoting *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992)). Plaintiffs' failure to object to Boyne's requests constitutes a waiver of any objections.

The Court further finds that Boyne's Requests for Production No. 12-15 prove proper. A request for production "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1). Request for Production No. 12 asks for all documents that Plaintiff possesses that relate to Plaintiffs' allegations that Boyne overcharges for rental management services compared to other companies. Requests for Production No. 13 and No. 14 seek documents specifically relating to Plaintiffs' assertion that Boyne made false representations. Request for Production No. 15 seek documents specifically related to Plaintiffs' assertions of commonality and representativeness for class certification purposes. These requests do not seek "each and every fact" or even "the vast majority of the facts" supporting Plaintiffs' claims. *Compare FTC v. Am. eVoice, Ltd.*, 2017 U.S. Dist. LEXIS 15813, at *19 (D. Mont. Feb. 3, 2017) (citing *Aldapa v. Fowler Packing Co. Inc.*, 310 F.R.D. 583, 591 (E.D. Cal. 2015)). Plaintiff further waived any objections that these requests prove overly broad or unduly burdensome or that

these requests seek privileged information. The Court will compel Plaintiffs to respond with specificity to Boyne's Requests for Production No. 12-15 to the extent feasible with the discovery that has been completed and with the obligation to supplement as additional discovery occurs. *See Caekaert*, 2023 U.S. Dist. LEXIS 96652, at *17.

## CONCLUSION

The Court grants, in part, and denies, in part, Plaintiffs' Motion to Compel (Doc. 133.) The Court grants, in part, and denies, in part, Boyne's Motion to Compel. (Doc. 140.) The Court further reminds the parties that "[t]he courts, sorely pressed by demands to try cases promptly and to rule thoughtfully on potentially case dispositive motions, simply do not have the resources to police closely the operation of the discovery process." *Cable & Computer Tech.*, 175 F.R.D. at 652 (internal quotations omitted). Parties in litigation must "strive to be cooperative, practical and sensible, and should turn to the courts (or take positions that force others to turn to the courts) only in extraordinary situations that implicate truly significant interests." *Id.* Each party shall bear their own fees and costs associated with these motions. The Court cautions that resolution of further discover disputes through formal motions will result in the award of fees and costs to the prevailing party.

## ORDER

Accordingly, **IT IS ORDERED:**

1. Plaintiffs' Motion to Compel (Doc. 133) is **GRANTED, in part, and DENIED**, in part, as follows:

    a. Boyne must respond to Interrogatory No. 14 and disclose the name of the institution that maintains its corporate account and the account number. The information provided by Boyne in response to Interrogatory No. 14 shall remain subject to the protective order previously entered by the Court. (Doc. 31.)

    b. Boyne must disclose the accounting records for Plaintiffs and every class member to the extent that such records exist. To the extent that such records do not exist, the Court directs Boyne to answer affirmatively and unequivocally that the excel spreadsheet and monthly statements represent the only accounting and transaction records that Boyne possesses for the named plaintiffs or the class members.

    c. Boyne must produce any "audited" financial statements that it has in its possession that show the amount of revenue earned by Boyne through the rental management program, or alternatively verify that the statements already produced are audited statements. The

information provided by Boyne in response to Requests for Production No. 52 and 66 shall remain subject to the protective order previously entered by the Court. (Doc. 31.)

    d. Plaintiffs' motion to compel the production of financial documents beyond those that show the amount of revenue earned by Boyne through the rental management program is **DENIED**.

    e. Boyne must produce its tax records in accordance with Request for Production No. 53. The information provided by Boyne in response to Request for Production No. 53 shall remain subject to the protective order previously entered by the Court. (Doc. 31.)

2. Boyne's Motion to Compel (Doc. 140) is **GRANTED, in part, and DENIED**, in part, as follows:

    a. Boyne's motion to compel responses to Interrogatory No. 11 and Request for Production No. 23 is **DENIED**. Boyne may reraise these issues closer to the damages expert disclosure deadline if Plaintiffs continue to refuse to provide specific calculations.

    b. Plaintiff Anderson must produce his tax records in accordance with Request for Production No. 37. Plaintiffs Clagett and Erharts must produce their tax records in accordance with Request for Production No. 33. The information provided by Plaintiffs in response to these

requests shall remain subject to the protective order previously entered by the Court. (Doc. 31.)

c. Plaintiffs must disclose all communications between class members that took place without counsel present to the extent that any such communications took place.

d. Boyne's motion to compel Plaintiffs to produce a more detailed privilege log is **DENIED**. Boyne may raise challenges to specific documents withheld and specific claims of privilege if it has any.

e. The Court strikes Plaintiffs' objections to Interrogatory No. 5 and Interrogatory No. 6. Plaintiffs must respond to Interrogatories No. 5 and 6 to the extent feasible with the discovery that has been completed and with the obligation to supplement as additional discovery occurs.

f. Plaintiffs must respond with specificity to Boyne's Requests for Production No. 12-15 to the extent feasible with the discovery that has been completed and with the obligation to supplement as additional discovery occurs.

DATED this 8th day of December, 2023.

Brian Morris, Chief District Judge
United States District Court