# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| LAWRENCE ANDERSON, as trustee for the LAWRENCE T. ANDERSON AND SUZANNE M. ANDERSON JOINT REVOCABLE LIVING TRUST; ROBERT AND NORA ERHART; and TJARDA CLAGETT,<br><br>Plaintiffs,<br><br>v.<br><br>BOYNE USA, INC.; BOYNE PROPERTIES, INC.; and SUMMIT HOTEL, LLC,<br><br>Defendants. | No. CV 21-95-BU-BMM<br><br>ORDER |

## INTRODUCTION

Defendants Boyne USA, Inc., Boyne Properties, Inc., and Summit Hotel, LLC (collectively "Boyne") have filed a motion for corrective notice and to extend the opt-out period. (Doc. 231.) Plaintiffs Lawrence Anderson, Robert and Nora Erhart, and Tjarda Clagett (collectively "Plaintiffs") oppose the motion. (Doc. 240.)

## FACTUAL BACKGROUND

The Court assumes familiarity with the factual background provided in its previous orders. Boyne owns and operates Big Sky Resort and three condominium-

1

hotels at the base of Big Sky Resort known as the Summit, Shoshone, and Village Center (collectively "the Condos"). (Doc. 26 at 2, 5.) Plaintiffs have brought this class action and asserted claims relating to Boyne's management of their condo units. The Court certified the class on June 28, 2023. (Doc. 113.)

The Court granted, in part, Plaintiffs' motion for approval of a class notice on April 15, 2024. (Doc. 225.) The parties retained the services of a third-party administrator to send out, track, and collect the class notice and opt-out forms. (Doc. 228.) The deadline for opting out of the class currently expires on August 11, 2024. (Doc. 232 at 3.) Boyne has brought a motion asking the Court to send out corrective notices and extend the opt-out deadline. Boyne contends that the Shoshone Condominium Hotel Owner's Association ("SCHOA") sent out a letter on July 8, 2024, that proved improper and likely to confuse and influence potential class members in their decision to participate in the class. (*Id.* at 2.) Plaintiffs argue that the letter was not misleading or confusing, came from a third-party, and is not likely to influence class members in their decision to participate in the class. (Doc. 240 at 35.)

## LEGAL STANDARD

Rule 23(d) grants courts the authority to oversee class actions. Fed. R. Civ. P. 23(d). A court "may issue orders that determine the course of proceedings . . . [or] impose conditions on the representative parties." *Id.* "Because of the potential for

abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). The Court must "exercise this authority in order to prevent abuse of the class action mechanism and prohibit parties from acting in a manner that could undermine the fairness of the proceeding." *Laguna v. Coverall N. Am., Inc.*, No. 09-CV-2131-JM (BGS), 2010 U.S. Dist. LEXIS 150105, at *14 (S.D. Cal. Nov. 30, 2010) (citing *Gulf Oil Co.*, 452 U.S. at 99–100; *Wang v. Chinese Daily News*, 623 F.3d 743, 756 (9th Cir. 2010)). Any orders issued under Fed. R. Civ. P. 23(d) must "be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co.*, 452 U.S. at 101.

## DISCUSSION

Boyne argues that the letter sent by SCHOA confused class members and undermined the Court's attempt at providing neutral and balanced information to potential class members. (Doc. 232 at 2.) Plaintiffs argue that corrective notice proves unwarranted because the SCHOA letter came from a third-party, only some members of the class received the letter, and the letter does not constitute an abusive communication. (Doc. 240 at 30.) Plaintiffs also argue that the SCHOA letter proves unproblematic when placed in the context of Boyne's past communications with potential class members. (*Id.* at 8–11.)

The Court previously admonished the parties that the Court would look with a critical eye at any attempts to modify or influence the potential class during the pendency of this litigation. (Doc. 189 at 25.) The Court recognizes that the actions complained of were committed by a third-party and that no evidence has been produced to suggest that Plaintiffs had any part in the SCHOA letter. The Court reminds the parties, however, that fairness represents a crucial and foremost concern of the Court. The Court will not condone improper communications with potential class members whether those communications are made directly by the parties or made indirectly by third parties with whom the parties have a relationship.

The Court finds that the SCHOA letter poses risk of confusing potential class members. First, the SCHOA letter includes references and discussions of several different lawsuits. The SCHOA letter discusses the class action lawsuit (Doc. 232-1 at 1–3, 5), a similar lawsuit pending against Boyne in Michigan (*Id.* at 3), and a lawsuit between the SCHOA against Boyne. (*Id.* at 5.) The letter clearly indicates that SCHOA is not a party to this class action. (*Id.* at 3.) The Court finds, however, that the discussion of the various lawsuits throughout the letter creates a risk of confusion to the potential class members. The risk that a potential class member without legal training could confuse the claims between the various lawsuits proves great.

