## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| LAWRENCE ANDERSON, as trustee for the LAWRENCE T. ANDERSON AND SUZANNE M. ANDERSON JOINT REVOCABLE LIVING TRUST; ROBERT AND NORA ERHART; and TJARDA CLAGETT,<br><br>Plaintiffs,<br><br>v.<br><br>BOYNE USA, INC.; BOYNE PROPERTIES, INC.; and SUMMIT HOTEL, LLC,<br><br>Defendants. | No. CV 21-95-BU-BMM<br><br><br>ORDER |

## INTRODUCTION

The Court addresses seven outstanding summary judgment motions. Plaintiffs Lawrence Anderson, Robert and Nora Erhart, and Tjarda Clagett (collectively "Plaintiffs") filed a motion for partial summary judgment on Rule 23(b)(2) claims for declaratory and injunctive relief regarding the existence, scope, and breach of fiduciary duty between the parties. (Doc. 264.) Defendants Boyne USA, Inc., Boyne Properties, Inc., and Summit Hotel, LLC (collectively "Boyne") oppose the motion.

1

(Doc. 293.) Plaintiffs filed a motion for partial summary judgment on Rule 23(b)(2) claims for declaratory and injunctive relief regarding unregistered securities and unconscionability claims. (Doc. 262.) Boyne opposes the motion. (Doc. 292.)

Boyne filed three motions for partial summary judgment on Plaintiffs' declaratory judgment regarding unregistered securities and unconscionability claims, respectively. (Doc. 322; Doc. 324; Doc. 326.) Plaintiffs oppose those motions. (Doc. 365.) Boyne filed a motion for summary judgment on Plaintiffs' fiduciary duty and unjust enrichment claims. (Doc. 317.) Plaintiffs oppose the motion. (Doc. 364.) Boyne filed a motion for summary judgment on Plaintiffs' fiduciary duty and constructive fraud claims, and to limit Plaintiffs' damages. (Doc. 328.) Plaintiffs oppose the motion. (Doc. 364.) The Court held hearings on the motions on December 16, 2024, and January 16, 2025. (Doc. 334; Doc. 384.)

## FACTUAL AND PROCEDURAL BACKGROUND

The Court previously has recited the factual background in this case at length. *See Anderson v. Boyne USA, Inc.*, 2023 WL 4235827 (D. Mont. June 28, 2023); *Anderson v. Boyne USA, Inc.*, 2024 WL 1486091 (D. Mont. Apr. 5, 2024). The Court will not reiterate here the factual background causing this litigation.

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

## DISCUSSION

The Court will address first Plaintiffs' breach of fiduciary duty claim as many of the subsequent claims hinge on determining whether a fiduciary duty exists between the parties. The Court will address second Plaintiffs' declaratory and injunctive relief claims regarding unregistered securities and unconscionability. The Court will address third Plaintiffs' unjust enrichment claim. The Court will address fourth Plaintiffs' constructive fraud claim. The Court will address finally the issue of damage limitation.

## I.    Fiduciary Duty

Plaintiffs ask the Court to enter partial judgment on three issues: (1) Boyne is a fiduciary and owes specific fiduciary duties to condo owners; (2) the effect of the fiduciary duty on potential statutes of limitation; and (3) to establish a framework for the appropriate remedy if a breach is found. (Doc. 265 at 8.) Plaintiffs argue that Boyne serves as a fiduciary to the condo unit owners, owing them the highest duties of loyalty and fairness, among other obligations. Plaintiffs assert that Boyne's role as an agent and property manager inherently establishes a fiduciary relationship as a

3

matter of law. (*Id.* at 8–14.) Plaintiffs contend further that Boyne's fiduciary duty tolls the running of any applicable statutes of limitation. Plaintiffs argue that mere silence or failure to disclose by a fiduciary can constitute fraudulent concealment. (*Id.* at 16–18.) Plaintiffs argue finally that forfeiture or disgorgement of Boyne's management fee represents the proper remedy for breach of fiduciary duty. (*Id.* at 18–21.)

Boyne contends that any fiduciary duty arose from, and remains limited by, the terms of the rental management agreements (RMAs). (Doc. 318 at 4–10.) Boyne asserts that no special relationship exists between the parties, and, therefore, Boyne owed no fiduciary duty before Plaintiffs signed RMAs. (*Id.* at 4–7.) Boyne contends that the RMAs limit the scope of any fiduciary duties, specifically permitting Boyne to take certain acts. These acts include deducting resort fees, credit card processing fees, and travel agent commissions, using Plaintiffs' units for guest incentive programs, determining rents as part of a guest package, and depositing rental receipts into its general fund. (*Id.* at 10–14.)

