Ben Alke
John G. Crist
CRIST, KROGH, ALKE & NORD, PLLC
209 S. Willson Ave.
Bozeman, MT 59715
Tel: (406) 255-0400
balke@cristlaw.com
jcrist@cristlaw.com

J. Devlan Geddes
Jeffrey J. Tierney
Henry J. K. Tesar
GOETZ, GEDDES & GARDNER, P.C.
35 N. Grand Ave.
Bozeman, MT 59715
Tel: (406) 587-0618
devlan@goetzlawfirm.com
jtierney@goetzlawfirm.com
htesar@goetzlawfirm.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA, BUTTE DIVISION**

| | |
|---|---|
| LAWRENCE ANDERSON, as trustee for the LAWRENCE T. ANDERSON AND SUZANNE M. ANDERSON JOINT REVOCABLE LIVING TRUST, ROBERT AND NORA ERHART, and TJARDA CLAGETT,<br>Plaintiffs,<br>v.<br><br>BOYNE USA, INC., BOYNE PROPERTIES, INC., and SUMMIT HOTEL, LLC,<br>Defendants. | Case No. 2:21-cv-00095-BMM<br><br>**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE AWARDS** |

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... 3

STATEMENT OF THE ISSUES TO BE DECIDED ..... 3

ARGUMENT ..... 8

I. The Court Should Award Class Counsel Attorneys' Fees Equal to One-Third of the Recovery. ..... 8

A. The Court should apply the percentage of recovery method. ..... 9

B. A fee of one-third of the recovery is fair and reasonable under the percentage of recovery method. ..... 13

1. The result secured is extraordinary. ..... 16

2. The additional factors further support an award of one-third. ..... 20

II. Litigation Costs Should Be Reimbursed from the Common Fund. ..... 32

III. Incentive Payments Should Be Awarded to the Named Plaintiffs. ..... 34

CONCLUSION ..... 36

CERTIFICATE OF COMPLIANCE ..... 38

## TABLE OF AUTHORITIES

### CASES

*Alberto v. GMRI, Inc.*,
2008 U.S. Dist. LEXIS 91691 (E.D. Cal. Nov. 12, 2008) .................... 9

*Anderson, et al. v. Boyne USA INC., et al.*,
Case No. 23-80060 (9th Cir. 2023) ................................................ 29

*Andrews v. Plains All Am. Pipeline L.P.*,
2022 U.S. Dist. LEXIS 172183 (C.D. Cal. Sep. 20, 2022) ................ 13

*In re Apollo Grp. Sec. Litig.*,
2012 U.S. Dist. LEXIS 55622 (D. Ariz. Apr. 20, 2012) ...................... 17

*Beaver v. Tarsadia Hotels*,
2017 U.S. Dist. LEXIS 160214 (S.D. Cal. Sep. 28, 2017) ................ 15

*Beck v. City of Whitefish*,
2024 U.S. Dist. LEXIS 215355 (D. Mont. Nov. 26, 2024) ......... *Passim*

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)...................................................... 11, 16

*Boyd v. Bank of Am. Corp.*,
2014 U.S. Dist. LEXIS 162880 (C.D. Cal. Nov. 18, 2014) ................ 32

*Carlin v. DairyAmerica, Inc.*,
380 F. Supp. 3d 998 (E.D. Cal. 2019) ............................................. 17

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .......................................................... 10

*Chu v. Wells Fargo Invs., LLC,*
2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 15, 2011)........ 13, 34-35

*In re Corel Corp., Inc. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003) .............................................. 19

*Covillo v. Specialty's Café*,
2014 U.S. Dist. LEXIS 29837 (N.D. Cal. Mar. 6, 2014) .................... 34

*Craft v. Cty. of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008)............................................ 13

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000) ..................................................... 19

*In re Crazy Eddie Sec. Litig.*,
824 F. Supp. 320 (E.D.N.Y. 1993).................................................... 19

*Deaver v. Compass Bank*,
2015 U.S. Dist. LEXIS 166484 (N.D. Cal. Dec. 11, 2015) ................ 18

*Gendron v. Mont. Univ. Sys.*,
2020 MT 82, 399 Mont. 470, 461 P.3d 115.................. 9, 11, 16, 33-34

*In re General Instr. Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) .............................................. 19

*Hageman v. AT&T Mobility LLC*,
2015 U.S. Dist. LEXIS 25595 (D. Mont. Feb. 11, 2015) ....... 14, 17, 31

*Harrison v. Harry & David Operations, Inc.*,
2022 U.S. Dist. LEXIS 178196 (D. Or. Sep. 29, 2022)...................... 15

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ......................................................................... 16

*In re Heritage Bond Litig.*,
2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005).................. 18

*Jiangchen v. Rentech, Inc.*,
2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019).................. 18

*Kang v. Wells Fargo Bank, N.A.*,
2021 U.S. Dist. LEXIS 235254 (N.D. Cal. Dec. 8, 2021)...................... 9

*In re Korean Air Lines Co., Antitrust Litig.*,
2013 U.S. Dist. LEXIS 186262 (C.D. Cal. Dec. 23, 2013) ................ 10

*Mangold v. Calif. Pub. Utils. Comm'n*,
67 F.3d 1470 (9th Cir. 1995) ................................................................ 8

*Marshall v. Northrop Grumman Corp.*,
2020 U.S. Dist. LEXIS 177056 (C.D. Cal. Sep. 18, 2020) ........... 14-15

*McMorrow v. Mondelez Int'l, Inc.*,
2022 U.S. Dist. LEXIS 66016 (S.D. Cal. Apr. 8, 2022) ...................... 20

*In re Med. X-Ray Film Antitrust Litig.*,
1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) ...................... 18