The structure of the SCHOA letter also poses a risk of confusion and improper influence. The first half of the SCHOA letter includes a "Q&A" with an attorney. This portion of the letter primarily explains legal terms and presents much of the same information as the Court-approved class notice. The second half of the letter transitions, however, to opinions of the SCHOA board without clearly marking the transition from the "Q&A" session with the attorney. A reasonable class member reading this portion of the letter could misinterpret this portion of the letter as information being provided by SCHOA's legal counsel. This ambiguity creates a risk that a potential class member will give greater weight and deference to the SCHOA board's interpretations and views. The Court cannot ignore the risk of improper influence presented by the potential misinterpretation of the letter.

The content of the SCHOA letter also creates a risk of influencing a potential class member's decision to participate in the lawsuit. The Court agrees with Plaintiffs that the first half of the letter primarily presents the same information as the class notice. The second half of the letter contains several statements, however, that pose risk of improperly influencing a potential class member's decision to participate in the class. For example, the SCHOA letter continually refers to Boyne's "conflicting interests" and "own self-interest" in managing the class member's units. (Doc. 232-1 at 4.) The letter later discusses Boyne's right of first refusal and the impact that Boyne's exercise of the right of first refusal has on owners' property

values. (*Id.*) The letter further characterizes Boyne's conduct as "possibl[y] illegal per the class action" and as damaging to owners' property values. (*Id.* at 5.) The letter closes by stating "[i]f the class action is successful and if Boyne's control of Shoshone governance is properly limited, we believe our property values will have substantial chance for upside appreciation!!" (*Id.*) The Court recognizes that this statement expresses a belief of the SCHOA board. The Court cannot ignore, however, the risk of influence on a potential class member's decision to participate in the class action. A belief that the class action will increase class members' property values, especially if misconstrued as a statement by legal counsel, proves likely to unduly influence an owner's decision to participate in the class action.

Boyne has failed to show that any particular class member was influenced in their decision to participate in the class action. The Court finds, however, that issuing a corrective notice proves prudent and appropriate given the Court's warning about influential class communications, the risk of confusion and influence posed by the SCHOA letter, and the timing of the letter—during the opt-out period. The Court will issue a corrective notice to remedy any confusion or undue influence caused by the SCHOA letter. Plaintiffs' argument that only owners in the Shoshone Condominium Hotel received the SCHOA letter remains well-taken. The Court will issue a corrective notice and extend the opt-out deadline only for those potential

class members who have owned a condominium hotel unit in the Shoshone Condominium Hotel.

## CONCLUSION

The Court grants Boyne's motion to issue a corrective notice and extend the opt-out deadline. The Court will issue a corrective notice only to potential class members who have owned a condominium hotel unit in the Shoshone Condominium Hotel. The Court will extend the opt-out deadline to September 20, 2024, for those potential class members.

## ORDER

Accordingly, **it is ORDERED** that Boyne's motion for corrective notice and to extend the opt-out period (Doc. 231) is **GRANTED**. The Court approves the issuance of a corrective notice to all potential class members who have owned a condominium hotel unit in the Shoshone Condominium Hotel. A copy of the approved notice is attached hereto. A copy of the Court-approved class notice and opt-out form shall be attached to the corrective notice.

DATED this 13th day of August, 2024.

_____
Brian Morris, Chief District Judge
United States District Court

## CLASS ACTION LAWSUIT NOTICE

As an owner of a condominium hotel unit in the Shoshone Condominium Hotel in Big Sky, Montana, you may have received notice of a class action in which you have been identified as a potential class member. The lawsuit is *Lawrence Anderson, et al. vs. Boyne USA, Inc., et al.* (Cause No. 2:21-cv-00095-BMM) and is pending in the United States Federal Court for the District of Montana, Butte Division. The lawsuit alleges that Boyne USA, Inc. ("Boyne") developed condominium hotels at the base of Big Sky Resort and illegally required unit owners in those condominiums to participate in a rental management program operated by Boyne to rent their units.

You may have received a letter dated July 8, 2024, from the Shoshone Condominium Hotel Owner's Association describing the lawsuit. The letter represents an opinion of the Shoshone Condominium Hotel Owner's Association. The letter should not be construed as legal advice. You should not decide whether to participate in the class action based on the content of that letter. You should decide independently whether you wish to participate in this lawsuit as a class member and whether you wish to have the attorneys for the Plaintiff class, another attorney, or no attorney represent you. You should refer to the class notice that you previously received and that has been attached hereto for information on the class action. You should not consider this Notice or the prior notice from the Court as an expression of any opinion by the Court as to the merits of the claims or defenses asserted by either party.

The Court has extended the deadline for opting out of the class action lawsuit to September 20, 2024, for potential class members who have owned a condominium hotel unit in the Shoshone Condominium Hotel. If you do not wish to be a class member in this case, you may exclude yourself by completing the Opt-Out Form included with this Notice and returning it as described in the Notice of Class Action Lawsuit form so that it is emailed or postmarked by September 20, 2024.

If you wish to be a class member in this case, you do not have to do anything. Your attorneys, at your expense, may file an appearance with the Clerk of Court if you desire, but that action is not required. Otherwise, you will be represented by the attorneys for the Plaintiff class.