## A. Whether a Fiduciary Duty Exists

The Court found already that a fiduciary relationship exists between the parties. (Doc. 15; Doc 64.) The Court's previous determination has not changed. To determine whether a fiduciary duty exists involves a multi-step analysis. The existence of a fiduciary duty generally presents a question of law. *Gliko v. Permann*,

130 P.3d 155, 159 (Mont. 2006). "Whether a party has breached a [fiduciary] duty generally presents a question of fact." *In re Charles M. Bair Fam. Tr.*, 183 P.3d 61, 74 (Mont. 2008) (internal citation omitted). A fiduciary relationship typically exists "when one party has a high degree of control over the property or subject matter of another" or when a party "places a high level of trust and confidence in the fiduciary to look out for the beneficiary's best interest." *Anderson v. ReconTrust Co.*, *NA*, 407 P.3d 692, 697 (Mont. 2017) (internal quotations and citation omitted).

A fiduciary duty also may arise from a "special relationship" between the parties. *Simmons Oil Corp. v. Holly Corp.*, 852 P.2d 523, 526 (Mont. 1993). This special relationship must go beyond typical interactions and involve a level of trust and confidence where one party relies on the other for advice or guidance. *Id.* To determine the existence of a special relationship requires a fact-intensive inquiry into the specific interactions and history between the parties. *Gilko*, 130 P.3d at 159. A fiduciary duty may be established by operation of law, through contract, through an agency relationship, or when an ordinary transaction develops into a special relationship. *Anderson*, 407 P.3d at 697.

Plaintiffs contend a fiduciary relationship exists with Boyne under three theories: (1) through principles of agency and contract; (2) through the operation of law under Montana property management regulations; and (3) through Boyne's role as an investment manager. (Doc. 265 at 14–15.)

5

### 1.  Contract and Agency

The Court determined previously that "Boyne agreed to act as [Plaintiffs'] Agent for the purpose of renting, managing, and operating the Unit[s]." (Doc. 15 at 8 (internal citation and quotation omitted).) It remains undisputed that the rental management agreements state: "Owner employs Agent as its Agent for the purpose of renting, managing and operating the Unit. Agent accepts this agency and agrees to use its best efforts in the rental, management and operation of the Unit." (*See* Doc. 269-30 at 1; Doc. 269-31 at 1; Doc. 269-32 at 1.) Plaintiffs have placed with Boyne "a high degree of control over the property." *Anderson*, 407 P.3d at 697. The language of the RMAs establishes a fiduciary relationship under Plaintiffs' first theory. The scope of that duty and whether a breach occurred remains a question of fact for the jury to decide at trial. *Kloss v. Edward D. Jones & Co.*, 54 P.3d 1, 9 (Mont. 2002) ("the scope or extent of the fiduciary obligation [] depends on the facts of the case") (internal quotations and citation omitted); *In re Charles M. Bair Fam. Tr.*, 183 P.3d at 74.

### 2.  Operation of Law

The Court determined previously that Montana property management regulations govern Boyne's management under the RMAs. (Doc. 339.) Special accounting rules apply to Montana property managers. Montana law considers property managers as trustees of money generated from said property management.

*See* Mont. Code Ann. §§ 37-56-101, et seq. and Mont. Admin. R. §§ 24.209.4, et seq. "Fiduciary duties arise as a matter of law in trustee relationships." *In re Charles M. Bair Family Trust*, 183 P.3d 61, 72 (Mont. 2008) (internal citation omitted). Boyne is subject to Montana property management regulations and manages trust accounts for the condominium units it manages. (Doc. 339; Doc. 295, ¶¶ 168–71.) This responsibility creates a fiduciary duty as a matter of law. *In re Charles M. Bair Family Trust*, 183 P.3d at 72. The scope of that duty and whether a breach occurred remains a question of fact for the jury to decide at trial. *Kloss*, 54 P.3d at 9; *In re Charles M. Bair Fam. Tr.*, 183 P.3d at 74.

### 3. Investment Manager

To determine whether Boyne acted as an investment manager hinges on whether Boyne created an investment contract and sold a security. Disputed material facts remain regarding whether Boyne sold a security. (*Infra* Section II(A).) The Court will note, however, that if the jury determines that Boyne created and sold a security, the scope of Boyne's fiduciary duty under this theory "is highly fact intensive." *See Kloss*, 54 P.3d at 9. As noted by the Montana Supreme Court in *Kloss*, "the question is not whether there is a fiduciary duty, which there is in every broker-customer relationship; rather, it is the scope or extent of the fiduciary obligation, which depends on the facts of the case." *Id.* (internal quotations and citation omitted). The Montana Supreme Court determined that a fiduciary

relationship existed in *Kloss* that required a securities broker to explain an arbitration clause in a brokerage contract to a client *Id.* at 9–10. The jury will decide whether the facts here imposed an affirmative duty on Boyne to disclose the details of the RMAs based on its alleged sale of a security to Plaintiffs.