*Monterrubio v. Best Buy Stores, Ltd. P'ship*,
291 F.R.D. 443 (E.D. Cal. 2013) ...................................................... 35

*Mont. Land & Mineral Owners Ass'n, Inc. v. Devon Energy*,
No. CV-05-30-H-RKS, Doc. 120 (D. Mont. Aug. 24, 2007) ... 14, 17, 31

*Multi-Ethnic Immigrant Workers Org. Network v. City of L.A.*,
2009 U.S. Dist. LEXIS 132269 (C.D. Cal. June 24, 2009) ................ 13

*Nitsch v. DreamWorks Animation SKG Inc.*,
2017 U.S. Dist. LEXIS 86124 (N.D. Cal. June 5, 2017) .................... 33

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................ 12

*Peterson v. Alaska Communs. Sys. Grp., Inc.*,
2022 U.S. Dist. LEXIS 45227 (D. Alaska Mar. 14, 2022) .................. 18

*Ridgeway v. Wal-Mart Stores Inc.*,
269 F. Supp. 3d 975 (N.D. Cal. 2017) ................................................ 9

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .............................................................. 34

*Romero v. Producers Dairy Foods, Inc.*,
2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 13, 2007) .................. 12

*Schmitt v. Kaiser Found. Health Plan of Wash.*,
2024 U.S. Dist. LEXIS 71166 (W.D. Wash. Apr. 18, 2024) ............... 18

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003) ........................................................ 20

*In re Syngenta AG MIR 162 Corn Litig.*,
61 F.4th 1126 (10th Cir. 2023)........................................................ 10

*Tafelski v. Johnson*,
2024 MT 143, 417 Mont. 160, 552 P.3d 40 ................................*passim*

*Uschold v. NSMG Shared Servs., LLC*,
2020 U.S. Dist. LEXIS 99258 (N.D. Cal. June 5, 2020)...................... 9

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........................................ 8, 12, 16, 20

*Wolph v. Acer Am. Corp.*,
2013 U.S. Dist. LEXIS 151180 (N.D. Cal. Oct. 21, 2013) ................. 34

**RULES**

Rule 23(b)(2) Fed R. Civ. P. ........................................................ 8, 24, 29

Rule 23(b)(3) Fed R. Civ. P. ........................................................*passim*

Rule 23(f) Fed R. Civ. P ........................................................ 23, 28, 29

**OTHER**

Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. Empirical Legal Studies 248 (2010) ........................................................................................ 12

4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007).. 12

*Court Awarded Attorney Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985) .......................................................................... 10

## STATEMENT OF THE ISSUES TO BE DECIDED

The following issues are presented for the Court's consideration:

- Award of attorneys' fees to Class Counsel in the amount of one-third (33.33%) of the Rule 23(b)(3) Settlement Fund;
- Award of attorneys' fees to Class Counsel in the amount of one-third (33.33%) of the Rule 23(b)(2) CAPEX Contributions;
- Reimbursement of Class Counsel for litigation costs reasonably incurred prosecuting this case;
- Set aside of anticipated Administration Costs;
- Set aside of anticipated expert costs to calculate class members' settlement payments; and
- Award of Service Awards to the four class representatives.

## ARGUMENT

### I. The Court Should Award Class Counsel Attorneys' Fees Equal to One-Third of the Recovery.

Montana law governs the award of fees in this class action. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *Mangold v. Calif. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)) ("Because Washington law governed the claim, it also governs the award of fees."). Montana recognizes both the percentage of recovery and lodestar methods

for calculating fee awards. *Tafelski v. Johnson*, 2024 MT 143, ¶ 21, 417 Mont. 160, 169, 552 P.3d 40, 46. The percentage of recovery method "authorizes fees to be paid from a percentage of a common fund or a contingency fee agreement." *Gendron v. Mont. Univ. Sys.*, 2020 MT 82, ¶ 12, 399 Mont. 470, 478, 461 P.3d 115, 121 (citations omitted). The lodestar method is calculated by "multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work." *Id.* (citation omitted).[1]

### A. The Court should apply the percentage of recovery method.

The Court maintains broad discretion to employ either fee recovery method if the "decision is supported by an adequate rationale[.]" *Gendron*, ¶ 15 (citation omitted). "The percentage-of-recovery method is favored in common-fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *Alberto v. GMRI, Inc.*, 2008 U.S. Dist. LEXIS 91691, at *32 (E.D. Cal. Nov.

---

[1] Lodestars may then be subject to a multiplier. The "Ninth Circuit has recognized that multipliers generally range from 1 to 4." *Kang v. Wells Fargo Bank, N.A.*, 2021 U.S. Dist. LEXIS 235254, at *54 (N.D. Cal. Dec. 8, 2021); *see also Uschold v. NSMG Shared Servs., LLC*, 2020 U.S. Dist. LEXIS 99258, at *49 (N.D. Cal. June 5, 2020) (applying multiplier of 4 to fee award); *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 999 (N.D. Cal. 2017) (applying multiplier of 2.0 to fee award).

12, 2008) (internal quotation marks and citation omitted); *see also In re Korean Air Lines Co., Antitrust Litig.*, 2013 U.S. Dist. LEXIS 186262, at *3 (C.D. Cal. Dec. 23, 2013) (citations omitted) ("The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on showing that the fund conferring benefits on a class was created through the efforts of plaintiffs' counsel.").