### B. The Effect of a Fiduciary Duty on the Statute of Limitations

 The failure of one in a fiduciary relationship to provide information can toll the statute of limitations. *Payne v. Hall*, 458 P.3d 1001, 1008 (Mont. 2020). This rule applies only when a "confidential relationship exists between the parties, which imposes a duty to disclose." *Estate of Watkins v. Hedman, Hileman & Lacosta*, 91 P.3d 1264, 1270 (Mont. 2004). When a trust relationship exists between parties, such as a fiduciary, the party alleging fraudulent concealment need not prove fraudulent concealment through an affirmative act. *Textana, Inc. v. Klabzuba Oil & Gas*, 222 P.3d 580, 588 (Mont. 2009). Silence instead may suffice to prove fraudulent concealment, and such silence would toll that statute of limitations. *Id.* at 587–88 (citing *Kerrigan v. O'Meara*, 227 P.819, 821 (Mont. 1924).

Discovery of facts that would allow the statute of limitations to run must be more than a defendant's disclosure of information from which a party may deduce the defendant's misconduct. *Id.* at 588. The Montana Supreme Court in *Textana* addressed the statute of limitations and discovery rule in the context of the contractual relationship between a landman and an oil and gas company. *Id.* at 584–

87. The landman sought to dismiss as time-barred counterclaims arising from the contract between the parties. *Id*. The landman argued that he had disclosed his personal interest in various oil claims in numerous public documents and documents specifically submitted to the oil and gas company. *Id*. The Montana Supreme Court acknowledged the heightened duty of disclosure imposed on the landman as a fiduciary to the oil and gas company when it determined that "evidence of various public filings and invoices sent to Klabzubas that indicated Browns' ownership interest in the Starcher claims failed to satisfy these duties." *Id.* at 588. The Montana Supreme Court concluded that the landman's fiduciary duty required the landman to disclose the potential breach to the oil and gas company: "Browns['] trust relationship with Klabzubas imposed on Browns an affirmative duty to disclose." *Id.* The existence of fraudulent concealment presents "exactly the type of factual question[] appropriate for resolution by a trier of fact." *Id.* at 587 (quoting *Estate of Watkins v. Hedman*, 91 P.3d 1264, 1270 (Mont. 2004).

The Court determined above that a fiduciary duty exists under two theories. The resulting fiduciary duty creates an affirmative duty for Boyne to disclose. Potential fraudulent concealment remains at issue in this case. (*See* Doc. 26, ¶¶ 110–17.)   Disputed material facts exist also regarding the discovery of the alleged concealment. (Doc. 364 at 30–32; Doc. 363, ¶¶ 3–13, 17–18.) Summary judgment proves improper regarding the applicability of the statute of limitations to Plaintiffs'

claims. *Textana*, 222 P.3d at 587 (internal citation omitted). Boyne has not carried the heavy burden of showing the "uncontroverted evidence irrefutably demonstrates plaintiff[s] discovered" the concealment. *Kramas v. Sec. Gas & Oil Inc.*, 672 F.2d 766, 770 (9th Cir. 1982). The Court will deny summary judgment regarding Boyne's arguments that the statute of limitations bars Plaintiffs' claims. Disputed material facts remain regarding whether Boyne affirmatively disclosed the proper information under their fiduciary duty. *Textana*, 222 P.3d at 587.

### C. Remedy for Breach

The Court will reserve ruling on the proper remedy until trial. The scope of the fiduciary duty and whether a breach of that duty occurred remain factual issues to be determined at trial.

## II.    Declaratory and Injunctive Relief

Plaintiffs argue that the provision in the condominium declarations for the properties that requires Plaintiffs to use Boyne as their exclusive rental manager proves invalid and unenforceable. (Doc. 263 at 7.) Plaintiffs base their argument on two theories: (1) that the arrangement constitutes an unlawful sale of unregistered securities; and (2) the unconscionability of the exclusive rental management program. (*Id.* at 9–35.) Boyne's argument in response to Plaintiffs' motion largely repeats the arguments presented in Boyne's subsequent summary judgment motions. (*Compare* Doc. 292 to Doc. 323; Doc. 325; Doc. 327.)

10

Boyne argues first that the statute of limitations bars the named Plaintiffs' unregistered security claims. (Doc. 292; Doc. 323; Doc. 325; Doc. 327.)  Boyne next contends that Plaintiff Anderson's unregistered security claim also fails as a matter of law. (Doc. 323.) Boyne argues additionally that the statute of limitations bar Plaintiffs Anderson's and Erharts's unconscionability claims, and all three named Plaintiffs' unconscionability claims fail as a matter of law. (Doc. 292; Doc. 323; Doc. 325; Doc. 327.)

The Court finds that disputed material facts remain regarding whether a breach of fiduciary duty occurred, which underpins Boyne's statute of limitations arguments. The Court also finds disputed material facts remain regarding Plaintiffs' unregistered security and unconscionability claims. The Court will deny summary judgment.