Courts have criticized the lodestar method for compensating lawyers based on hours worked rather than results achieved, leading to "a risk that it will cause lawyers to work excessive hours, inflate their hourly rate, or decline beneficial settlement offers that are made early in litigation[;]" for requiring "an enormous investment of judicial time[;]" and for being "quite subjective" and producing "wildly varying awards in otherwise similar cases." *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001) (citing *Court Awarded Attorney Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985)); *see also In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1192 (10th Cir. 2023) (lodestar encourages inefficiency because it incentivizes attorneys to spend as many hours as possible, resulting in fewer settlements, and fails to account for the productive quality of an attorney's labor, whereas under the percentage method, inefficiently

expended hours only serve to reduce the per hour compensation); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (noting that the lodestar is a "time-consuming task" compared to the "easily quantified" percentage method).

The Montana Supreme Court has "never endorsed the rule that a district court is required to employ one method of calculation over the other in any particular case." *Gendron*, ¶ 15 (citation omitted). The percentage of recovery method was recently approved by the Montana Supreme Court in *Tafelski*, ¶ 28—where the court noted that a settlement for a common fund favors the percentage of recovery method—and has been applied by this Court when "the benefit to the class is easily-quantified[.]" *Beck v. City of Whitefish*, 2024 U.S. Dist. LEXIS 215355, at *7 (D. Mont. Nov. 26, 2024).[2]

---

[2] The Ninth Circuit has clarified the lodestar method is most appropriate in class actions brought under fee-shifting statutes where the prevailing party is entitled to recover fees by statute and/or in cases where the relief sought is "primarily injunctive in nature and thus not easily monetized." *In re Bluetooth*, 654 F.3d at 941. As *Gendron* noted, the percentage of recovery method **<u>may not</u>** be appropriate in cases where there is not a "traditional common fund from which Class Counsel could be awarded a percentage." *Gendron*, ¶ 17. In *Gendron*, the district court used the lodestar method, which was upheld by the Montana Supreme Court, because the relief obtained "was primarily 'injunctive in nature' and therefore could not be 'easily monetized' or 'estimated with reasonable certainty,' nor did the parties agree on a total settlement value." *Gendron*, ¶ 6.

Because of the burdens of the lodestar approach and the benefits of the percentage of recovery method, about 90% of all courts employ the percentage method when awarding fees from a common fund. *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. Empirical Legal Studies 248, 267 (2010) ("From 2003 to 2008, only 9.6 percent of cases use the lodestar method . . . ."). This practice is predominant in the Ninth Circuit as well. *See In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) ("[U]se of the percentage method in common fund cases appears to be dominant."); *Vizcaino*, 209 F.3d at 1050 (the primary basis of the fee award remains the percentage method).

In the end, the decision on which method to apply is mostly academic: "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270, at *10 (E.D. Cal. Nov. 13, 2007) (quoting 4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007)).

This is not a fee-shifting case, nor is it a case where the relief is primarily injunctive and counsel cannot be awarded a percentage. The

Court should follow the Montana Supreme Court in *Tafelski*, as well as the overwhelming Ninth Circuit cases, and establish Class Counsel's attorneys' fees based on the percentage of recovery method. *See Chu v. Wells Fargo Invs., LLC,* 2011 U.S. Dist. LEXIS 15821, at *12 (N.D. Cal. Feb. 15, 2011) ("The percentage-of-the-fund method seems appropriate in this case, particularly given that the total amount of the settlement is a fixed amount of $6,900,000 without any reversionary payment to WFI.").[3]

### B. A fee of one-third of the recovery is fair and reasonable under the percentage of recovery method.

The Montana Supreme Court recently upheld a one-third fee in a class action settlement where the attorneys secured an exceptional result for the class, which is in line with the national average. *See Tafelski*, *supra*; *Multi-Ethnic Immigrant Workers Org. Network v. City of L.A.*, 2009 U.S. Dist. LEXIS 132269, at *10 (C.D. Cal. June 24, 2009) ("Nationally, the average percentage of the fund award in class actions is approximately one-third.").

[3] The Montana Supreme Court does not require a lodestar cross-check. *See generally Tafelski*, *supra*; *see also Andrews v. Plains All Am. Pipeline L.P.*, 2022 U.S. Dist. LEXIS 172183, at *4 (C.D. Cal. Sep. 20, 2022) (no lodestar cross-check where court had extensive involvement in supervising lengthy litigation); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point.").

In the Ninth Circuit, district courts—including this Court—routinely approve awards of one-third when the settlement is an extraordinary result for the class members. *See, e.g.*, *Beck*, 2024 U.S. Dist. LEXIS 215355, at *8 (approving fee award of one-third of the common fund where "Class Counsel faced significant risk and carried burden in litigating this Action on a contingency basis" and "[t]he Settlement reflects an extraordinary result achieved through Class Counsel's skilled advocacy and dedication to achieving fairness for the Settlement Class, despite the complex and novel issues involved."); *Hageman v. AT&T Mobility LLC*, 2015 U.S. Dist. LEXIS 25595, at *11–12 (D. Mont. Feb. 11, 2015) (approving fee award of one-third of the common fund "given the extraordinary results achieved on behalf of the Settlement Class, the risk to the Settlement Class of continued litigation, the skill and expertise demonstrated by Class Counsel[.]"); *Mont. Land & Mineral Owners Ass'n, Inc. v. Devon Energy*, No. CV-05-30-H-RKS, Doc. 120 (D. Mont. Aug. 24, 2007) (awarding $1,666,666.00 plus reasonable litigation/administration costs from $5,000,000 settlement based on the excellent result achieved by Class Counsel for the Settlement Class, Class Counsel's significant outlays of time and resources, the complexity of the case, and the risk of no recovery); *see also Marshall v. Northrop Grumman Corp.*, 2020 U.S. Dist.