### A. Unregistered Securities

#### 1. Statute of Limitations

The Court's analysis regarding the effect of a fiduciary duty on the statute of limitations applies to Plaintiffs' unregistered security claim. The Court will not repeat its analysis here. The Court rejects Boyne's argument that Plaintiffs' unregistered security claim is time-barred.

#### 2. Merits of the Unregistered Security Claim

11

Plaintiffs argue that Boyne's packaging of the rental management services with the condo sales created an investment contract that amounted to an unlawful sale of unregistered securities. (Doc. 263 at 10–16.) Boyne argues that Plaintiffs' unregistered security claims fail on the merits for two reasons: (1) Boyne did not solicit the sales; and (2) Plaintiffs' claims fail the *Howey* test. (Doc. 292 at 15–25.)

### i. Solicitation

Section 12(a)(1) of the Securities Act of 1933 imposes liability only on a person "who offers or sells a security." 15 U.S.C. § 77l(a)(1). Section 12(a)(2) imposes liability on a person "who—offers or sells a security . . . by means of . . . the mails, by means of prospectus or oral communication" in violation of the Securities Act. 15 U.S.C. § 77l(a)(2). The Securities Act defines "offer" in part as a "*solicitation* of an offer to buy." 15 U.S.C. § 77b(a)(3) (emphasis added).

The law defines seller as "only the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter v. Dahl*, 486 U.S. 622, 647 (1988). *Pinter* represents the seminal case in determining whether a defendant meets this definition. The U.S. Supreme Court limited its analysis to § 12(a)(1). In fact, "most courts and commentators give the term [in 12(a)(2)] the same meaning as in section 12[(a)](1)." *Ryder Intern. Corp. v. First Am. Nat. Bank*, 943 F.2d 1521, 1526 (11th Cir. 1991); *see also Crawford v. Glenns, Inc.*, 876 F.2d 507, 510 (5th Cir. 1989)

12

(reformulating "the test for 'seller' status under section 12(2) in light of the Supreme Court's decision in *Pinter v. Dahl*"); *Capri v. Murphy*, 856 F.2d 473, 478–79 (2d Cir. 1988) (considering § 12(a)(2) in light of *Pinter*); *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 635 (3d Cir. 1989) ("[G]iven the identical language of sections 12(1) and 12(2) . . . we see no reason to distinguish the scope of "seller" for purposes of § 12(1) and § 12(2).").

*Pinter* determined that although a person need not necessarily pass title to qualify as a seller, they must be involved in solicitation. 486 U.S. at 642–44. In other words, the person induced a sale that is not merely intended to benefit the buyer. This reasoning reflects Congress's intent, as noted by the statutory language, and the notion that "solicitation of a buyer is perhaps the most critical stage of the selling transaction." *Id.* at 646. The crucial limitation recognizes that the "seller" must have sought a financial benefit for themselves, or the security owner, based on the sale. *Id.* at 647. Someone who "gratuitously urges" another to make a certain investment choice, even when the recommender does so "strongly or enthusiastically," does not fall within the scope of Congress's intent. *Id.* Whether a buyer was solicited necessarily turns on the actual relationship between the buyer and the alleged "seller."

The Securities Act does not define "solicitation." The U.S. Supreme Court never has defined the term "solicitation" in the context of § 12 of the Securities Act.

13

*See Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1346 (11th Cir. 2022) (citation omitted). Solicitation involves a relationship-focused inquiry.  As the U.S. Supreme Court recognized in *Pinter*, "[t]he 'purchase from' requirement of § 12 focuses on the defendant's relationship with the plaintiff-purchaser." 486 U.S. at 651. Other courts agree. *See Ryder*, 943 F.2d at 1527 (11th Cir. 1991)  ("The 'purchase from' requirement and the limitation of participants to those who 'solicit' a purchase of securities (statutory restrictions which apply to § 12 generally) narrow the field of potential sellers."); *In re CNL Hotels & Resorts, Inc.*, 2005 WL 2291729 at *4 (M.D. Fla. Sept. 20, 2005) ("In other words, a court should focus on the defendant's relationship with the plaintiff purchaser, not on the defendant's involvement in the securities transaction." (citation omitted)).

Under the prevailing interpretation, solicitation requires a plaintiff to show that a defendant had "active and direct participation in the solicitation." *Craftmatic*, 890 F.2d at 636 (3d Cir. 1989) (citing *Moore*, 885 F.2d at 536–37 (9th Cir.1989)). This participation requirement implies at least some intentional targeting of a specific buyer or audience's purchase. *Id.* The scope of solicitation remains unclear. Recent decisions have tended toward a broad interpretation.