LEXIS 177056, at *23 (C.D. Cal. Sep. 18, 2020) ("An attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions."); *Harrison v. Harry & David Operations, Inc.*, 2022 U.S. Dist. LEXIS 178196, at *8 (D. Or. Sep. 29, 2022) (collecting cases) ("An award of one-third is consistent with other awards from within the Ninth Circuit and is routine."); *Beaver v. Tarsadia Hotels*, 2017 U.S. Dist. LEXIS 160214, at *31 (S.D. Cal. Sep. 28, 2017) (collecting cases) ("District courts in this circuit have routinely awarded fees of one-third of the common fund or higher after considering the particular facts and circumstances of each case.").

The Montana Supreme Court has endorsed a non-exclusive list of factors for courts to consider when deciding whether requested fees are reasonable under the percentage of recovery method, including:

> (1) The novelty and difficulty of the legal and factual issues involved;
> (2) The time and labor required to perform the legal service properly;
> (3) The character and importance of the litigation;
> (4) The result secured by the attorney;
> (5) The experience, skill, and reputation of the attorney;
> (6) The fees customarily charged for similar legal services at the time and place where the services were rendered;
> (7) The ability of the client to pay for the legal services rendered; and
> (8) The risk of no recovery.

*Tafelski*, ¶ 26 (citing *Gendron*, ¶ 14).[4]

The most important factor in determining a reasonable fee is the result achieved. *In re Bluetooth*, 654 F.3d at 942 (foremost among factors considered in setting a reasonable fee "is the benefit obtained for the class"); *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor [in determining an appropriate attorneys' fee] is the degree of success obtained"). Accordingly, Plaintiffs will address this factor first.

**1. The result secured is extraordinary.**

The result achieved in this case is extraordinary. The roughly $18.8 million settlement of the Rule 23(b)(3) claims equals an estimated average settlement of $54,000 per Rule 23(b)(3) class member. Geddes Dec., ¶ 34. Based on Plaintiffs' calculations, Defendants will pay about 1.5 times the class members' actual damages—what Plaintiffs contend Defendants should have shared with class members when they charged resort and breakfast fees since 2012. *Id.*, ¶¶ 32–34. This also amounts to roughly 22%

[4] Courts in the Ninth Circuit often consider similar, non-exhaustive factors when assessing the reasonableness of the percentage requested, including: (1) the extent to which class counsel achieved exceptional results for the class, (2) the risks undertaken by class counsel in litigating the action, (3) whether counsel's performance generated benefits beyond the cash settlement fund, (4) the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and (5) whether the case was handled on a contingency basis. *Beck*, 2024 U.S. Dist. LEXIS 215355, at *8 (citing *Vizcaino*, 290 F.3d at 1047–50).

of the class members' maximum damages if Plaintiffs were ultimately successful at trial on the two highly contested issues: (1) equitable disgorgement of Defendants' profits from the resort fee since and breakfast since 2012 and (2) equitable disgorgement of Defendants' entire management fee since 2012. *Id.*; *see also* Doc. 386, p. 10 (denying Plaintiff's motion for summary judgment on disgorgement and reserving ruling on the proper remedy for breach of fiduciary duty until trial). In addition to the Rule 23(b)(3) Settlement Fund, Defendants will pay an additional $6,200,582.50 in CAPEX Contributions to the class members' homeowners' associations, which will be distributed to the associations per capita based on the number of units and directly benefit current owners. Geddes Dec., ¶ 35.

Montana courts are willing to award one-third when, like here, the settlement is an exceptional/extraordinary result. *Tafelski*, *Beck*, *Hageman* & *Devon*, *supra*; *see also In re Apollo Grp. Sec. Litig.*, 2012 U.S. Dist. LEXIS 55622, at *27 (D. Ariz. Apr. 20, 2012) (awarding one-third based on exceptional result and extreme risk to class counsel); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1023 (E.D. Cal. 2019) (awarding one-third from the common fund given the complexity of the case, its lengthy procedural history, and the extraordinary results achieved for the

class); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *74 (C.D. Cal. June 10, 2005) (awarding one-third of the common fund based on the exceptional result, the highly complex issues, and the risk of non-payment assumed by class counsel); *Schmitt v. Kaiser Found. Health Plan of Wash.*, 2024 U.S. Dist. LEXIS 71166, at *11–12 (W.D. Wash. Apr. 18, 2024) (one-third fee based on excellent result achieved, the risk counsel took on a contingency, the complexity of the issues, and the skill required); *Peterson v. Alaska Communs. Sys. Grp., Inc.*, 2022 U.S. Dist. LEXIS 45227, at *11–12 (D. Alaska Mar. 14, 2022) (one-third fee justified based on the work performed on a contingency basis and the excellent result achieved).

Along those lines, district courts often award one-third when the settlement fund, as a percentage of potential recovery, is significant but less significant than in this case. *See Jiangchen v. Rentech, Inc.*, 2019 U.S. Dist. LEXIS 180474, at *29 (C.D. Cal. Oct. 10, 2019) (settlement for approximately 10% of the total maximum damages potentially available); *Deaver v. Compass Bank*, 2015 U.S. Dist. LEXIS 166484, at *22 (N.D. Cal. Dec. 11, 2015) (settlement for 10.7 percent of the total potential liability exposure); *In re Med. X-Ray Film Antitrust Litig.*,1998 U.S. Dist. LEXIS 14888, at *15 (E.D.N.Y. Aug. 7, 1998) (settlement for approximately 17% of

the estimated "best possible" recovery); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 323–324, 326 (E.D.N.Y. 1993) (settlement for roughly 10% of damages); *In re General Instr. Sec. Litig.*, 209 F. Supp. 2d 423, 431, 434 (E.D. Pa. 2001) (settlement for 11% of the high-end range of damages reported by plaintiffs' expert); *In re Corel Corp., Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 489–90, 498 (E.D. Pa. 2003) (settlement for about 15% of damages); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 148 (E.D. Pa. 2000) (settlement of class consisting of defrauded vocational students that was 17% of the tuition the class members paid).