Two cases prove instructive. The facts of *Wildes* differ from this case, but the Eleventh Circuit's examination of "solicitation" proves relevant. *See* 25 F.4th at 1345–47. The Eleventh Circuit reasoned that the Securities Act does not limit

14

solicitation to personal interactions. *Id.* Solicitation covers any means of communication, including mass communications like online videos. *Id.* Such solicitation can trigger liability for selling unregistered securities. *Id.* For example, *Pino v. Cardone Cap., LLC* involved a class action related to investment into a real estate fund. 55 F.4th 1253, 1255–57 (9th Cir. 2022), *cert. denied*, 92 U.S.L.W 3063 (Oct. 2, 2023). The plaintiffs alleged that Cardone had solicited investments through various forms of social media. *Id.* The Ninth Circuit, relying on *Wildes*, determined that solicitation under the Securities Act does not require direct or targeted communication to a specific purchaser. *Id.* at 1259–60. Mass communications, such as social media posts, can constitute solicitation if they promote the sale of securities. *Id.*

No credible argument exists that Boyne did not solicit the sales of the condominiums. It remains undisputed that Boyne produced marketing materials that included "the potential of rental income as well as tax benefits." (Doc. 295, ¶¶ 26–28.) It also remains undisputed that Boyne benefited from those sales as Boyne received a profit from condominium rentals under the RMAs. (*Id.*, ¶ 13.) Whether Plaintiffs saw and relied on the marketing materials remains a disputed question of fact and proves relevant to whether the sale of the condominiums constitutes a security under the *Howey* test. (*Id.*, ¶¶ 26–28.)

### ii. *Howey* Test

15

The Securities and Exchange Commission ("SEC") has struggled to outline when the sale of condominiums constitutes a security. A 1973 guidance issued by the SEC provided the following information: "condominium units may be offered with a contract or agreement that places restrictions, such as required use of an exclusive rental agent . . . on the purchaser's occupancy or rental of the property purchased." 1973 SEC LEXIS 3277, at *5–7. The guidance notes that "[s]uch restrictions suggest that the purchaser is in fact investing in a business enterprise, the return from which will be substantially dependent on the success of the managerial efforts of other persons." *Id.* Registration of the resulting investment contract would be required in those cases. *Id.* In particular, the guidance informs that condominiums, coupled with a rental arrangement, will be deemed to be securities "if they are offered and sold through advertising, sales literature, promotional schemes or oral representations which emphasize the economic benefits to the purchaser to be derived from the managerial efforts of the promoter, or a third party designated or arranged for by the promoter, in renting the units." *Id.*

A security exists under federal law where the following conditions apply: "(1) an investment of money (2) in a common enterprise (3) with an expectation of profits produced by the efforts of others." *Warfield v. Alaniz*, 569 F.3d 1015, 1020 (9th Cir. 2009) (quoting *SEC v. Rubera*, 350 F.3d 1084, 1090 (9th Cir. 2003)). Montana law sets forth a similar test: "1) an investment; 2) in a common venture; 3) with

reasonable expectation of profits; 4) derived through the entrepreneurial or managerial efforts of others." *Redding v. Montana First Judicial Dist. Court*, 281 P.3d 189, 196 (Mont. 2012) (citing *State v. Duncan*, 593 P.2d 1026, 1032 (Mont. 1979)). Boyne argues that Plaintiffs cannot meet the first and third factors of the *Howey* test. (Doc. 292 at 16–25.)

"The 'investment of money' prong of the *Howey* test 'requires that the investor commit his assets to the enterprise in such a manner as to subject himself to financial loss.'" *Warfield*, 569 F.3d at 1021 (quoting *Rubera*, 350 F.3d at 1090 (internal quotations omitted)). "[C]ourts conduct an objective inquiry into the character of the instrument or transaction offered based on what the purchasers were 'led to expect.'" *Warfield*, 569 F.3d at 1021 (quoting *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946)). The expansive inquiry set forth in *Howey* inquiry requires "a thorough examination of the representations made by the defendants as the basis of the sale [such as] [p]romotional materials, merchandising approaches, oral assurances and contractual agreements." *Hocking v. Dubois*, 885 F.2d 1449, 1457 (9th Cir. 1989).

Courts view broadly the first *Howey* factor. *Warfield*, 569 F.3d at 1020 (internal citation omitted). The inquiry focuses on the "investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *State of Montana v. Duncan*, 593

17

P.2d 1026, 1032 (Mont. 1979) (citing *Howey*, 328 U.S. at 298). For the purchase of an interest in a condo-hotel to meet the first *Howey* factor, there must be a showing that "the condominium and rental agreements were offered as a package" and "form a single transaction." *Hocking*, 885 F.2d at 1459; *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1132 (9th Cir. 2013). There also must be a further showing that the buyers "were induced to buy the condominiums by the Rental Management Agreement." *Salameh*, 726 F.3d at 1132. The first *Howey* factor likely fails when "someone who already owned a condominium decided to place the condominium into a rental arrangement, independent of the decision to purchase the condominium." *See Hocking*, 885 F.2d at 1459.