The settlement will also usher in important changes to the operation of the Condo-Hotels. Throughout the existence of the Condo-Hotels, owners have been required to use Boyne as their rental manager and their privately owned units have been subject to additional control by Boyne. That will cease after this settlement. *See* Geddes Dec., ¶ 35. Boyne has agreed to give up, among other things, its exclusive rental management, its ability to veto amendments to the declarations, and voting positions on the boards of the homeowners' associations. *See id.*

While it is difficult to quantify these benefits, they are significant benefits that owners will now enjoy and that are relevant to the fee inquiry. *See Tafelski*, ¶ 27 (Montana Supreme Court approving one-third fee award

where the settlement included "robust forward-looking relief with respect to Logan Health's business practices."); *Vizcaino*, 290 F.3d at 1049 ("Incidental or non-monetary benefits conferred by the litigation are a relevant circumstance."); *Staton v. Boeing Co.,* 327 F.3d 938, 946 (9th Cir. 2003) ("The fact that counsel obtained injunctive relief in addition to monetary relief for their clients is, however, a relevant circumstance to consider in determining what percentage of the fund is reasonable as fees."); *McMorrow v. Mondelez Int'l, Inc.*, 2022 U.S. Dist. LEXIS 66016, at *18 (S.D. Cal. Apr. 8, 2022) ("[W]hile the injunctive relief is difficult to value monetarily, it supports this Court's conclusion that the settlement is an exceptional result for the class.").

Based on the extraordinary results, a fee award of one-third is fair and reasonable.

**2. The additional factors further support an award of one-third.**

<u>This case contained many novel and difficult legal and factual issues</u>, including, among others:

1. Whether Boyne, as a rental manager for short-term vacation rentals, is subject to Montana's property management regulations. See Doc. 339 (granting summary judgment for Plaintiffs on the

issue of Boyne's status as a property manager subject to Montana's property management regulations);

2. Whether Boyne served as a fiduciary to condo unit owners. Doc. 386, pp. 4–8 (granting summary judgment for Plaintiffs that Boyne was a fiduciary under two of Plaintiffs' theories but leaving third theory, the factual issues of the scope of that duty, and whether a breach occurred to the jury);
3. Whether Boyne satisfied its fiduciary duty to disclose, sufficient to start the statute of limitations. *Id.*, pp. 8–10 (denying Boyne's motion for summary judgment that the statute of limitations bars Plaintiffs' claim for breach of fiduciary duty, leaving the jury to decide whether Boyne affirmatively disclosed the proper information under their fiduciary duty); *id.*, pp. 24–25 (denying Boyne's motion for summary judgment that the statute of limitations bars Plaintiffs' claim for constructive fraud for the same reasons); and
4. Whether, in Montana, a statute of limitations applies to a declaratory judgment action asking the court to declare unenforceable decades-old condominium declarations on the grounds that they created unregistered securities and are/or

unconscionable. *Id.*, pp. 11, 21 (denying Boyne's motion for summary judgment that Plaintiffs' declaratory judgment claims were time-barred).

The time and labor Class Counsel invested in this case was monumental. Plaintiffs filed this class action on December 30, 2021, asserting eight causes of action against Defendants. Doc. 1. The parties fully briefed and argued Defendants' first motion to dismiss (Doc. 3–4, 9, 12). Of the eight causes of action, the Court only dismissed, without prejudice, Plaintiffs' claim for an accounting. Doc. 15. Plaintiffs filed an amended complaint on November 3, 2022 (Doc. 26). Defendants again moved to dismiss Plaintiffs' claim for constructive fraud, which was fully briefed and argued before the Court. Doc. 27–28, 34, 37. The Court denied the motion. Doc. 64.

During and after the motion to dismiss stage, the parties engaged in extensive discovery to prepare for class certification. Geddes Dec., ¶¶ 11–16. Prior to certification briefing, the parties exchanged tens of thousands of pages of documents and took over a dozen depositions. *Id.*, ¶ 11.

The class certification briefing in this case was abnormal. *See id.*, ¶ 12. Instead of responding to Plaintiffs' motion, Defendants filed a Motion to Strike or Deny Class Certification (Doc. 86) the same day Plaintiffs filed

their Motion for Class Certification and Appointment of Class Counsel (Doc. 88). This allowed Defendants to attack class certification through three briefs, instead of the customary one. Despite Defendants' strategy to make certification more difficult, the Court granted class certification on June 28, 2023, after oral arguments. Doc. 113. Defendants then filed a Rule 23(f) petition in the Ninth Circuit, for permission to immediately appeal the Court's certification order. *See* Doc. 119. The Ninth Circuit denied the petition on November 21, 2023. Doc. 177.

Less than a month later, Defendants filed a Motion for Partial Summary Judgment, requesting summary judgment on Plaintiffs' Unfair Trade Practices/Antitrust (tying) claim and Plaintiffs' claim for Declaratory Judgment that the exclusivity provisions in the Condo-Hotel Declarations are illegal and unenforceable. Doc. 186. The parties briefed the motion (Doc. 187, 188, 197, 198, 203) and the Court heard oral argument (Doc. 208). The Court granted Defendants' motion on the tying claim but denied the motion as to Plaintiffs' claim for Declaratory Judgment. Doc. 224.