Hocking* and *Salameh* prove instructive. Both cases involved whether the sale of hotel condominiums and subsequent rental management agreements constituted the sale of a security under the *Howey* test. The plaintiff in *Hocking* purchased a condominium in Hawaii from a couple who owned the unit. *Id.* at 1452. The plaintiff thought that he was purchasing the condominium from the developer. *Id.* The real estate agent informed the plaintiff of the rental pool arrangement, which influenced the plaintiff's decision to purchase the unit. *Id.* at 1452–53. The Ninth Circuit, sitting en banc, reversed and remanded the case because factual issues existed regarding whether the rental pool arrangement and other agreements met *Howey's* second and third prongs. *Id.* at 1459–62.

18

*Salameh* came 24 years after *Hocking* and involved the purchase of condominiums in the Hard Rock Hotel San Diego. *Salameh*, 728 F.3d at 1128. The plaintiffs brought a class action alleging that the arrangement violated federal and state securities laws. *Id.* The Ninth Circuit reasoned that the arrangement did not constitute a security because the plaintiffs had not adequately alleged that the defendants had offered the contracts as a package or that the rental management agreements induced the plaintiffs to buy the condominiums. *Id.* at 1131–32. The Ninth Circuit distinguished *Hocking* on the basis that the record in *Hocking* "showed and we emphasized 'that but for the availability of the rental pool arrangement [Hocking] would not have purchased the condominium.'" *Id.* at 1130. In *Salameh*, by contrast, the plaintiffs had failed to allege facts related to the promotion and packaging of the condominiums and the rental management agreements. *Id.* at 1131. Most relevant here, the Ninth Circuit observed that "[i]f Plaintiffs did not have [promotional material] before they signed the Purchase Contracts, the representations [made in those] documents are irrelevant in assessing whether a security was 'presented' to the Plaintiffs at that time." *Id.* (citing *Hocking*, 885 F.2d at 1458).

Plaintiffs argue that Boyne's decision to incorporate the rental program into the condominium declarations resulted in an investment contract under *Howey*. (Doc. 263 at 12.) Plaintiffs contend that this action occurred when Boyne

19

"packaged" the rental program with every condo purchase, including those on the secondary market, effectively structuring the condo-hotels as investments in a rental business enterprise. (*Id.* at 14.) Plaintiffs cite Boyne's briefing characterizing the condo-hotel units and Boyne's rental management services as a "single, integrated product" as an admission of this packaging. (*Id.* citing Doc. 188 at 37)

Boyne argues alternatively that Plaintiffs have not demonstrated that Boyne offered the condominiums and rental agreements as a package constituting a single transaction. (Doc. 292 at 19.) Boyne presents evidence that some Plaintiffs, such as the Clagetts, delayed entering into Rental Management Agreements (RMAs). (*Id.*; Doc. 296, ¶¶ 54–57.) This evidence raises a factual issue of whether the first prong of *Howey* can be met. *Hocking*, 885 F.2d at 1459.

Plaintiffs fail also to show that the marketing materials they present in their undisputed facts were communicated to them pre-purchase and if those materials induced the Plaintiffs into purchasing the property. (*See* Doc. 270; Doc. 271; Doc. 295, ¶¶ 26–28.) These omissions require a "thorough examination of the representations made by [Boyne] as the basis of the sale" and some showing that Plaintiffs purchased the properties due to the RMAs. *Salameh*, 726 F.3d at 1131–32.

The Court finds Plaintiffs' assertion that Boyne represented to the Court that the Condo units were sold as a "single integrated product" unpersuasive for two reasons. The first reason being that Boyne made the representation in the context of

Plaintiffs' antitrust tying theory. (Doc. 292 at 20–21.) Boyne also said that "the purchase of a Condo Hotel unit is not conditioned on purchasing Boyne's rental management services and buyers are not necessarily interested in any rental management services." (Doc. 188 at 28.) The second reason being that the tests differ for antitrust tying and "investment of money" under *Howey*. The inquiry in an antitrust tying claim is whether "the defendant tied together the sale of two distinct products or services." *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 971 (9th Cir. 2008). The inquiry under *Howey* for "investment of money" is whether the buyers were "induced to buy the condominiums by the Rental Management Agreement." *Salameh*, 726 F.3d at 1132. A genuine issue of material fact remains whether the first *Howey* factor has been met. Summary judgment would be improper.

### B. Unconscionability Claim

#### 1. Statute of Limitations

The Court's analysis regarding the effect of a fiduciary duty on the statute of limitations applies to Plaintiffs' unconscionability claim. The Court will not repeat its analysis here. The Court rejects Boyne's argument that Plaintiffs' unconscionability claim is time-barred.

#### 2. Merits of the Unconscionability Claim

Disputed material facts regarding fraudulent concealment make summary judgment improper regarding the applicability of the statute of limitation. The

21

applicability of the statute of limitations, which hinges on whether a breach of fiduciary duty occurred, represents a threshold issue that the trier of fact must decide. The Court also finds that disputed material facts exist regarding the merits of Plaintiffs' unconscionability claim. The Court already has addressed the merits of Plaintiffs' unconscionability claim at the summary judgment stage. (*See* Doc. 224 at 23–25.) The Court will not engage in an in-depth analysis. The Court's analysis of Boyne's prior motion for summary judgment remains true.