Between June and August of 2024, Class Counsel coordinated with JND Legal Administration to effectuate class notice and process opt-outs. Geddes Dec., ¶ 17; *see also* Doc. 258.

In August of 2024, Defendants moved to decertify the Rule 23(b)(2) class—the class seeking Declaratory Judgment. Doc. 241. The parties briefed the motion (Doc. 242, 253, 260) and the Court heard oral argument (Doc. 273). The Court denied the motion. Doc. 288.

Between moving for class certification and the deadline for dispositive motions and motions in limine, the parties conducted additional depositions (bringing the total to over thirty, including experts), propounded and responded to additional written discovery, and ultimately exchanged over one hundred thousand pages of discovery. Geddes Dec., ¶ 11. The parties engaged in the meet and confer process on many occasions, had multiple discovery conferences with the Court, and each filed motions to compel. *Id.*

In advance of trial, the parties filed eighteen motions, many addressing numerous issues of fact and law:

- Plaintiffs' Motion for Summary Judgment on Rule 23(b)(2) claims for Declaratory and Injunctive Relief (Doc. 262);
- Plaintiffs' Motion for Summary Judgment RE: Breach of Fiduciary Duty (Doc. 264);
- Plaintiffs' Motion for Partial Summary Judgment RE: Montana Recordkeeping and Trust Account Regulations for Property Managers (Doc. 266);

- Plaintiffs' Motion in Limine RE: Tiffany Huss (Doc. 274);
- Defendants' Motion for Summary Judgment on Plaintiffs' Fiduciary Duty and Unjust Enrichment Claims (Counts I and V) (Doc. 317);
- Defendants' Motion for Summary Judgment Against Plaintiffs' Constructive Fraud and Breach of Fiduciary Duty Claims (Counts I and II) and to Limit Plaintiffs' Damages (Doc. 320);
- Defendants' Motion for Summary Judgment Against Plaintiff Lawrence T. Anderson, as Trustee for the Lawrence T. Anderson and Suzanne M. Anderson Joint Revocable Living Trust's Declaratory Judgment Claim (Count VII) (Doc. 322);
- Defendants' Motion for Summary Judgment Against Plaintiff Tjarda Clagett's Declaratory Judgment Claim (Count VII) (Doc. 324);
- Defendants' Motion for Summary Judgment Against Plaintiffs Robert and Nora Erharts' Declaratory Judgment Claim (Count VII) (Doc. 326);
- Defendants' Motion for Summary Judgment on Plaintiffs' Claims Against Boyne Properties, INC. and Summit Hotel, LLC (Doc. 329);
- Plaintiffs' Alternative Motion in Limine RE: Hybrid Experts or for Determination of Privilege (Doc. 340);
- Plaintiffs' Omnibus Motions in Limine (Doc. 342);

- Plaintiffs' Motion in Limine RE: Defendants' Retained Experts (Doc. 344);
- Defendants Motion in Limine and Pursuant to Federal Rule of evidence 702 to Exclude Certain Evidence Related to Damages and Equitable Remedies and Certain Testimony from Natalya Abdrasilova (Doc. 346);
- Defendants' Motion in Limine RE: Property Management Regulations (Doc. 348);
- Defendants' Motion in Limine to Exclude Certain Testimony of Plaintiffs' Expert Carly Tuman (Doc. 350);
- Defendants' Motion Pursuant to Federal Rule of Evidence 702 to Exclude Certain Testimony of Gregory Riehle (Doc. 352); and
- Defendants' Motion in Limine to Exclude Evidence and Argument Related to Miscellaneous Topics (Doc. 354).

The Court held hearings to address the motions on December 16, 2024 (Doc. 334) and January 16, 2025 (Doc. 384). Defendants' motions for summary judgment were all denied (Doc. 386), except on Count V (unjust enrichment) against Boyne Properties, Inc. and Summit Hotel, LLC (Doc. 385). The Court's orders narrowed the issues for trial, but many issues remained to be tried. Geddes Dec., ¶ 18.

As the March 10 trial date approached, Class Counsel diligently prepared for a complex trial, including establishing a preliminary exhibit and witness lists, completing deposition designations, drafting jury instructions, and preparing a pretrial order. *Id.*, ¶ 19.

Amidst all these efforts, the parties began discussing the possibility of settlement and engaging in preliminary settlement negotiations in December of 2024. Geddes Dec., ¶ 20. Before agreeing on any terms, the parties engaged in formal mediation with Mark B. Helm, a renowned dispute resolution specialist with Phillips ADR, one of the leading mediation groups in the United States. *Id.*, ¶¶ 20–24. After a long, complex, and hard-fought mediation done at arm's length with both sides zealously representing the interest of their clients, the parties reached a binding term sheet that ultimately culminated in the Settlement Agreement. *Id.*

Since then, the parties worked diligently to finalize the extensive terms of the Settlement Agreement and exhibits, obtain preliminary approval, and move toward final approval by, inter alia, developing a notice program in consultation with the Settlement Administrator. *Id.*, ¶ 22–25.

Pursuant to Fed.R.Civ.P. 23(e), the Court preliminarily approved the Settlement Agreement on February 27, 2025, and directed notice to be sent to the class. Doc. 398. Class Counsel again coordinated with JND Legal

Administration to effectuate notice of the settlement. Geddes Dec., ¶ 39–41.

In addition to the above, Defendants twice (pre- and post-certification) tried to remove the class representatives from the rental management program. On both occasions, Class Counsel moved to stop Defendants from doing so to protect the class representatives, the absent class members, and this case, generally. Doc. 48–49, 173–174.[5] Plaintiffs were successful both times, with the first instance ending up in front of the Ninth Circuit. *See* Doc. 136.