Plaintiffs assert that the exclusive rental management program proves unconscionable due to the adhesive and unreasonably one-sided nature of the contracts. (Doc. 263 at 22.) Plaintiffs support the adhesion argument by contending that the exclusivity requirement serves Boyne's interests, not the land's. (*Id.* at 23–26.) Plaintiffs support the one-sided argument by arguing that the exclusivity requirement proves substantively unconscionable for the following reasons: the non-mutuality of obligation; violation of securities law; Boyne's breach of fiduciary duty; the length of the contracts; and Boyne's manipulative practices. (*Id.* at 26–35.)

Unconscionability requires showing two elements under Montana law: (1) the contractual terms unreasonably favor the drafter; and (2) a lack of any meaningful choice on the part of the other party regarding acceptance of the contract's provisions. *Leibrand v. Nat'l Farmers Union Prop. & Cas. Co.*, 272 Mont. 1, 898

P.2d 1220, 1227 (1995) (internal citation omitted). To determine unconscionability involves a factual inquiry that focuses on "the totality of the circumstances surrounding execution of the contract." *Lenz v. FSC Secs. Corp.*, 414 P.3d 1262, 1276 (Mont. 2018); *see also Kortum-Managhan v. Herbergers NBGL*, 204 P.3d 693, 699 (Mont. 2009) (discussing the factors that determine unconscionability) (internal citation omitted). Factors particularly relevant to unconscionability in this case would be the "personal circumstances . . . personal background and financial situation of the plaintiff[s]." *Lence Fam. Trust v. Christensen*, 2016 WL 816737 at *3 (D. Mont. Feb. 26, 2016), *aff'd*, 709 F. App'x 464 (9th Cir. 2018). Summary judgment represents generally a poor mechanism for resolving unconscionability claims.

Plaintiffs have presented a substantial factual record of more than 1,100 pages to support their unconscionability claims. (*See* Doc. 270; Doc. 271; Doc. 296.) Boyne identifies several material factual disputes regarding unconscionability. (*See* Doc. 292 at 25–33.) The Court finds that genuine issues of material facts regarding the issues of Plaintiffs' relative bargaining power, Plaintiffs' sophistication, and whether Plaintiffs had meaningful choices to purchase other properties sufficient to deny summary judgment. *Lence Fam. Trust*, 2016 WL 816737 at *2; (Doc. 296, ¶¶ 9–33; *see also* Doc. 224 at 23–25.) Those disputes of material fact should be for the jury to decide.

23

### III.    Unjust Enrichment

Boyne argues that the existence of valid contracts displaces Plaintiffs' unjust enrichment claim. (Doc. 318 at 15–17.) Boyne asserts that unjust enrichment only applies in the contract context when a contract is invalid, voidable, or otherwise ineffective. (*Id.* at 15.) Boyne argues also that equitable remedies remain unavailable when an adequate remedy at law exists, such as a breach of contract claim. (*Id.*) A valid contract generally precludes an unjust enrichment claim. *Filler v. United Parcel Serv., Inc.*, 2021 WL 5106461 at *3 (D. Mont. Sept. 21, 2021). An unjust enrichment claim may be proper if a contract is invalid, voidable, or otherwise ineffective in regulating the parties' obligations. *Associated Mgmt. Servs., Inc. v. Ruff*, 424 P.3d 571, 595–96 (Mont. 2018).

Plaintiffs assert two theories underlying their declaratory judgment claims in an effort to prove the contracts invalid. The Court discussed above that disputed material facts remain regarding Plaintiffs' unregistered security and unconscionability claims in Section II. Should the jury find either of those theories valid Plaintiffs would prove successful in invalidating the contracts that govern the parties' relationships. Such a finding would render Plaintiffs' unjust enrichment claim valid. The Court will deny summary judgment on this issue because it hinges on disputed material facts related to other claims that must be resolved at trial.

### IV.    Constructive Fraud

24

Boyne argues that Plaintiffs' constructive fraud (Count II) claim is time-barred. (Doc. 321 at 7.) Boyne contends that Plaintiffs had actual knowledge of the facts underlying the constructive fraud claim years ago that triggered the statutes of limitations. (*Id.* at 12.) Boyne argues that Plaintiffs' actual knowledge precludes the application of the doctrine of fraudulent concealment, even if a fiduciary duty existed. (*Id.* at 12–13.) Boyne asserts that the RMAs disclosed the practices now at issue thereby providing actual knowledge to the Plaintiffs. (*Id.* at 9, 16.)

Boyne's arguments addressing constructive fraud duplicate the arguments Boyne makes regarding why Plaintiff's breach of fiduciary duty claim should fail. The Court will not reanalyze the arguments here. Boyne's arguments fail for the reasons stated in Section I of this Order. The Court will deny Boyne's motion for summary judgment regarding Plaintiff's constructive fraud claim.