<u>This was important litigation</u>. This case litigated important issues related to the ski and lodging industries. Because of the importance, a national ski association and a national hotel and lodging association both joined Boyne in asking the Ninth Circuit to grant Boyne's Rule 23(f) petition for immediate review of the Court's certification order. The National Ski Areas Association filed an amicus brief, stating, "NSAA has an interest in the disposition of this case because Plaintiffs' suit not only challenges

[5] In ruling on the second motion, the Court concluded that Plaintiffs' motion warranted the issuance of a preliminary injunction, in part because, "Boyne's proposed termination of Plaintiffs' RMAs first presents a substantial risk of influencing class members' decisions to participate in the action and threatens to undermine the integrity of the class action proceeding" and "Boyne's conduct presents an improper and abusive litigation tactic." Doc. 189, p. 25.

Boyne's management of the properties at issue, but also radically seeks to invalidate the industry-standard rental arrangements at resort condominium-hotel and similar properties common at ski areas." *Anderson, et al. v. Boyne USA INC., et al.*, Case No. 23-80060 (9th Cir. 2023), Dkt Entry: 3-1, p. 3. The American Hotel & Lodging Association filed a letter with the Ninth Circuit supporting NSAA's brief. *Id.*, Dkt Entry: 8.

The prosecution of this case required skill and experience. This was a complex case, as illustrated by the voluminous discovery, the number of depositions, and the sheer size of the docket. Class Counsel are experienced in complex litigation and class actions, and possess the experience, skill, and reputation necessary to achieve the result secured. Geddes Dec., ¶¶ 3–9; Alke Dec., ¶¶ 3–10. Defendants were represented by two much larger law firms, well versed in defending complex litigation and class actions. *See* https://crowleyfleck.com/ (over 155 attorneys); https://wtotrial.com/ (approximately 100 trial lawyers and litigators). Class Counsel not only brought, and was successful on, Plaintiffs' motion for class certification but also defended against Defendants' early motion to strike or deny class certification, a Rule 23(f) petition to the Ninth Circuit requesting immediate appeal, and a later motion to decertify the Rule 23(b)(2) class.

Summary judgment presented even more obstacles. Defendants filed seven motions for summary judgment on multiple issues per motion. In total, Defendants were successful only twice. Doc. 224 (granting Defendants' motion for summary judgment on Plaintiffs' tying claim and denying Defendants' motion for summary judgment on Plaintiffs' claim for declaratory judgment); Doc. 385 (granting Defendants' motion for summary judgment on Count V against Boyne Properties, Inc. and Summit Hotel LLC and denying Defendant's motion on Counts I–IV against the same); Doc. 386 (denying the remainder of Defendants' motions for summary judgment).

The prosecution of this case required both skill, experience, and hard work—in the end leading to an extraordinary result. *See* Geddes Dec., ¶ 10; Alke Dec., ¶ 11.

<u>The fee customarily charged for similar legal services in Montana based on the proximity to trial in this case is forty percent</u>. The customary fee in Montana for a contingency case is one-third if settlement occurs more than thirty days before trial. Geddes Dec., ¶ 26. If settlement occurs after that but before an appeal, the customary fee in Montana is forty percent. *Id.* Regarding class actions specifically, the Montana Supreme Court upheld an award of one-third in its most recent decision on class

action attorneys' fees, in which the settlement occurred pre-certification (long before trial) and the attorneys sought their contingency fee. *Tafelski*, *supra*; *see also Beck*, *Hageman* & *Devon*, *supra*.

Any client paying for the legal services rendered on an individual basis would have spent more on attorneys' fees than they could have hoped to recover. It is true an individual claimant's case would have resulted in some amount less in discovery and corresponding document review. But litigating the claims properly would still have required a significant amount of discovery, multiple experts, double-digit depositions, and a nearly identical motions practice (excluding class-specific motions like certification). It is unlikely that any single individual could have obtained a larger recovery on an individual basis—and likely would have recovered less than their attorneys' fees. *See* Geddes Dec., ¶¶ 27–37.

Class Counsel assumed a great risk of no recovery while declining significant other work to pursue this case. For over three years, Class Counsel has litigated this case on a contingency fee basis without a guarantee of success and fronted hundreds of thousands of dollars in costs. Geddes Dec., ¶¶ 30, 38; Alke Dec., ¶¶ 11, 14. Class Counsel is comprised of two small Montana law firms. Geddes Dec., ¶ 30. "Firms of this size face even greater risks in litigating large class actions with no

guarantee of payment." *Boyd v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 162880, at *28 (C.D. Cal. Nov. 18, 2014) (finding heightened risk of small-firm representation should be rewarded with larger percentage fee for good result and "that the considerable risk in this case due to the uncertain legal terrain, coupled with Counsel's contingency fee arrangement, weigh in favor of" a one-third fee).

Because time, money, and resources are necessarily limited, the attorneys involved in this case were required to defer or decline other work to properly prosecute this case. Had the claims not prevailed, they would have received no compensation for their significant investment.

***

Based on the extraordinary result; the novelty and difficulty involved; the time and labor required; the character and importance of the litigation; the experience, skill, and reputation of Class Counsel; the fees customarily charged for similar legal services; the inability of an individual to pay for the legal services given the potential recovery; and the risk of no recovery, an award of one-third is fair and reasonable.

## II. Litigation Costs Should Be Reimbursed from the Common Fund.

The Court has discretion when awarding costs, subject to the requirement that they be reasonable. *Tafelski*, ¶ 25 (citing *Gendron*, ¶¶ 13–

14); *see also Nitsch v. DreamWorks Animation SKG Inc.*, 2017 U.S. Dist. LEXIS 86124, at *45–46 (N.D. Cal. June 5, 2017) ("In common fund cases, the Ninth Circuit has stated that the reasonable expenses of acquiring the fund can be reimbursed to counsel who has incurred the expense."). This includes "[a]ll expenses that are typically billed by attorneys to paying clients in the marketplace[.]" *Nitsch*, at * 46.