## V.    Limit on Damages

Boyne argues that the continuing tort doctrine does not apply where the alleged wrongs involve past wrongs for which the party seeks monetary damages. (Doc. 321 at 18.) Regarding punitive damages, Boyne argues that they are unavailable because the constructive fraud claim is time-barred and arises from contract law, not tort law. (*Id.* at 20.) Boyne contends that even if a fiduciary duty existed, it originated in contract and cannot support punitive damages. (*Id.* at 22.) Boyne argues finally that even if the continuing tort doctrine applies, Plaintiffs'

damages are temporally limited to the statutory period immediately preceding the complaint filing. (*Id.* at 24.)

## A. Whether the Continuing Tort Doctrine Applies

Boyne relies on the Montana Supreme Court's recent decision in *Lake County* to argue that the continuing tort doctrine does not apply. (Doc. 321 at 18–20.) *Lake County* involved a lawsuit by Lake County, Montana against the State of Montana seeking reimbursement for costs of enforcing state criminal jurisdiction on the Flathead Indian Reservation. *Lake County v. State*, 559 P.3d 1263, 1266–69 (Mont. 2024). Boyne misplaces reliance on *Lake County*.

No dispute existed regarding the discovery rule in *Lake County*. *Id.* at 1270– 71. As discussed in Section I of this Order, the discovery rule remains at issue. *Textana* controls due to the discovery rule question at issue, and the Court need not address whether the continuing tort doctrine applies to Plaintiffs' claims. *See* 222 P.3d at 587–88 ("Discovery serves to toll the statute of limitations only if fraudulent concealment has hindered a party from discovering a breach.") (internal citation omitted).

## B. Punitive Damages

The Court's analysis in Section I of this Order again proves instructive. Boyne concedes that "[i]t is true that a contract-based claim may give rise to tort damages in the case where there is a "special relationship." (Doc. 321 at 21.) "'[I]f a defaulting

party, by breaching the contract, also breaches a duty which he owes to the other party independently of the contract,' a party may assert a claim of liability in tort." *Romo v. Shirley*, 522 P.3d 401, 407 (Mont. 2022) (quoting *Dewey v. Stringer*, 325 P.3d 1236 (Mont. 2014).

Plaintiffs have alleged constructive fraud and breach of fiduciary duty. Montana law permits the award of punitive damages in contract claims if the factfinder finds the defendant "guilty of actual fraud or actual malice." Mont. Code Ann. § 27-1-221; *see also* Mont. Code Ann. § 27-1-220 (when punitive damages are allowed). Punitive damages are also available when a breach of a fiduciary occurs. *See e.g. Cartwright v. Equitable Life Assur. Soc. of U.S.*, 914 P.2d 976, 992–97 (Mont. 1996); *Marie Deonier & Assocs. v. Paul Revere Life Ins. Co.*, 101 P.3d 742, 752–53 (Mont. 2004).

The Court will reserve ruling on Boyne's summary judgment motion to prohibit the recovery of punitive damages until trial. Whether punitive damages are available rests on whether the trier of fact determines that Boyne committed constructive fraud or breached its fiduciary duty to Plaintiffs.

### C. Time Limit of Damages

The Court declines to address the temporal limit of damages regarding Plaintiffs' claims. The Court determined that it need not address the applicability of the continuing tort doctrine because *Textana* controls.

## CONCLUSION

The Court grants Plaintiffs' summary judgment regarding whether a fiduciary duty exists between Boyne and Plaintiffs because a fiduciary relationship exists through contract and agency principles from the RMAs, and through the operation of law from the Montana property management regulations. The scope of that fiduciary duty and whether a breach occurred remains a determination for the jury. The Court also grants Plaintiffs' summary judgment regarding the effect of the fiduciary duty in the statute of limitations because a fiduciary duty creates an affirmative duty to disclose. Whether such disclosure happened remains a disputed fact to be determined at trial. The Court denies Plaintiffs' remaining motions for summary judgment. The Court denies Boyne's motions for summary judgment.

## ORDER

Accordingly, **it is ORDERED** that:

1. Plaintiffs' Motion for Summary Judgment (Doc. 264) is **GRANTED in part and DENIED in part.**

2. Plaintiffs' Motion for Summary Judgment (Doc. 262) is **DENIED**.

3. Boyne's Motion for Summary Judgment (Doc. 322) is **DENIED**.

4. Boyne's Motion for Summary Judgment (Doc. 324) is **DENIED**.

5. Boyne's Motion for Summary Judgment (Doc. 326) is **DENIED**.

6. Boyne's Motion for Summary Judgment (Doc. 317) is **DENIED**.

7.  Boyne's Motion for Summary Judgment (Doc. 328) is **DENIED**.

DATED this 31st day of January, 2025.

Brian Morris, Chief District Judge
United States District Court