To date, Class Counsel have incurred $344,564.65 in costs. These costs are summarized in counsel's supporting declarations. *See* Geddes Dec., ¶ 38; Alke Dec., ¶ 14. Counsel incurred these costs—including transcript costs from dozens of depositions, expert fees, e-discovery costs, and myriad other necessary costs—while prosecuting this case for over three years. They directly benefited the class in this complex case and are the type that would have been charged to a paying client in a non-contingency case. *Id.* Plaintiffs thus respectfully request that the Court award these costs from the Rule 23(b)(3) Settlement Fund.

Plaintiffs also request that the Court set aside $40,000 from the Rule 23(b)(3) Settlement Fund in estimated costs to be paid to the settlement administrator for Administration Costs and $15,000 from the Rule 23(b)(3) Settlement fund in estimated costs to be paid to Plaintiffs' expert witness for

calculating the class members' settlement payments. *See* Geddes Dec., ¶¶ 39–43.

## III. Incentive Payments Should Be Awarded to the Named Plaintiffs.

Finally, Plaintiffs request the Court award incentive payments of $10,000 to each named plaintiff serving as a class representative from the Rule 23(b)(3) Settlement Fund. Such incentive awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958–59 (citation omitted).

Incentive awards typically range from $2,000 to $10,000. *See, e.g., Covillo v. Specialty's Café*, 2014 U.S. Dist. LEXIS 29837, at *28–29 (N.D. Cal. Mar. 6, 2014) (ordering an $8,000 incentive award for each of the three named plaintiffs); *Wolph v. Acer Am. Corp.*, 2013 U.S. Dist. LEXIS 151180, at *21 (N.D. Cal. Oct. 21, 2013) (ordering a $2,000 incentive award for each named plaintiff); *Chu*, 2011 U.S. Dist. LEXIS 15821 (awarding a $10,000 incentive award to two named plaintiffs). Higher awards are

sometimes given in cases involving much larger settlement amounts. *See Chu*, at 14–16 at *5 (collecting cases).

This case lasted over three years. Each class representative was deposed twice (the first requiring travel to Bozeman), reviewed both deposition transcripts, helped respond to at least eight sets of written discovery each (and helped supplement when necessary), located documents in their possession, reviewed e-discovery, participated in regular calls with counsel, participated in a fifteen-hour mediation, and provided feedback on the settlement terms and exhibits. Geddes Dec., ¶ 44.

Not only did the class representatives expend their time and effort, but doing so also put them at financial risk. Boyne twice tried to remove the class representatives from the rental management program, which would have effectively stopped them from renting and earning money from their units. *Id.* The class representatives selflessly agreed to take this risk so that all class members could benefit. *Id.*

Additionally, the requested $40,000 in incentive payments amounts to roughly 0.21% of the Rule 23(b)(3) Settlement Fund, which is within the bounds of what other courts have found acceptable. *See Monterrubio v. Best Buy Stores, Ltd. P'ship*, 291 F.R.D. 443, 462 (E.D. Cal. 2013)

(collecting cases). This is also not a case where the incentive awards dwarf individual class member recovery. The average Rule 23(b)(3) class member will receive roughly $54,000, Geddes Dec., ¶ 34, and, looking at it practically, will each only cede about $115 to the class representatives.

Each class representative put in the work needed to create this fund and to affect change, and each class representative incurred the associated risks. Thus, Plaintiffs respectfully request that the Court grant the requested awards.

## CONCLUSION

Class Counsel and the class representatives have diligently represented the interests of the class and obtained an extraordinary result. Plaintiffs thus respectfully request that the Court enter an order:

- Awarding one-third of the Rule 23(b)(3) Settlement Fund ($6,265,845.85 plus one-third of accrued interest) to Class Counsel in attorneys' fees to be paid by the Settlement Administrator upon final approval;
- Awarding one-third of the CAPEX Contributions ($2,066,860.83) to Class Counsel in attorneys' fees to be paid by Defendants in two payments at the time those contributions are made on April 1, 2026 ($1,033,430.41) and April 1, 2027 ($1,033,430.42);

- Reimbursing Class Counsel their reasonable litigation costs in the amount of $344,564.65 to be paid out of the Rule 23(b)(3) Settlement Fund by the settlement administrator upon final approval;
- Setting aside anticipated Administration Costs in the amount of $40,000;
- Setting aside of anticipated expert costs related to calculation of class members' settlement payments in the amount of $15,000; and
- Awarding $40,000 in incentive awards to be paid out of the Rule 23(b)(3) Settlement Fund by the settlement administrator upon final approval, with each class representative receiving $10,000.

Dated this 18th day of April, 2025.

GOETZ, GEDDES & GARDNER, P.C.

By: /s/ J. Devlan Geddes
J. Devlan Geddes
Jeffrey J. Tierney
Henry J. K. Tesar

CRIST, KROGH, ALKE & NORD, PLLC

Ben Alke
John G. Crist

Attorneys for Plaintiffs

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the undersigned hereby certifies that the foregoing document is printed with proportionately spaced typeface of 14 points; is double-spaced; and the word count is less than 6,500 words (6,241 as calculated by Microsoft Word) excluding the Caption, Tables of Contents and Authorities, and this Certificate of Compliance.

DATED this 18th day of April, 2025.

By: /s/ J. Devlan Geddes
J. Devlan Geddes